UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                          )
DANIEL GILBERTO JUAREZ,                    )
                                          )
            Plaintiff,                     )
                                          )
      v.                                   )   Civil Action No.: 07-0955 (RJL)
                                          )
FEDERAL BUREAU OF INVESTIGATION, et al.,  )
                                          )
            Defendants.                    )
_____ )
```

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The Defendants, through counsel, the United States Attorney for the District of Columbia,

respectfully move for summary judgment pursuant to Fed R. Civ. P. 56.  No genuine issue of

material fact exists, and Defendant is entitled to judgment as a matter of law. In support hereof,

Defendants respectfully refer the Court to the attached memorandum of points and authorities,

statement of material facts not in genuine dispute, attachments, and proposed order.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL GILBERTO JUAREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 07-0955 (RJL) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR PARTIAL[1] SUMMARY JUDGMENT

The Defendants, the Federal Bureau of Investigation (FBI), Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF),  Internal Revenue Service (IRS), United States Marshals Service (USMS), and Federal Bureau of Prisons (BOP), respectfully submit this memorandum of points and authorities in support of their motion for summary judgment.

### I. Background

This case arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and concerns the Plaintiff's separate FOIA requests to various agencies, offices and divisions of the federal government.  Plaintiff is a federal prisoner who is currently housed at Big Sandy U.S. Penitentiary, Inez Kentucky.  Compl. at 2.  His requests sought various government records containing information concerning himself.  See Declaration of David Hardy ("Hardy Dec") (FBI) at ¶ 5; Declaration of Averill P. Graham ("Graham Dec") (ATF) at ¶ 3; Declaration of Linda Barnes

---

[1]  The Drug Enforcement Administration, the Executive Office for the United States Attorneys and the Criminal Division, although components of the Department of Justice, are separately named defendants.  These named defendants are not encompassed by this motion and have filed contemporaneously a motion for extension of time to file a response to Complaint.

("Barnes Dec") (IRS) at ¶ 3 (seeking personal income tax records); Declaration of William E. Bordley ("Bordley Dec") (USMS on referral from the FBI) at ¶ 2 (FBI).[2]

Some of the agencies found no responsive records: FBI, ATF, and IRS.  See Hardy Dec at ¶ 6; Graham Dec at ¶ 5; Barnes Dec at ¶¶ 17 & 18.  As to others, Plaintiff failed to exhaust his administrative remedies as to his requests to the FBI (Hardy Dec at ¶ 7), ATF (Graham Dec at ¶ 6), and USMS (Bordley Dec at ¶ 7).

Apart from his failure to exhaust as a basis for suit in this Court, the USMS processed his request and located one hundred, fifty-one (151) pages, which were indexed in Plaintiff's name. Bordley Dec ¶ 6.  Of this material, the USMS released one-hundred, twenty-eight (128) pages to Plaintiff, of which eighty-seven (87) pages were released in their entirety, and forty-one (41) pages were released with information excised and withheld pursuant to Exemption (7)(C) of the FOIA. 5 U.S.C. § 552(b)(7)(C); Bordley Dec at ¶¶ 6, 11 at 10 (description of the forty-one (41) pages released to Plaintiff on March 5 with excisions made by the USMS pursuant to Exemption (7)(C) of FOIA).  Twenty-three (23) pages, which contained information originating from the BOP, was referred to the USMS for a disclosure determination and direct response to Plaintiff in accordance with 28 C.F.R. § 16.4(c)(2).  Id. at ¶¶ 6, 11.

BOP received Plaintiff's FOIA request on March 8, 2007.  Declaration of Denise M. Gottleib ("Gottleib Dec") at ¶ 4.  In response to this request, BOP released 13 pages of documents in their entirety, of which BOP had redacted 10 pages pursuant to 5 U.S.C. §§ 552 (b)(7)(C), and (b)(7)(F). Gottleib Dec at ¶ 5.

---

[2]  All referenced declarations are attached to this memorandum.

As set forth in detail in the accompanying Statement of Material Facts and agency declarations, Defendants have fully and appropriately responded to Plaintiff's FOIA requests, producing to him all reasonably segregable, non-exempt information. Defendants therefore have satisfied their obligations under FOIA, and are entitled to summary judgment.

## II. Legal Standards

### A.     Standard for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the Plaintiff must present some objective evidence that would enable the court to find he is entitled to relief. In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

In Anderson the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.[3]  See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure.  Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the

---

[3] For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts.  Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

documents are exempt from disclosure. Hayden v. National Security Agency Cent. Sec. Serv., 608

F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology

v. U.S. Dept. of Army, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be awarded to

an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the

affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific

detail, demonstrate that the information withheld logically falls within the claimed exemption, and

are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"

Trans Union LLC v. Federal Trade Commission, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting

Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see also Public Citizen, Inc.

v. Dept. of State, 100 F. Supp. 2d 10, 16 (D.D.C. 2000); McGhee v. Central Intelligence Agency,

697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens Commission on Human Rights v. FDA, 45 F.3d

1325, 1329 (9th Cir. 1995); Bowen v. FDA, 925 F.2d 1224, 1227 (9th Cir. 1991). When the

pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact

and when the defendant is entitled to judgment as a matter of law, summary judgment should be

granted to the defendant. Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

### B.     Requester Must Exhaust Administrative Remedies Prior to Suit.

FOIA confers jurisdiction upon the Court to provide relief to a plaintiff only where requested

documents have been "improperly withheld" by an agency. 5 U.S.C. § 552(a)(4)(B). The courts

have interpreted this section of the statute to mean that jurisdiction exists only upon a showing by

the plaintiff that the defendant (1) improperly (2) withheld (3) agency records. See Kissinger v.

Reporters Committee for Freedom of the Press, 445 U.S. 136, 150 (1980). Indeed, "[t]he plaintiff

must show that the agency 'contravened all three components of this obligation' in order for

jurisdiction to be valid." <u>Kuffel v. U.S. Bureau of Prisons</u>, 882 F. Supp. 1116, 1120 (D.D.C. 1995) (<u>citing</u> Kissinger, 445 U.S. at 151.)  Absent such a showing, FOIA confers no "judicial authority to devise remedies and enjoin agencies."  <u>Id.</u>

       Exhaustion of such administrative remedies is required under FOIA before a party can seek judicial review.  <u>Dettmann v. United States Dep't of Justice</u>, 802 F.2d 1472, 1477 (D.C. Cir. 1986). A FOIA requester is deemed to have failed to exhaust administrative remedies whenever the requester fails to comply with the administrative procedures set forth under FOIA, including:  (1) providing the required proof of identity, <u>Summers v. United States Dep't of Justice</u>, 999 F.2d 570, 572-73 (D.C. Cir. 1993);  (2) reasonably describing the records sought, <u>Gillin v. IRS</u>, 980 F.2d 819, 822-23 (1st Cir. 1992);  (3) complying with fee requirements, <u>Trueblood v. United States Dep't of Treasury</u>, 943 F. Supp. 64, 68 (D.D.C. 1996); and (4) administratively appealing a denial of records, <u>Oglesby v. United States Dep't of the Army</u>, 920 F.2d 57 (D.C. Cir. 1990).  <u>See also</u> 5 U.S.C. § 552(a)(3) (requester must follow agency's published regulations governing FOIA requests); <u>Kessler v. United States</u>, 899 F. Supp. 644, 645 (D.D.C. 1995) (failure to follow agency regulations constitutes failure to exhaust administrative remedies). Where a FOIA plaintiff attempts to obtain judicial review without having first fully exhausted his administrative remedies, his lawsuit is subject to dismissal for lack of subject matter jurisdiction.  <u>Oglesby</u>, 920 F.2d at 57.  Here, Plaintiff failed to exhaust his administrative remedies as to his requests to the FBI (Hardy Dec at ¶ 7), ATF (Graham Dec at ¶ 6), and USMS (Bordley Dec at ¶ 7).

## C.    Standards for a Proper Search for Responsive Records

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records.  <u>Oglesby v. U.S. Dept. of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990); <u>Cleary,</u>

Gottlieb, Steen & Hamilton v. Dept. of Health, et al., 844 F. Supp. 770, 776 (D.D.C. 1993);

Weisberg v. U.S. Dept. of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983). This "reasonableness"

standard focuses on the method of the search, not its results, so that a search is not unreasonable

simply because it fails to produce relevant material. Id. at 777 n.4. An agency is not required to

search every record system, but need only search those systems in which it believes responsive

records are likely to be located. Oglesby, 920 F.2d at 68. Simply stated, the adequacy of the search

is "dependent upon the circumstances of the case." Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C.

Cir. 1990).

The search standards under FOIA do not place upon the agency a requirement that it prove

that all responsive documents have been located. Nation Magazine v. U.S. Customs Serv., 71 F.3d

885, 892 n.7 (D.C. Cir. 1995). It has been held that "'the search need only be reasonable; it does not

have to be exhaustive.'" Miller v. Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985) citing National

Cable Television Association v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973). Even when a requested

document indisputably exists or once existed, summary judgment will not be defeated by an

unsuccessful search for the document so long as the search was diligent. Nation Magazine, 71 F.3d

at 892 n.7. Additionally, the mere fact that a document once existed does not mean that it now

exists; nor does the fact that an agency created a document necessarily imply that the agency has

retained it. Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct

a search for the requested records, using methods which can be reasonably expected to produce the

information requested." Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201

(D.C. Cir. 1991). "An agency may prove the reasonableness of its search through affidavits of

responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." Miller, 779 F.2d at 1383; Goland, 607 F.2d at 352.  Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" Carney v. Dept. of Justice, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (quoting SafeCard Servs., 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search.  Once the agency has met this burden through a show of convincing evidence, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency.  Miller, 779 F.2d at 1383. A requester may not rebut agency affidavits with purely speculative allegations.  See Carney, 19 F.3d at 813; SafeCard, 926 F.2d at 1200; Maynard v. CIA, 986 F.2d 547, 559-560 (1st Cir. 1993).

The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

### D.    Standards for A Proper Vaughn Index

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for their withholding of responsive documents.  "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs." Judicial Watch v. U.S. Dept. of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998).  These declarations or affidavits (singly or collectively) are often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S. C. 1564 (1974).  There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in

8

its form." Kay v. FCC, 976 F. Supp. 23, 35 (D.D.C. 1997). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. U.S. Dept. of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d Cir. 1988).[4]

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. See Citizens Commission on Human Rights v. FDA, 45 F.3d 1325, 1326 (9th Cir. 1995). "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

### E.    Legal Standards for Applicable Exemptions to Release under FOIA.    .

#### 1.    Exemption 7--Threshold Issue

Application of any of FOIA's exemptions in Exemption 7 requires the agency to satisfy the threshold issues of, first, whether the agency has the requisite law enforcement purpose in compiling the records at issue and, second, whether the information gathered has a sufficient nexus to the law

---

[4] "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Id. "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." Information Acquisition Corp. v. Dept. of Justice, 444 F. Supp. 458, 462 (D.D.C. 1978).

enforcement purpose. See, e.g., Tax Analysts v. IRS, 294 F.3d 71, 76-79 (D.C. Cir. 2002); Jefferson v. DOJ, 284 F.3d 172, 176-77 (D.C. Cir. 2002); Campbell v. DOJ, 164 F.3d 20, 32 (D.C. Cir. 1998); Pratt v. Webster, 673 F.2d 408, 419 (D.C. Cir. 1982).

In Jefferson, the court drew a distinction between agencies gathering information as part of any government agency's "oversight of the performance of duties by its employees," and information sought as part of investigations into illegal conduct for which the agency might impose criminal or civil sanctions. 284 F.3d at 177. Thus, Jefferson sets forth a broadly applicable distinction based more on the agency's mission and reasons for collecting the information at issue.

Many types of agency activities have been upheld as having law enforcement purpose, even several that arguably go beyond the core law enforcement mission of investigating crimes that have been committed. See, e.g., Mittleman v. OPM, 76 F.3d 1240, 1241-43 (D.C. Cir. 1996) (OPM background investigation), cert. denied, 519 U.S. 1123 (1997); Heggestad v. DOJ, 182 F. Supp. 2d 1, 13 (D.D.C. 2000) (Hogan, J.) (IRS has law enforcement purpose); Center to Prevent Handgun Violence v. Dep't of Treasury, 981 F. Supp. 20 (D.D.C. 1997) (Robertson, J.) (collecting information on all repeat handgun sales); Doe v. DOJ, 790 F. Supp. 17, 20-21 (D.D.C. 1992) (background investigations).

In addition, the caselaw in this Circuit is unambiguous that the agency need not tie its collection of information to any specific or ongoing investigation. See Tax Analysts, 294 F.3d at 78; Keys 830 F.2d at 342. This precept is fully consistent with the courts' broad acceptance of the view that the 1986 amendments to the FOIA relaxed the required threshold showing for Exemption 7. See, e.g., United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 780 (1989) (recognizing that the shift from "would constitute" standard to "could

reasonably be expected to constitute" standard represents a congressional effort to ease considerably the burden of invoking Exemption 7); S. Rep. No. 221, 98th Cong., 1st Sess. 25 (1983) ("Substitute 'records or information' for 'investigatory records' as the threshold qualification for the exemption: This amendment would broaden the scope of the Exemption to include 'records or information compiled for law enforcement purposes,' regardless of whether they may be investigatory or noninvestigatory."); Hopkinson v. Shillinger, 866 F.2d 1185, 1222 n.27 (10th Cir. 1989) ("The 1986 amendment[s] broadened the scope of exemption 7's threshold requirement.").

### 2.    Exemption 7(C)

The FOIA, 5 U.S.C. § 552, does not apply to matters that are:

(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations.  Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice, 816 F.2d 730, 780 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996). Indeed, an agency in a FOIA case may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity.  Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

11

The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release under Exemption 7(C).  Davis v. U.S. Dept. of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980).  Similarly, individuals who provide information to law enforcement authorities, like law enforcement personnel themselves, have privacy interests in their anonymity that is subject to protection.  Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dept. of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).  The fact that the requester might be able to ascertain the individuals' identities through other means, or that their identities have been disclosed elsewhere, does not diminish their privacy interests.  Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg v. Dept. of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

Once a privacy interest has been established, as here, it must be balanced against the public interest, if there is any, that would be served by disclosure.  Albuquerque Publ'g Co. v. Dept. of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989).  The public interest in disclosure is limited to the FOIA's "core purpose" of shed[ding] light on an agency's performance of its statutory duties."  Reporters Comm. for Freedom of the Press, 489 U.S. at 773.  This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'"  Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990).  See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation).  Furthermore, the requester must not only demonstrate the existence of the public interest but also that the public interest is both significant

12

and compelling, in order to overcome legitimate privacy interests.  Senate of Puerto Rico v. Dept. of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

### 3.    Exemption 7(F)

Title 5, United States Code, Section 552 (b)(7)(F) (hereinafter "Exemption 7(F)") protects from mandatory disclosure information compiled for law enforcement purposes if disclosure could reasonably be expected to endanger the life or physical safety of any individual.  5 U.S.C. § 552(b)(7)(F).  Courts have consistently upheld the application of this exemption to protect information identifying law enforcement officers and special agents, who are especially likely to be in contact with violent suspects. Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir. 1977); Albuquerque Publ'g Co., 726 F. Supp. 851, 858 (D.D.C. 1989); Docal v. Bennsinger, 543 F. Supp. 38, 48 (M.D. Pa. 1981); Nunez v. DEA, 497 F. Supp. 209, 212 (S.D.N.Y. 1980).  Although this exemption applies to information that is also subject to the protection of Exemption 7(C), supra, there is no balancing required for the use of Exemption 7(F).  In any event, it is difficult to imagine any public interest that could outweigh the safety of an individual.

### F.    Segregability

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  The FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. §

13

552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." Mead Data, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

## III.    Each Defendant Complied with FOIA Requirements.

### A.    The FBI and IRS Conducted An Adequate Search and Found No Records Responsive to Plaintiff's Requests.

To prevail in a FOIA case, a plaintiff must show that an agency has "(1) 'improperly' (2) 'withheld' (3) 'agency records.'" United States Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989), quoting Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S. 136, 150 (1980); see 5 U.S.C. § 552(a)(4)(B). To obtain summary judgment in its favor, the agency's burden is to establish that it has conducted a search reasonably calculated to uncover all responsive records. Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the absence

and discoverability of documents. Safeguard Servs., Inc. v. Securities & Exchange Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991). The issue is not whether there might exist any other records possibly responsive to the request, but rather whether the actual search for responsive records was reasonable. Id.; Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986). The agency can establish the reasonableness of its search by affidavits if they are relatively detailed, non-conclusory, and made in good faith. Weisberg, 745 F.2d at 1485; Perry v. Block, 684 F.2d 121, 125-26 (D.C. Cir. 1982). As long as the agency submits detailed affidavits showing the scope and method of the search, then, in the absence of countervailing evidence, or apparent inconsistency of proof, dismissal or summary judgment is appropriate in its favor. Perry, 684 F.2d at 127.

The agency's search should be reasonably calculated to uncover all responsive records. Weisberg, 745 F.2d at 1485. Therefore, an agency should search those offices or components reasonably likely to have responsive records. Knight v. Food & Drug Admin., 938 F. Supp. 710, 716 (D. Kan. 1996). The FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request when responsive documents are likely to be located in one place. Marks v. United States Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978). Nor does the FOIA require that an agency search every record system. Oglesby v Dep't. of Army, 920 F.2d at 68. Furthermore, the agency is not required to speculate about potential leads to the location of the responsive documents. Kowalczyk v. Department of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996).

In this case, the FBI conducted a search that was reasonably calculated to uncover all responsive records. The FBI searched the automatic indices to its Central Records System ("CRS") at FBI Headquarters (FBIHQ) and located no main files responsive to Plaintiff's request. Hardy Dec at ¶ 6 & Exh. B. Through the affidavit of an official responsible for responding to FOIA requests,

the FBI clearly established that it has conducted a search reasonably calculated to uncover all responsive records and that no responsive records were located.

Like the FBI, the IRS also conducted a search that was more than adequate and found no records that were responsive to Plaintiff's request. IRS Senior Disclosure Specialist Linda Barnes began her search of the Tax Master File System on the same day that the IRS received Plaintiff's request (November 8, 2006). Barnes Dec at ¶¶ 3, 4. Ms. Barnes used the Integrated Data Retrieval System ("IDRS") to search the tax Master File System. Id. ¶ 4. The tax Master File System is the IRS nationwide electronic information system containing most taxpayer account information. Id. ¶ 2. The tax Non-Master File System is an electronic information system designed to store temporary taxpayer information. Id. When such taxpayer information is complete, the account information is then transferred to the tax Master File System. Id. All taxpayer account information is contained in either the tax Master File System or the tax Non-Master file system. Id. IRDS is an electronic system that consists of databases and operating programs that support IRS employees working active tax cases within each business function across the entire IRS. Barnes Dec at ¶ 4, n. 1. This system manages data that has been retrieved from the tax Master File allowing IRS employees to take specific actions on taxpayer account issues, track status and post transaction updates back to the Master Tax File. Id. It provides for systemic review of case status and notice issuance based on case criteria, thereby alleviating staffing needs and providing consistency in case control. Id.

The IRS searched both the tax Master file system and tax Non-Master file system and found no records responsive to Plaintiff's request. See Barnes Dec at ¶ 4. Ms. Barnes' search of the tax Master File System revealed Plaintiff's name but found no records responsive to Plaintiff's request.

Id.  After finding no responsive records in the tax Master File System, Ms. Barnes then contacted

Charlene Mattox, a Disclosure Specialist authorized to access the tax Non-Master File System, to

request a search of the tax Non-Master File System using Plaintiff's Social Security number.  Id.  On

December 1, 2006, Ms. Mattox informed Ms. Barnes that the search revealed no responsive records

pertaining to Plaintiff's FOIA request.  Id.  The IRS conducted a search that was reasonably

calculated to uncover all responsive records and thereby complied with its obligations under the

FOIA.

     The declarations of both Mr. Bordley of the USMS and of Ms. Barnes of the IRS properly

detail the searches conducted by these agencies.  See Bordley Dec at ¶¶ 3-5; Barnes Dec at ¶¶ 2-4.

Based on the nature of the request, it was reasonable for these agencies to conduct a general search

of their automated record systems, using personal identifying information for the Plaintiff, and for

each agency to conclude that their record systems properly identified any potentially responsive

documents.

**B.    Plaintiff Failed to Exhaust Administrative Remedies as to his FBI, ATF and USMS FOIA Requests Because He Did Not File an Appeal of the Decisions of Each of these DOJ Components.**

     Plaintiff is barred from seeking judicial review of this suit because he failed to exhaust his

administrative remedies when he did not appeal the decisions of the FBI, ATF and USMS.  Plaintiff

filed FOIA requests with the FBI (letter dated October 12, 2006), ATF (letter dated October 26,

2006) and USMS (letter dated October 12, 2006).  Hardy Dec at ¶ 5, Graham Dec at ¶ 3, and Bordley

Dec at ¶ 2.  The FBI, ATF and USMS responded to the requests by Plaintiff, but Plaintiff failed to

file administrative appeals.  See Hardy Dec at ¶ 7; Graham Dec at ¶ 6; Bordley Dec at ¶ 7.  Since

Plaintiff did not file an appeal with each agency, he failed to exhaust fully his administrative

17

remedies and thus failed to satisfy an essential prerequisite permitting judicial review in district court, thereby barring the Court from considering Plaintiff's claims as to the FBI, ATF and USMS.

Exhaustion of such administrative remedies is required under FOIA before a party can seek judicial review. See Dettmann v. United States Dep't of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986). When a FOIA plaintiff attempts to obtain judicial review without first properly undertaking full and timely administrative exhaustion, the lawsuit is subject to ready dismissal because "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA." Wilbur v. CIA, 355 F.3d 675, 676 (D.C. Cir. 2004) (per curiam) (citing Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 61-64, 65 n.9 (D.C. Cir. 1990)); see, e.g., Almy v. U.S. Dep't of Justice, No. 96-1207, 1997 WL 267884, at *3 (9th Cir. May 7, 1997) ("[T]he FOIA requires exhaustion of administrative remedies before the filing of a lawsuit."); Voinche v. U.S. Dep't of the Air Force, 983 F.2d 667, 669 (5th Cir. 1993) ("We conclude that the FOIA should be read to require that a party must present proof of exhaustion of administrative remedies prior to seeking judicial review."). Exhaustion allows an agency's top level officials to correct possible mistakes made at lower levels and thereby obviate unneccessary review. Oglesby, 920 F.2d at 61; see also Taylor v. Appleton, 30 F.3d 1365, 1369 (11th Cir. 1994) ("Allowing a FOIA requester to proceed immediately to court to challenge an agency's initial response would cut off the agency's power to correct or rethink initial misjudgments or errors"); Martin v. Court Servs. & Offender Supervision Agency, No. 05-853, 2005 WL 3211536, at *3 (D.D.C. Nov. 17, 2005) (recognizing that administrative exhaustion "[g]ives the parties and the courts the benefit of the agency's experience and expertise").

Notwithstanding the FBI's efforts to respond to his request, Plaintiff simply failed to pursue fully what administrative relief was potentially available to him. The FBI searched its records and

responded to Plaintiff's request but Plaintiff failed to appeal. Hardy Dec at ¶¶ 6-7. By letter dated November 15, 2006, FBIHQ advised Plaintiff that a search of the automated indices to the FBI's Central Records System ("CRS") located no main files responsive to his request. Hardy Dec at ¶ 6. Plaintiff was also advised of his right to appeal the FBI's determination to the U.S. Department of Justice (DOJ), Office of Information and Privacy (OIP). Id. OIP has no record of Plaintiff ever filing an administrative appeal stemming from FBIHQ's November 15, 2006 letter to Plaintiff. Hardy Dec at ¶ 7; Declaration of Priscilla A. Jones ("Jones Dec") (OIP) at ¶ 2. Therefore, Plaintiff has failed to exhaust available administrative remedies as to his FOIA request to the FBI before filing his district court complaint, so his district court claim against the FBI is barred. Id.

The Court should also deem Plaintiff's claim against the ATF barred because he also failed to exhaust his available administrative remedies at to this request. On November 7, 2006, ATF's Disclosure Division received by mail a FOIA request dated October 22, 2006 from Mr. Juarez. Graham Dec at ¶ 3. By letter dated November 7, 2006, the Disclosure Division informed Mr. Juarez that a search of ATF's records failed to locate any responsive documents based on the information provided. Graham Dec at ¶ 5. The Disclosure Division informed Mr. Juarez that, without more information, such as where, when and how his contact with ATF took place, ATF could not conduct additional searches. Id. In addition, the letter explained both Mr. Juarez's right to an administrative appeal and the procedure for filing such an appeal. Id. Pursuant to DOJ Regulations (28 C.F.R. § 16.9(c)) and the FOIA, a requester is required to file an administrative appeal to an initial determination before seeking judicial review. See Graham Dec at ¶ 6. Plaintiff failed to file that appeal and thus failed to exhaust his administrative remedies per DOJ regulations. Accordingly, his claims against the ATF are barred.

Likewise, Plaintiff's claims against the USMS are barred because Plaintiff failed to pursue fully available administrative relief in pursuit of his FOIA request to this agency. On January 26, 2007, the USMS Office of General Counsel received a letter from Plaintiff requesting information pertaining to himself. Bordley Dec at ¶ 2. By letter dated March 5, 2007, the USMS responded to Plaintiff's request, informing him that, after conducting a search of its files, one hundred fifty-one (151) pages had been located which were indexed to his name. Id. at ¶ 6. Of this material, the USMS released one hundred twenty-eight (128) pages to Plaintiff; eighty-seven (87) pages of which were released entirely, and forty-one (41) pages were released with information excised and withheld pursuant to exemption (7)(C) of the FOIA, 5 U.S.C. § 552(b)(7)(C). Id. at ¶¶ 6, 11 and 10 (description of the forty-one (41) pages released to Plaintiff on March 5 with excisions made by the USMS pursuant to Exemption (7)(C) of FOIA). Twenty-three (23) pages, which contained information which originated with the Bureau of Prisons (BOP), was referred to the BOP for a disclosure determination and direct response to Plaintiff in accordance with 28 C.F.R. § 16.4(c)(2). Id. at ¶¶ 6, 11. This letter also informed Plaintiff of his right to appeal the USMS initial decision concerning his FOIA request to OIP. Bordley Dec at ¶ 6.

In each instance, each agency conducted a reasonable search of its records and informed Plaintiff both of the results of each search and of his right to appeal each determination. Despite this notice, Plaintiff filed no appeal but instead immediately sought judicial review in district court. Plaintiff's suit seeking judicial review of the decisions of the FBI, USMS and ATF accordingly is not actionable because he failed to exhaust his administrative remedies.

Plaintiff failed to follow the DOJ regulation, 28 C.F.R. § 16.9, regarding appeals of FOIA requests. This regulation requires that requesters file written appeals from the decisions of DOJ

components within such time as to be received by OIP within sixty (60) days of the component's letter denying the request. 28 C.F.R. § 16.9 (a). Before seeking judicial review of any adverse determination, requesters must file an appeal. 28 C.F.R. § 16.9 (c). Requesters who fail to comply with the agency's regulations have failed to exhaust their administrative remedies. See Oglesby v. United States Dep't of the Army, 920 F.2d 57 (D.C. Cir. 1990). See also 5 U.S.C. § 552(a)(3) (requester must follow agency's published regulations governing FOIA requests); Kessler v. United States, 899 F. Supp. 644, 645 (D.D.C. 1995) (failure to follow agency regulations constitutes failure to exhaust administrative remedies). Plaintiff filed no appeal with the FBI, ATF and USMS. Hardy Dec at ¶ 7; Graham Dec at ¶ 6; Bordley Dec at ¶ 7. These three named defendants are components of the U.S. Department of Justice. See 28 C.F.R. § 0.1 (listing the FBI, ATF, and USMS as bureaus within the Department of Justice). Therefore, Plaintiff's failure to comply with 28 C.F.R. § 16.9 deprives him of a right to judicial review against these DOJ components.

### C.    USMS Properly Processed Plaintiff's FOIA Request.

#### 1.    USMS Conducted an Adequate Search.

The USMS located a total of one-hundred and fifty-one (151) pages of responsive material. Bordley Dec at ¶ 6 & Exh. B. The Bordley declaration describes each of the systems searched by the USMS: (1) Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005 and (2) Warrant Information System (WIN), JUSTICE/USM-007. See id. at ¶ 5. Of the one-hundred and fifty-one pages located, eighty-seven (87) pages were released to Plaintiff in their entirety, and forty-one (41) pages were released with information excised and withheld pursuant to Exemption (7)(C), 5 U.S.C. § 552(b)(7)(C). Id. at ¶¶ 6, 11 and 10 (description of the forty-one (41) pages released to Plaintiff on March 5 with excisions made by the USMS

pursuant to Exemption 7(C) of FOIA). Twenty-three (23) pages, containing information which originated with the Bureau of Prisons (BOP), was referred to the BOP for a disclosure determination and direct response to Plaintiff in accordance with 28 C.F.R. § 16.4(c)(2). Id. at ¶¶ 6, 11. In addition, the Bordley declaration describes the method used to search the agency's information systems for responsive information. The methodology was straight-forward and appropriate. See id. at ¶¶ 3-5. Accordingly, the Court should find that the search was reasonable and complies with FOIA.

### 2.    USMS Produced an Adequate Vaughn Index.

USMS produced a Vaughn index describing the forty-one (41) pages released to Plaintiff on March 5, 2007, with excisions made by the USMS pursuant to Exemption (7)(C). The index, which is included in paragraph 10 of the Bordley Declaration, describes with particularity each document by providing, where possible, the type of document, the number of pages, the date, and the information excised. This information and descriptions provide the "reasonable basis to evaluate the claim of privilege" as required by Delaney, 826 F.2d at 128.

### 3.    USMS Satisfied FOIA Exemption (7)(C).

As an initial matter, USMS has the requisite law enforcement purpose within the meaning of the threshold issue in Exemption 7. USMS's statutory law enforcement responsibilities include the following: (1) receiving, processing, transporting, and maintaining custody of federal prisoners from the time of their arrest by a U.S. Marshal or their remand to a U.S. Marshal by the court until the prisoner is committed by the court to the Attorney General for service of sentence, otherwise released from custody or returned to custody of the U.S. Parole Commission or Bureau of Prisons, (2) the execution of Federal arrest warrants, and (3) the investigation of fugitive matters. Bordley Dec at ¶ 5. See Rule 4, Federal Rules of Criminal Procedure; 18 U.S.C. § 4086; 28 U.S.C. § 566;

28 C.F.R. § 0.111(a), (e), (j), (k), (q). The USMS's law enforcement responsibilities are well within the range of the law enforcement purposes of other agencies that have passed judicial scrutiny regarding the threshold issue in Exemption 7. See, e.g., Mittleman v. OPM, 76 F.3d 1240, 1241-43 (D.C. Cir. 1996) (OPM background investigation), cert. denied, 519 U.S. 1123 (1997); Heggestad v. DOJ, 182 F. Supp. 2d 1, 13 (D.D.C. 2000) (Hogan, J.) (IRS has law enforcement purpose); Center to Prevent Handgun Violence v. Dep't of Treasury, 981 F. Supp. 20 (D.D.C. 1997) (Robertson, J.) (collecting information on all repeat handgun sales); Doe v. DOJ, 790 F. Supp. 17, 20-21 (D.D.C. 1992) (background investigations).

USMS claims Exemption (7)(C) for all entries in the Vaughn index. Bordley Dec at ¶¶ 10-11. In each case, the document names or otherwise identifies an individual whose privacy would be invaded by disclosure of the name or identifying information. The individuals are government employees, law enforcement personnel, third party individuals , and other prisoners. These are described in each case in the Vaughn index and the Bordley Declaration. There is no apparent public interest to be served by the disclosure of their identities.

USMS properly applied Exemption (7)(C) to withhold the names of federal and non-federal law enforcement officers and other government employees. Bordley Dec at ¶ 8. This exemption allows an agency to withhold records or information compiled for law enforcement purposes to the extent that production could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). Id. Plaintiff did not present any statement of public interest to the USMS, let alone one that warranted disclosing the names of these officials. Id. To the contrary, releasing the names of these employees could subject them to unwarranted public attention, harassment and annoyance and would thereby impair their effectiveness in carrying out

23

their official duties.   Further such a release potentially could draw unwarranted attention to them in their private lives, and could possibly pose a danger to their life or physical safety. Id.  In considering whether the public interest in disclosure outweighed the individual's interest in privacy, the USMS determined that no legitimate interest would be served by disclosure of this information. 5 U.S.C. § 552 (b)(7)(C). Id.

USMS also properly applied Exemption (7)(C) to withhold information pertaining to third party individuals, including prisoners other than Plaintiff.   Bordley Dec at ¶ 9.   In reaching the decision to withhold personally identifiable information from documents released to Plaintiff, the USMS considered whether there was a legitimate public interest in disclosure which would outweigh the individual's privacy interest in non-disclosure.   Id.  It is not readily apparent how information associated with prisoners other than Plaintiff and other private individuals would satisfy a legitimate public need for information about the workings of our criminal justice system. Id. USMS could discern no legitimate public interest in disclosure of this information.   Id.   Release of this identifying information could expose these individuals to unwarranted public attention, embarrassment, harassment or annoyance from being associated with an official criminal law enforcement matter. Id.  Further, Plaintiff provides no basis for concluding that disclosure of such information would satisfy the basic purpose of the FOIA, i.e., to shed light on an agency's performance of its statutory duties, nor can the USMS discern any public interest in disclosure which would outweigh the private interests of these individuals in non-disclosure, including the possible danger to their lives or physical safety for participating or cooperating in law enforcement activity.   Id.

Through the Bordley Declaration, USMS has shown that it properly applied Exemption (7)(C) when it redacted segments of the forty-one pages.

### 4.     USMS Properly Segregated Where Appropriate.

USMS's declaration specifically addresses the issue of segregability.  See Bordley Dec at ¶ 12.  All non-exempt portions of USMS documents pertaining to Plaintiff have been segregated and released to him.  Id.  All information withheld was exempt from disclosure pursuant to a FOIA exemption or was not reasonably segregable because it was so intertwined with protected material that segregation was not possible or its release would have revealed the underlying protected material.  Id.  All documents which relate to Plaintiff's request were processed to achieve maximum disclosure, consistent with the provisions of the FOIA.  Id.  Accordingly, USMS complied with its segregation obligations under Mead Data Cent., Inc. v. Air Force, 566 F.2d at 260.

### D.     BOP Properly Processed Plaintiff's FOIA Request.

### 1.     The Gottleib Declaration Serves as an Adequate Vaughn Index.

The Gottleib Declaration describes the twenty-three pages (23) pages released to Plaintiff on April 2, 2007.  Gottleib Dec at ¶¶ 5-8.  Of these twenty three pages, thirteen (13) pages were released in their entirety, while ten (10) pages were released with redactions.  Gottleib Dec at ¶ 5.  The Gottleib Declaration properly addresses the application of Exemptions (7)(C) and (F) and discusses segregability.  See Id. ¶¶ 6-8.  The twenty-three pages (including pages with excisions) are attached to the Gottlieb Declaration.  Gottlieb Dec, Exh. B.  Copies of the redacted documents contain, on their face, references to Exemptions and also a description of the nature of the information withheld pursuant to the provisions of the FOIA.  Id.  This declaration and its attached exhibits provide the "reasonable basis to evaluate the claim of privilege" required by Delaney, 826 F.2d at 128.

## 2.    BOP Complied with FOIA Exemptions.

### a.    BOP Complied with Exemption 7(C).

BOP properly applied Exemption (b)(7)(C) in order to excise certain information from nine (9) pages of law enforcement documents.  Gottleib Dec at ¶ 7.  Exemption (b)(7)(C) provides for the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy.

As an initial matter, BOP has the requisite law enforcement purpose within the meaning of the threshold issue in Exemption (7).  Most importantly, BOP clearly has law enforcement authority.  See 5 U.S.C. § 8331(20) (defining law enforcement officers to include those involved in detention of inmates, specifically employees of the Bureau of Prisons).  Furthermore, BOP employees perform inherent law enforcement functions, having the authority to make arrests, 18 U.S.C. § 3015; seize evidence, 18 U.S.C. § 4012; and execute searches on inmates and visitors to the institution, 28 C.F.R. § 511.10-511.12 and 552.10-552.14.  Unfortunately, the federal prison population indisputably generates a steady incidence of criminal activity within the prisons, and BOP is the primary law enforcement agency for this population, like the FBI and DEA are responsible for investigating criminal activity outside prisons.  BOP, therefore, has the requisite law enforcement purpose within the meaning of the threshold requirement of Exemption (7).

 In addition to satisfying the first prong of Exemption (7), BOP also satisfied its second prong because the release of the information could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Gottleib Dec at ¶ 7.  Specifically, these records contained other inmates' names and register numbers and other identifiable information concerning inmates from whom Plaintiff is to be separated.  Id.  If Plaintiff (inmate Juarez) had this information, he could

retaliate against other inmates.  Id.  These records also pertain to information concerning Plaintiff's

Central Inmate Monitoring (CIMS) information, which may indicate whether Plaintiff has testified

against anyone in court or assisted law enforcement in any way, and a law enforcement officer's

name which was used in an investigation.  Id.  This information could endanger the life and physical

safety of Plaintiff and other individuals.  Id.  The BOP balanced private and public interest in this

case.  Id.  The private interest outweighed the public interest.  Plaintiff did not identify any public

interest.

BOP properly applied Exemption (b)(7)(C) in order to excise certain information from nine

(9) pages of law enforcement documents.  The Gottleib Declaration shows that release of this

information could reasonably be expected to constitute an unwarranted invasion of personal privacy.

Accordingly, these nine (9) pages should be withheld under Exemption (7)(C).

### b.    BOP Complied with Exemption 7(F).

BOP claimed Exemption 7(F) in order to excise ten (10) pages of law enforcement

documents.  Gottleib Dec at ¶ 8.  Exemption (b)(7)(F), provides for the withholding of records or

information compiled for law enforcement purposes which could endanger the lives or physical

safety of an individual.

As discussed in Section D.2.a. supra, BOP has a law enforcement purpose.  These are law

enforcement documents.  See Gottleib Dec at ¶ 8.  Therefore, the first prong of Exemption 7(F) is

satisfied.

The information at issue also satisfies the second prong of Exemption 7(F) because release

of this information could endanger the lives or physical safety of an individual.  See Gottleib Dec

at ¶ 8.  These records contain other inmates' names and register numbers and other identifiable

27

information concerning inmates Plaintiff is to be separated from. Id. If Plaintiff (inmate Juarez) had this information, he could retaliate against other inmates. Id. These records also pertain to information concerning Plaintiff's Central Inmate Monitoring (CIMS) information, which contains information concerning whether Plaintiff or another inmate has testified against anyone in court or assisted law enforcement in any way. Id. These records clearly satisfy the second prong of Exemption 7(F).

Exemption 7(F) allows agencies to withhold identifying information of individuals when disclosure "could reasonably be expected to endanger [that person's] life or physical safety. 5 U.S.C. § 552(b)(7)(F). See Long v. U.S. Dept. of Justice, 450 F.Supp.2d 42 (D.D.C. Sep 08, 2006); Blanton v. U.S. Dep't of Justice, 182 F.Supp.2d 81, 86-87 (D.D.C.2002). While courts generally have applied Exemption 7(F) to protect law enforcement personnel or other specified third parties, by its terms, the exemption is not so limited; it may be invoked to protect "any individual" reasonably at risk of harm. 5 U.S.C. § 552(b)(7)(F). Cf. Maydak v. U.S. Dept. of Justice, 362 F.Supp.2d 316, 321 n.4 (D.D.C. 2005) (Exemption (7)(F) interpreted to apply to names and identifying information of law enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester); Perrone v. FBI, 908 F. Supp. 24 (D.D.C. 1995) (upholding application of Exemption 7(F) in case involving a plaintiff who had been convicted of drug trafficking offenses).

BOP properly claimed Exemption 7(F) in order to excise ten pages of law enforcement documents. The release of this information clearly could endanger the lives of the other inmates or the Plaintiff. Accordingly, the Exemption is properly applied and should be upheld.

### 3.     BOP Properly Segregated Where Appropriate.

BOP's declaration specifically addresses the issue of segregability.  <u>See</u> Gottleib Dec at ¶ 6. All documents which relate to plaintiff's requests were processed to achieve maximum disclosure consistent with the provisions of FOIA.  Gottleib Dec at ¶ 6.  All information withheld was exempt from disclosure pursuant to a FOIA exemption or was not reasonably segregable because it was so intertwined with protected material that segregation was not possible or its release would have revealed the underlying protected material.  <u>Id.</u>  Because nearly all information redacted or withheld could also involve descriptions of events and incidents that would tend to reveal protected information, further segregation was not realistically possible.  Accordingly, BOP complied with its obligation to release reasonably segregable information under <u>Mead Data Central</u>.

## IV.   CONCLUSION

WHEREFORE, the Defendants respectfully request that the Court grant their motion for

partial summary judgment and enter judgment in their favor.


Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739

Counsel for the Defendants

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Defendants' Motion for Partial Summary Judgment, Statement of Material Facts, Memorandum in Support of the Motion, and proposed order were served upon *pro se* plaintiff by depositing copies in the U.S. Mail, first class postage prepaid, addressed to:

**DANIEL GILBERTO JUAREZ**
**R 68893-079**
**BIG SANDY**
**U.S. PENITENTIARY**
**Inmate Mail/Parcels**
**P.O. BOX 2068**
**INEZ, KY 41224**

on this 9th day of August 2007.

_____/s/_____

OLIVER W. MCDANIEL, D.C. BAR # 377360
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 616-0739

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL GILBERTO JUAREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 07-0955 (RJL) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Defendants, Federal Bureau of Investigation ("FBI"), Bureau of Alcohol, Tobacco, Firearms & Explosives ("BATF"), Internal Revenue Service ("IRS"), United States Marshals Service ("USMS"), and Federal Bureau of Prisons ("BOP"), respectfully submit this statement of material facts as to which there is no genuine dispute in accordance with this Court's Local Rule 7(h). The declarations of the following officials support this statement:

1. David M. Hardy, Section Chief, Record/Information Dissemination System ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C.;

2. Averill P. Graham, Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Department of Justice ("DOJ");

3. Linda Barnes, Senior Disclosure Specialist, Disclosure Office of the Internal Revenue Service, Chicago, IL. ("IRS");

4.      William E. Bordley, Associate General Counsel and Freedom of Information/Privacy Act Officer of the United States Marshals Service (USMS), Headquarters, Office of General Counsel, Arlington, Virginia.

5.      Denise M. Gottleib, Paralegal Specialist, Federal Bureau of Prisons, Office of General Counsel, Freedom of Information Act Section, Washington, D.C.

6.      Priscilla A. Jones, Supervisory Administrative Specialist, Office of Information and Privacy, U.S. Department of Justice.

## I.    FBI

7.      By letter dated October 12, 2006, Plaintiff submitted a FOIA/PA request to FBIHQ for "any and all documents, records, and information that any part of your agency has or had in its possession that is any way connected to, related to, or even remotely in reference to my name." Declaration of David M. Hardy, August 1, 2007 ("Hardy Dec") ¶ 5.  Plaintiff also provided the following specifics to assist in the search for records responsive to his FOIA request: " ' All records. Search the I-files and the See Reference Files.  Search the Corpus Christi, Texas and Pennsicola [sic], Florida Field Offices.' " Id. (quoting Exhibit A, Plaintiff's Letter Request under FOIA). Additionally, Plaintiff advised that he would pay all reasonable search and reproduction fees and provided a declaration of identity.  Id.

8.      By letter dated November 15, 2006, FBIHQ advised Plaintiff that a search of the automated indices to the FBI's Central Records System ("CRS") at FBIHQ located no main files responsive to his request.  Hardy Dec at ¶ 6.  Plaintiff was also advised of his right to appeal the FBI's determination to the U.S. Department of Justice ("DOJ"), Office of Information and Privacy ("OIP").  Id.

2

9.     In preparation for this declaration, FBIHQ contacted OIP to determine if it had received an appeal.  Hardy Dec at ¶ 7.  OIP advised that it has no record of Plaintiff ever filing an administrative appeal stemming from FBIHQ's November 15, 2006 letter to Plaintiff.  Id.  Therefore, Plaintiff has failed to exhaust the administrative remedies available to him prior to filing this complaint.  Id.

**II.    ATF**

10.    On November 7, 2006, ATF's Disclosure Division received by mail a FOIA request dated October 22, 2006 from Mr. Juarez.  Declaration of Averill P. Graham, executed June 28, 2007 (Graham Dec) at ¶ 3.  Mr. Juarez requested all documents, records and information maintained by ATF that were in any way connected, related, or in reference to him.  Id.  Additionally, Mr. Juarez noted that "' forfeiture or criminal investigatory records concerning Florida or Texas investigations' " may assist ATF in its search.  Id.

11.    By letter dated November 7, 2006, the Disclosure Division acknowledged receipt of Mr. Juarez's request and informed him that a response would be forthcoming.  Graham Dec at ¶ 4.

12.    By another letter dated November 7, 2006, the Disclosure Division informed Mr. Juarez that a search of ATF's records failed to locate any responsive documents based on the information provided.  Graham Dec at ¶ 5.  The Disclosure Division informed Mr. Juarez that, with more information, such as where, when and how his contact with ATF took place, ATF could conduct additional searches.  Id.  In addition, the letter explained both Mr. Juarez's right to an administrative appeal and the procedure on filing such an appeal.  Id.

13.    In response to Mr. Juarez's allegations in his complaint, ATF Disclosure Division staff contacted the Office of Information and Privacy (OIP) to determine if there had been an

administrative appeal regarding ATF filed by Mr. Juarez.  Graham Dec at ¶ 6.  OIP informed the ATF Disclosure Division staff that it has no records of any such appeal.  Id.  Pursuant to Department of Justice (DOJ) Regulations (28 C.F.R. § 16.9(c)), the FOIA requester is required to appeal to an initial administrative determination before seeking judicial review.  Therefore Mr. Juarez failed to exhaust his administrative remedies per DOJ regulations.  Id.

**III.    IRS**

14.    On November 8, 2006, the Chicago Disclosure Office of the IRS received and reviewed Plaintiff's FOIA request, seeking all personal income tax records from the years 1980 through November 6, 2006.  Declaration of Linda Barnes ¶ 3, July 26, 2007 ("Barnes Dec").  The request specifically sought a search of all criminal investigations sections in the districts of Florida and Texas.  Id.

15.    The tax Master File System is the IRS nation-wide electronic information system containing most taxpayer account information.  Barnes Dec at ¶ 2.  The tax Non-Master File System is an electronic information system designed to store temporary taxpayer information.  Id.  When such taxpayer information is complete, the account information is then transferred to the tax Master File System.  Id.  All taxpayer account information is contained in either the tax Master File System or the tax Non-Master file system.  Id.

16.    The Integrated Data Retrieval System ("IDRS") is an electronic system that consists of databases and operating programs that support IRS employees working active tax cases within each business function across the entire IRS.  Barnes Dec at ¶ 4, n. 1.  This system manages data that has been retrieved from the tax Master File allowing IRS employees to take specific actions on taxpayer account issues, track status and post transaction updates back to the Master Tax File.  Id.

4

It provides for systemic review of case status and notice issuance based on case criteria, thereby alleviating staffing needs and providing consistency in case control.  Id.

17.     On November 8, 2006, IRS Senior Disclosure Specialist Linda Barnes used the IDRS to perform an electronic search of the tax Master File System using Plaintiff's Social Security number to locate any and all records responsive to Plaintiff's FOIA request dated October 22, 2006. Barnes Dec at ¶ 4.  The search revealed Plaintiff's name, but no responsive records were located in the System.  Id.

18.     After finding no responsive records in the tax Master File System, Ms. Barnes then contacted Charlene Mattox, a Disclosure Specialist authorized to access the tax Non-Master File System, to request a search of the tax Non-Master File System using Plaintiff's Social Security number.  Barnes Dec at ¶ 4.  On December 1, 2006, Ms. Mattox informed Ms. Barnes that the search revealed no responsive records pertaining to Plaintiff's FOIA request.  Id.

**IV.     USMS**

19.     On January 26, 2007, the USMS, Office of General Counsel received a letter from Plaintiff requesting information pertaining to himself.  Declaration of William E. Bordley, July 23, 2007, ¶ 2 ("Bordley Dec").  The letter was dated October 12, 2006 and was date-stamped in the Department of Justice mailroom on January 25, 2007.  Id.

20.     The USMS conducted a search for records on Plaintiff, by his name and personal identifiers, e.g., date and place of birth, social security number, and prisoner registration number pursuant to his request.  Bordley Dec at at ¶ 3.  The search was conducted  in the USMS offices identified by Plaintiff, i.e., the Northern District of Florida, and the Southern District of Texas.  Id.

These offices were provided Plaintiff's date and place of birth, social security number, and prisoner number, which information was furnished by Plaintiff.  Id.

21.    The search for Plaintiff's records was conducted by the USMS FOI/PA liaisons in the USMS Northern District of Florida, and the Southern District of Texas.  Bordley Dec at ¶ 4. The FOI/PA liaisons in USMS district offices routinely coordinate and/or conduct document searches in their respective district office in response to FOIA and PA requests.  Id.  The FOIA/PA liaisons are knowledgeable about the records and files maintained by their particular offices.  Id.

22.    The USMS systems of records routinely encompassed by a search for prisoner records is the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007.  Bordley Dec at ¶ 5.  These systems of records are searched by an individual's name and/or personal identifier. Id.  Plaintiff was arrested following the issuance of a warrant in the Northern District of Florida, Pensacola Division, and housed in the Southern District of Texas.  Id.  Documents pertaining to Plaintiff were located in the PPM/PTS and WIN systems of records.  Id.

23.    The PPM/PTS and WIN systems assist the USMS in carrying out its statutory law enforcement responsibilities related to receiving, processing, transporting, and maintaining custody of federal prisoners from the time of their arrest by a U.S. Marshal or their remand to a U.S. Marshal by the court until the prisoner is committed by the court to the Attorney General for service of sentence, otherwise released from custody or returned to custody of the U.S. Parole Commission or Bureau of Prisons, the execution of Federal arrest warrants, and the investigation of fugitive matters. Bordley Dec at ¶ 5.  See Rule 4, Federal Rules of Criminal Procedure, 18 U.S.C. § 4086, 28 U.S.C. § 566, and 28 C.F.R. § 0.111(a), (e), (j), (k), (q).  As such, these systems of records are exempt from

the access provision of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2).  Id.  See 28 C.F.R

§ 16.101(a), (g), (q).  To ensure maximum access, Plaintiff's records were processed for disclosure

pursuant to the Freedom of Information Act, 5 U.S.C. § 552.  Id.  As a result of the search of these

systems of records by Plaintiff's name and/or personal identifier, one hundred fifty-one (151) pages

of material indexed to Plaintiff were located in the USMS district offices.  Id.

24.     By letter dated March 5, 2007, the USMS  responded to Plaintiff's request, informing

him that after conducting a search of its files, one hundred fifty-one (151) pages had been located

which were indexed to his name.  Bordley Dec at ¶ 6.  Of this material, the USMS released one

hundred twenty-eight (128) pages to Plaintiff; eighty-seven (87) pages were released entirely, and

forty-one (41) pages were released with information excised and withheld pursuant to exemption

7(C) of the FOIA, 5 U.S.C. § 552(b)(7)(C).  Bordley Dec at ¶¶ 6, 11; see id. ¶ 10 (description of the

forty-one (41) pages released to Plaintiff on March 5 with excisions made by the USMS pursuant

to Exemption 7(C) of FOIA).   Twenty-three (23) pages which contained information which

originated with the Bureau of Prisons (BOP), was referred to the BOP for disclosure determination

and direct  response to Plaintiff in accordance with 28 C.F.R. § 16.4(c)(2).  Bordley Dec at ¶¶ 6, 11.

This letter also informed Plaintiff of his right to appeal the USMS actions regarding his request to

the Department of Justice Office of Information and Privacy (OIP).  Bordley Dec at ¶ 6.

25.     Exemption (7)(C) was applied to withhold the names of federal and non-federal law

enforcement officers and other government employees.  Bordley Dec at ¶ 8.  This exemption allows

an agency to withhold records or information compiled for law enforcement purposes to the extent

that production could reasonably be expected to constitute an unwarranted invasion of personal

privacy. 5 U.S.C. § 552(b)(7)(C).  Id.  Plaintiff presents no public interest to warrant disclosing the

names of these individuals.  Id.  To the contrary, the release of the names of these employees could subject these individuals to unwarranted public attention, harassment, and annoyance, and would thereby impair the effectiveness of these employees in carrying out their official duties and potentially cause unwarranted attention to them in their private lives, and could possibly pose a danger to their life or physical safety.  Id.  In considering whether the public interest in disclosure outweighed the individual's interest in privacy, the USMS determined that no legitimate interest would be served by disclosure of this information. 5 U.S.C. § 552 (b)(7)(C).  Id.

26.     Exemption (7)(C) was applied also to withhold information pertaining to third party individuals, including prisoners other than Plaintiff.  Bordley Dec at¶ 9.  In reaching the decision to withhold personally identifiable information from documents released to Plaintiff, the USMS considered whether or not there was a legitimate public interest in disclosure which would outweigh the individual's privacy interest in non-disclosure.  Id.  It is not readily apparent how information identifiable to prisoners other than Plaintiff and other private individuals would satisfy a legitimate public need for information about the workings of our criminal justice system and the USMS could discern no legitimate public interest in disclosure of this information.  Id.  Release of this identifying information could expose these individuals to unwarranted public attention, embarrassment, harassment or annoyance for being associated with an official criminal law enforcement matter.  Id.  Further, Plaintiff provides no indication as to how disclosure of such information would meet the basic purpose of the FOIA i.e., to shed light on an agency's performance of its statutory duties, nor can the USMS discern any public interest in disclosure which would outweigh the privacy of these individuals, including the possible danger to their life or physical safety for cooperating in law enforcement activity.  Id.

27.     All non-exempt portions of USMS documents pertaining to Plaintiff have been segregated and released to him.  Bordley Dec at¶ 12.  All information withheld was exempt from disclosure pursuant to a FOIA exemption or was not reasonably segregable because it was so intertwined with protected material that segregation was not possible or its release would have revealed the underlying protected material.  Id.  All documents which relate to Plaintiff's request were processed to achieve maximum disclosure consistent with the provisions of the FOIA.  Id.

28.     On June 19, 2007, USMS received the Complaint in this action.  Bordley Dec at ¶ 7.  After receiving the Complaint, the USMS OGC FOI/PA Specialist contacted the OIP and was advised that Plaintiff had not filed an appeal of the USMS response to his request.  Id.

## V.     BOP

29.     On March 8, 2007, the BOP's FOIA Office, Washington, D.C. received Plaintiff's FOIA request.  Declaration of Denise M. Gottleib ("Gottleib Dec") at ¶ 4.  BOP's FOIA Office logged in this request and assigned it FOIA Request Number 2007-04025.  Id.

30.     BOP responded to FOIA Request Number 2007-04025 on April 2, 2007, releasing 13 pages of documents in their entirety, and 10 pages with redactions pursuant to 5 U.S.C. §552 (b)(7)(C), and (b)(7)(F).  Gottleib Dec at ¶ 5.

31.     Exemption (b)(7)(C) provides for the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Gottleib Dec at ¶ 7.  Specifically, these records contained other inmates' names and register numbers and other identifiable information concerning inmates Plaintiff is to be separated from.  Id.  If Plaintiff (inmate Juarez) had this information, he could retaliate against other inmates.  Id.  These records also pertain to information concerning Plaintiff's Central

9

Inmate Monitoring (CIMS) information, which may indicate whether Plaintiff has testified against anyone in court or assisted law enforcement in any way, and a law enforcement officer's name which was used in an investigation. Id. This information could endanger the life and physical safety of Plaintiff and other individuals. Id. Exemption (b)(7)(C) was applied in order to excise certain information from nine (9) pages of law enforcement documents. Id.

32.    Exemption (b)(7)(F) provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual. Gottleib Dec at ¶ 8. This exemption was used to excise ten (10) pages of law enforcement documents. Id. Specifically, these records contained other inmates' names and register numbers and other identifiable information concerning inmates Plaintiff is to be separated from. Id. If Plaintiff (inmate Juarez) had this information, he could retaliate against other inmates. Id. These records also pertain to information concerning Plaintiff's Central Inmate Monitoring (CIMS) information, which may indicate whether Plaintiff has testified against anyone in court or assisted law enforcement in any way. Id.

33.    Copies of the redacted documents and withheld documents contain, on their face, exemptions which detail the nature of the information withheld pursuant to the provisions of the FOIA. Gottleib Dec at ¶ 6. A more detailed description of the information withheld could identify the protected material. Id.

34.    No reasonably segregable non-exempt portions were withheld from Plaintiff. Gottleib Dec at ¶ 6.

35.    All documents which relate to Plaintiff's requests were processed to achieve maximum disclosure consistent with the provisions of FOIA. Gottleib Dec at ¶ 6. All information

withheld was exempt from disclosure pursuant to a FOIA exemption or was not reasonably segregable because it was so intertwined with protected material that segregation was not possible or its release would have revealed the underlying protected material.  Id.

36.    On April 20, 2007, the Office of Information and Privacy ("OIP"), United States Department of Justice received Plaintiff's appeal (dated April 12, 2007) from BOP's decision in Request No. 2007-04025.  Declaration of Priscilla A. Jones ("Jones Dec") at ¶ 2.  OIP adjudicated Plaintiff's appeal on June 29, 2007, affirming BOP's action.  Id.


Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739

Counsel for the Defendants

August 9, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL GILBERTO JUAREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 07-0955 (RJL) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**O R D E R**

Upon consideration of the Defendants' Motion for Partial Summary Judgment, any opposition thereto, the entire record in this case, the Court finds that the Defendants Federal Bureau of Investigation, Bureau of Alcohol, Tobacco, Firearms, and Explosives, Internal Revenue Service, United States Marshals Service, and Federal Bureau of Prisons has conducted a reasonable search for information requested by plaintiff, properly applied the exemptions, and has demonstrated that it is not withholding any responsive information.  Accordingly and for good cause shown, it is hereby

**ORDERED** that the Defendants' Motion for Partial Summary Judgment is **GRANTED**, and it is

**FURTHER ORDERED** that judgment be entered in favor of Defendants Federal Bureau of Investigation, Bureau of Alcohol, Tobacco, Firearms, and Explosives, Internal Revenue Service, United States Marshals Service, and Federal Bureau of Prisons on all of Plaintiff's claims under the Freedom of Information Act.

Date: _____          _____
                                    RICHARD J. LEON
                                    United States District Judge

**Copies to:**

Oliver W. McDaniel
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530

Daniel Gilberto Juarez
R 68893-079
BIG SANDY
U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 2068
Inez, KY 41224

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIEL GILBERTO JUAREZ, )
)
Plaintiff, )
)
v. )   Civ. Action No. 07-CV-0955 (RJL)
)
FEDERAL BUREAU OF INVESTIGATION, )
et al., )
)
Defendants. )
)

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation

Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002.

Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge

Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom

of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From

October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and

routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law

in the State of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 203

employees who staff a total of ten (10) FBIHQ units and a field operational service center unit

whose collective mission is to effectively plan, develop, direct and manage responses to requests

for access to the Federal Bureau of Investigation ("FBI") records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the FOIA/Privacy Act request of plaintiff Daniel Gilberto Juarez which seeks access to records pertaining to himself.

(4)    The purpose of this declaration is to provide the Court and plaintiff with an explanation of the administrative history of the handling of plaintiff's FOIA/Privacy Act request. This declaration is submitted in support of defendant's motion to dismiss or in the alternative for summary judgment based on plaintiff's failure to exhaust administrative remedies.

## CORRESPONDENCE RELATING TO PLAINTIFF'S REQUEST

(5)    By letter dated October 12, 2006, plaintiff submitted a FOIA/PA request to FBIHQ for "any and all documents, records, and information that any part of your agency has or had in its possession that is in any way connected to, related to, or even remotely in reference to my name." Plaintiff also provided the following specifics to assist in the search for records responsive to his FOIA request: "All records. Search the I-files and the See Reference Files. Search the Corpus Christi, Texas and Pennsicola [sic], Florida Field Offices". Additionally,

-2-

plaintiff advised that he would pay all reasonable search and reproduction fees and provided a declaration of identity. **(See Exhibit A.)**

(6)     By letter dated November 15, 2006, FBIHQ advised plaintiff that a search of the automated indices to the FBI's Central Records System ("CRS") at FBIHQ located no main files responsive to his request. Plaintiff was also advised of his right to appeal the FBI's determination to the U.S. Department of Justice ("DOJ"), Office of Information and Privacy ("OIP"). **(See Exhibit B.)**

(7)     In preparation for this declaration, FBIHQ contacted OIP to determine if it had received an appeal. OIP advised that it has no record of plaintiff ever filing an administrative appeal stemming from FBIHQ's November 15, 2006 letter to plaintiff. Therefore plaintiff has failed to exhaust the administrative remedies available to him prior to filing this complaint.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and that Exhibits A through B attached hereto are true and correct copies.

Executed this _____ day of August, 2007.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIEL GILBERTO JUAREZ,       )
                              )
        Plaintiff,            )
                              )
        v.                    )    Civ. Action No. 07-CV-0955 (RJL)
                              )
FEDERAL BUREAU OF INVESTIGATION, )
et al.,                       )
                              )
        Defendants.           )
                              )

# Exhibit A

To: __Director__                                    Date: October 12, 2006

Federal Bureau of Investigation

J. Edgar Hoover Building

Washington, D. C.  20535

Dear Sir:

    This is a request under the Freedom of Information Act.

    I request a copy of any and all documents, records and information that any part of your agency has or had in its possession that is in any way connected to, related to, or even remotely in reference to my name.

    The following particulars may assist you in your search:

All Records.  Search the I-Files and the See Reference Files.

Search the Corpus Christi, Texas and Pennsicola, Florida Field Offices

    I will pay reasonable search and reproduction fees.

    My biographical data is as follows:

FULL NAME   DANIEL GILBERTO JUAREZ

DATE OF BIRTH :  October 20, 1967

PLACE OF BIRTH :  Reynosa Tamaulipas, Mexico

SOCIAL SECURITY NUMBER: 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

    I declare under penalty of perjury that the aforementioned biographical data is that of my person and the signature below is my true and correct original signature signed under oath.

Executed this __12th__ day of __October__ , 2006 .

                By___ X _____

(28 USC Section 1746)                    Affiant Herein

Name: Daniel Juarez

Reg. No. __68893-079__

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIEL GILBERTO JUAREZ,                    )
                                           )
        Plaintiff,                         )
                                           )
                v.                         )    Civ. Action No. 07-CV-0955 (RJL)
                                           )
FEDERAL BUREAU OF INVESTIGATION,           )
et al.,                                    )
                                           )
        Defendants.                        )
                                           )

# Exhibit B



U.S. Department of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

November 15, 2006

MR. DANIEL GILBERTO JUAREZ
**68893-079
UNITED STATES PENITENTIARY- BIG SANDY
POST OFFICE BOX 2068
INEZ, KY 41224

Request No.: 1062629- 000
Subject: JUAREZ, DANIEL GILBERTO

Dear Requester:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above.

To promptly respond to requests, we concentrate on identifying main files in the central records system at FBI Headquarters. No records responsive to your FOIPA request were located by a search of the automated indices.

You may file an administrative appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

Enclosed for your information is a copy of the FBI File Fact Sheet.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Daniel Gilbert Juarez, )<br><br>                    Plaintiff, )<br><br>                        v. )<br><br>Federal Bureau of Investigation, et al, )<br><br>                    Defendant. )<br>_____) | Civil Case No.  07-0955 RJL |

DECLARATION OF AVERILL P. GRAHAM,
CHIEF, DISCLOSURE DIVISION,
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES

I, Averill P. Graham, do hereby depose and say:

1.   I am the Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Department of Justice (DOJ).  In this capacity, I receive all requests made of ATF under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act of 1974 (PA), 5 U.S.C. § 552a.   In this capacity, I also review all requests referred to ATF from other agencies that have located ATF-originated documents in their records while processing their FOIA and PA requests.  I am responsible for processing all FOIA and PA requests, initiating searches relevant to such requests, supervising the determination of what records should be disclosed, processing all documents referred to ATF and to other agencies, and recording all administrative appeals filed with ATF.

2.   I declare that the statements made herein are based on knowledge acquired by me

through the performance of my official duties.   I am familiar with the procedures followed by this office in responding to the FOIA request made by Mr. Daniel Juarez.

## Chronology

3.  On November 7, 2006, ATF's Disclosure Division received by mail a FOIA request dated October 22, 2006 from Mr. Juarez.  Mr. Juarez requested all documents, records and information maintained by ATF that were in any way connected, related, or in reference to him. Additionally, Mr. Juarez noted that "forfeiture or criminal investigatory records concerning Florida or Texas investigations" may assist ATF in its search.  See Exhibit A, letter dated October 22, 2006.

4.  By letter dated November 7, 2006, the Disclosure Division acknowledged receipt of Mr. Juarez's request and informed him that a response would be forthcoming.  See Exhibit B, letter dated November 7, 2006.

5.  By another letter dated November 7, 2006, the Disclosure Division informed Mr. Juarez that a search of ATF's records failed to locate any responsive documents based on the information provided.  The Disclosure Division informed Mr. Juarez that with more information such as where, when and how his contact with ATF took place, ATF could conduct additional searches.  In addition, the letter explained both Mr. Juarez's right to an administrative appeal and the procedure on how to file an appeal.  See Exhibit C, letter dated November 7, 2006.

## Exhaustion

6.  In response to Mr. Juarez's allegations in his complaint, my staff contacted the Office of Information and Privacy (OIP) to determine if there had been an administrative appeal regarding ATF filed by Mr. Juarez.  OIP informed my staff that it has no records of any such appeal.  Pursuant to Department of Justice (DOJ) Regulations (28 C.F.R. § 16.9(c)) and the

FOIA a requester is required to make an administrative appeal to an initial determination prior to praying for judicial relief; therefore, Mr. Juarez has failed to exhaust his administrative remedies per DOJ regulations.

I declare under penalty of perjury that the foregoing is true and correct. Executed this **28** day of June 2007.


Averill P. Graham
Chief, Disclosure Division

To: Director                                    Date: October 22, 2006

___Bureau of Alcohol, Tobacco, Firearms & Explosives

___Department of Justice

___Washington, D. C. 20226

Dear Sir:

    This is a request under the Freedom of Information Act.

    I request a copy of any and all documents, records and information that any part of your agency has or had in its possession that is in any way connected to, related to, or even remotely in reference to my name.

    The following particulars may assist you in your search:

___All forfeiture or criminal investigatory records concerning

___Florida or Texas investigations.

    I will pay reasonable search and reproduction fees.

        My biographical data is as follows:

FULL NAME ___DANIEL GILBERTO JUAREZ_____

DATE OF BIRTH : ___October 20, 1967_____

PLACE OF BIRTH : ___Reynosa Tamaulipas, Mexico_____

SOCIAL SECURITY NUMBER: ___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_____

    I declare under penalty of perjury that the aforementioned biograph-ical data is that of my person and the signature below is my true and correct original signature signed under oath.

Executed this ___22nd___ day of ___October_____, ___2006___.

               By___ X_____
                        Affiant Herein

(28 USC Section 1746)

Name: ___DANIEL JUAREZ_____

Reg. No. ___68893-079_____

EXHIBIT A

U. S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Correspondence Approval and Clearance

NOV   7 2006

100060-AM

Mr. Daniel Juarez
Reg. No. 68893-079
United States Penitentiary – Big Sandy
Post Office Box 2068
Inez, Kentucky  41224

Dear Mr. Juarez:

This is to acknowledge your Freedom of Information Act (FOIA) request to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

Your request was received on November 7, 2006, and has been assigned number 07-152; a response will be mailed to you within 20 (twenty) business days from the date of receipt.

Sincerely yours,

/S/

April Sands
Disclosure Assistant

| Code | Initiator | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|------|-----------|----------|----------|----------|----------|----------|----------|
| Surname | | | | | | | |
| Date | | | | | | | |

**EXHIBIT B**

*U.S. Government Printing Office: 2005—310-398/92303

ATF Form 9310. 3A
Revised May 2004

**U. S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Correspondence Approval and Clearance**

NOV 7 2006

*1 day*
*30ᵗʰ*

REFER TO: 07-152

Mr. Daniel Juarez
Reg. No. 68893-079
United States Penitentiary-Big Sandy
Post Office Box 2068
Inez, Kentucky 41224

Dear Mr. Juarez:

This is in response to your Freedom of Information Act (FOIA) request for access to information maintained by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

A search of our records has failed to produce the requested information. This not a denial; rather it is to advise you that we are unable to locate records based on the information provided. We will conduct additional searches if you will provide more information such as where, when and how contact between you and ATF took place.

Insofar as no records were located, you have the right to request an administrative appeal based on the efficiency of the search. Such appeal should be written to the Office of Information and Privacy, U.S. Department of Justice, 1425 New York Avenue, Suite 11050, Washington D.C. 20530-0001. Your letter must be received within 60 days from the date of this letter and indicate that your appeal is about this response from ATF.

Sincerely yours,

Alma McCoy
Disclosure Specialist

| Code | Initiator | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|---|---|---|---|---|---|---|---|
| | 100060 | 100060 | | | | | |
| Surname | AM | AM | | | | | **EXHIBIT C** |
| Date | 11/08/06 | 10/8/06 | | | | | |

ATF Form 9310. 3A
Revised May 2004

*U.S. Government Printing Office: 2005—310-398/92303

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

DANIEL GILBERT JUAREZ,                  )
                                        )
          Plaintiff                     )
                                        )       Case No.  07-0955 RJL
                                        )
     vs.                                )
                                        )       Declaration of Linda Barnes
                                        )
FEDERAL BUREAU OF                       )
INVESTIGATION, ET AL.                   )
                                        )
          Defendant                     )

I, Linda Barnes, pursuant to the provisions of 28 U.S.C. § 1746(2), declare as follows:

1.     I am a Senior Disclosure Specialist with the Office of Disclosure of the Internal Revenue Service in Chicago, Illinois.  My duties include processing Freedom of Information Act (FOIA) requests for documents under the jurisdiction of the IRS.  My work requires knowledge of the types of documents created and maintained by the various divisions and functions of the IRS, how to search for indications of the existence of such documents, knowledge of procedures and requirements for making FOIA requests, and an understanding of the provisions of the FOIA which exempt certain types of information from disclosure in response to a request.

2.     The tax Master File System is the IRS nation-wide electronic information system containing most taxpayer account information.  The tax Non-Master File System is an electronic information system designed to store temporary taxpayer information.  When such taxpayer information is complete, the account information is then transferred to the tax Master File System.  To the best of my knowledge, all taxpayer account information is contained in either the tax Master File System or the tax Non-Master File System.

3.    On November 8, 2006, I received and reviewed a FOIA request from plaintiff

seeking disclosure from the IRS of all personal income tax records from the years 1980 through

November 6, 2006. The request specifically sought a search of all criminal investigation sections

in the districts of Florida and Texas. (See FOIA request attached hereto as Exhibit "A").

4.    On November 8, 2006, using the Integrated Data Retrieval System (IDRS),[1] I

performed an electronic search of the tax Master File System using plaintiff's Social Security

number to locate any and all records responsive to plaintiff's FOIA request dated October 22,

2006. The search revealed plaintiff's name, but no responsive records were located in the

System. I then contacted Charlene Mattox, a Disclosure Specialist authorized to access the tax

Non-Master File System, to request a search of the tax Non-Master File System using plaintiff's

Social Security number. On December 1, 2006, Ms. Mattox informed me that the search

revealed no responsive records pertaining to plaintiff's FOIA request and I informed plaintiff of

the same via letter dated December 1, 2006. (See response letter attached hereto as Exhibit "B").

5.    Subsequent to my December 1, 2006 letter, I received a letter dated February 21,

2007 from the IRS Appeals Office informing me that plaintiff had filed an administrative appeal

dated December 20, 2006. I was also forwarded a copy of the Appeals determination letter that

was sent to plaintiff informing him of the Appeals Office determination that the search

performed by the Disclosure Office was both reasonable and adequate.

---

[1] The IDRS is an electronic system that consists of databases and operating programs that support IRS employees working active tax cases within each business function across the entire IRS. This system manages data that has been retrieved from the tax Master File allowing IRS employees to take specific actions on taxpayer account issues, track status and post transaction updates back to the Master Tax File. It provides for systemic review of case status and notice issuance based on case criteria, thereby alleviating staffing needs and providing consistency in case control.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: 8|6|07

*Linda Barnes*

Linda Barnes
Senior Disclosure Specialist
Internal Revenue Service
Disclosure Office
230 S. Dearborn St., Stop 7000CHI
Room 2820
Chicago, Illinois 60604

3

Date: October 22, 2006

To: Director

INTERNAL REVENUE SERVICE

**RECEIVED**

Department of the Treasury

NOV 06 2006

Washington, D.C. 20224

GLD AREA 2
**CHICAGO DISCLOSURE OFFICE**

Dear Sir:

This is a request under the Freedom of Information Act.

I request a copy of any and all documents, records and information that any part of your agency has or had in its possession that is in any way connected to, related to, or even remotely in reference to my name.

The following particulars may assist you in your search:
I am an OTHER requester for my personal use. I request all personal income tax records for the years 1980 to date inclusive.

I request you search your criminal investigation sections. Search districts of Florida and Texas

I will pay reasonable search and reproduction fees.

My biographical data is as follows:

FULL NAME    DANIEL GILBERTO JUAREZ

DATE OF BIRTH : October 20, 1967

PLACE OF BIRTH : Reynosa Tamaulipas, Mexico

SOCIAL SECURITY NUMBER: 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

I declare under penalty of perjury that the aforementioned biographical data is that of my person and the signature below is my true and correct original signature signed under oath.

Executed this _22nd_ day of _October_ , 2006

By  X _____ Affiant Herein

(28 USC Section 1746)

Name: DANIEL JUAREZ

Reg. No.    68893-079

**Received**

NOV 01 2006
Disclosure Office
Baltimore Maryland



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224
December 1, 2006

SMALL BUSINESS/SELF-EMPLOYED DIVISION

Daniel Juarez
c/o U.S.P. – Big Sandy
P.O. Box 2068
Inez, Ky 41224

Dear Mr. Juarez:

This is in response to your Freedom of Information Act (FOIA) request, dated October 22, 2006 and received in our Baltimore Disclosure office on November 1, 2006.

Your request was for copies of any and all documents, records, and information that the IRS has that is related to your account number 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 for tax years 1980 to the present. You specifically requested we search our criminal investigation sections for Florida and Texas. We found no documents responsive to your request. The enclosed Notice 393 explains your appeal rights.

Should you have any questions concerning this correspondence, you may contact Senior Disclosure Specialist Linda Barnes, ID # 36-08136, by calling 312-566-3531 or by writing to: Internal Revenue Service, Disclosure Office, 230 S. Dearborn St., Stop 7000CHI, Room 2820, Chicago, IL 60604. Please refer to case number 04-2007-00260.

Sincerely,

Linda Barnes
Senior Disclosure Specialist
Chicago Office

Enclosure

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DANIEL GILBERTO JUAREZ       ) | |
|                          ) | |
|      Plaintiff          ) | |
|                          ) | |
|      v.              ) | Case No: 07-0955 RJL |
|                          ) | |
| FEDERAL BUREAU OF INVESTIGATION, ) | |
| ET AL.                    ) | |
|                          ) | |
|      Defendants.        ) | |
|                          ) | |

## DECLARATION

I, WILLIAM E. BORDLEY, hereby make the following Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am an Associate General Counsel and Freedom of Information/Privacy Act Officer of the United States Marshals Service (USMS), assigned to the Headquarters, Office of General Counsel, Arlington, Virginia. I am experienced with the procedures for responding to requests made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act (PA), 5 U.S.C. § 552a, for information maintained in the records and files of the USMS. The USMS Headquarters Office of General Counsel (OGC) is responsible for processing all FOI/PA requests made to any USMS office located throughout the United States pursuant to USMS policy.

## Background

2. Plaintiff submitted a request letter to the USMS Headquarters, dated October 12, 2006, and received in the Office of General Counsel (OGC) on January 26, 2007, requesting information pertaining to himself. Plaintiff's request letter was date

stamped in the Department of Justice mail room on January 25, 2007.  (See Exhibit A)

3. The USMS conducted a search for records on plaintiff, by his name and personal identifiers, e.g., date and place of birth, social security number, and prisoner registration number pursuant to his request.  The search was conducted  in the USMS offices he identified, i.e., the Northern District of Florida, and the Southern District of Texas.  These offices were provided plaintiff's date and place of birth, social security number, and prisoner number, all of this information was furnished by plaintiff.

4. The search for plaintiff's records was conducted by the USMS FOI/PA liaisons in the USMS Northern District of Florida, and the Southern District of Texas.  The FOI/PA liaisons in USMS district offices routinely coordinate and/or conduct document searches in their respective district office in response to FOIA and PA requests.  The FOIA/PA liaisons are knowledgeable about the records and files maintained by their particular offices.

5. The USMS systems of records routinely encompassed by a search for prisoner records is the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007.  These systems of records are searched by an individual's name and/or personal identifier.  Plaintiff was arrested following the issuance of a warrant in the Northern District of Florida, Pensacola Division, and housed in the Southern District of Texas.  Documents pertaining to plaintiff were located in the PPM/PTS and WIN systems of records.  These systems assist the USMS in carrying out its statutory law enforcement responsibilities related to receiving, processing, transporting, and maintaining custody of federal prisoners from the time of their arrest

2

by a U.S. Marshal or their remand to a U.S. Marshal by the court until the prisoner is committed by the court to the Attorney General for service of sentence, otherwise released from custody or returned to custody of the U.S. Parole Commission or Bureau of Prisons, the execution of Federal arrest warrants, and the investigation of fugitive matters. See Rule 4, Federal Rules of Criminal Procedure, 18 U.S.C. § 4086, 28 U.S.C. § 566, and 28 C.F.R. § 0.111(a), (e), (j), (k), (q). As such, these systems of records are exempt from the access provision of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2). See 28 C.F.R § 16.101(a), (g), (q). To ensure maximum access, plaintiff's records were processed for disclosure pursuant to the Freedom of Information Act, 5 U.S.C. § 552. As a result of the search of these systems of records by plaintiff's name and/or personal identifier, one hundred fifty-one (151) pages of material indexed to plaintiff were located in the USMS district offices.

6. By letter dated March 5, 2007, the USMS responded to plaintiff's request, informing him that after conducting a search of its files, one hundred fifty-one (151) pages had been located which were indexed to his name. Of this material, the USMS released one hundred twenty-eight (128) pages to plaintiff; eighty-seven (87) pages were released entirely, and forty-one (41) pages were released with information excised and withheld pursuant to exemption 7(C) of the FOIA, 5 U.S.C. § 552(b)(7)(C). Twenty-three (23) pages which contained information which originated with the Bureau of Prisons (BOP), was referred to the BOP for disclosure determination and direct response to plaintiff in accordance with 28 C.F.R. § 16.4(c)(2). This letter informed plaintiff of his right to appeal the USMS actions regarding his request to the Department of Justice Office of Information and Privacy (OIP). (See Exhibit B)

7. Following the receipt of the complaint in this action on June 19, 2007, the USMS OGC FOI/PA Specialist contacted the OIP and was advised that plaintiff had not filed an appeal of the USMS response to his request.

## Exemption Cited and Basis for Withholding

8. Exemption 7(C) allows an agency to withhold records or information compiled for law enforcement purposes to the extent that production could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). This exemption was applied to withhold the names of federal and non-federal law enforcement officers and other government employees. Plaintiff presents no public interest to warrant disclosing the names of these individuals, nor does the USMS believe that public disclosure of this information is warranted. To the contrary, the release of the names of these employees could subject these individuals to unwarranted public attention, harassment, and annoyance, and would thereby impair the effectiveness of these employees in carrying out their official duties and potentially cause unwarranted attention to them in their private lives, and could possibly pose a danger to their life or physical safety. Absent a legitimate public interest, disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. In considering whether the public interest in disclosure outweighed the individual's interest in privacy, the USMS determined that no legitimate interest would be served by disclosure of this information. 5 U.S.C. § 552 (b)(7)(C).

9. Exemption 7(C) was applied also to withhold information pertaining to third party individuals, including prisoners other than plaintiff. In reaching the decision to withhold personally identifiable information from documents released to plaintiff, the

4

USMS considered whether or not there was a legitimate public interest in disclosure which would outweigh the individual's privacy interest in non-disclosure. However, it is not readily apparent how information identifiable to prisoners other than plaintiff and other private individuals would satisfy a legitimate public need for information about the workings of our criminal justice system and the USMS could discern no legitimate public interest in disclosure of this information. Release of this identifying information could expose these individuals to unwarranted public attention, embarrassment, harassment or annoyance for being associated with an official criminal law enforcement matter. Further, plaintiff provides no indication as to how disclosure of such information would meet the basic purpose of the FOIA i.e., to shed light on an agency's performance of its statutory duties, nor can the USMS discern any public interest in disclosure which would outweigh the privacy of these individuals, including the possible danger to their life or physical safety for cooperating in law enforcement activity. Disclosure to plaintiff would be equivalent to disclosure to the public and, as such, would constitute a clearly unwarranted invasion of personal privacy since no legitimate public interest would be served by disclosure. 5 U.S.C. § 552(b)(7)(C).

10. A description of the 41 pages released to plaintiff on March 5, 2007, with excisions made by the USMS pursuant to exemption 7(C) of the FOIA is provided as follows:

5

| **Documents Released with Certain Information Deleted and Withheld** | **No: of Pages** |
|---|---|

Item 1:     Emails dated 9/10/01; 5/21/03;6/26/03     **4**
            Removed names of government employees

Item 2:     Undated email     **1**
            Removed names of government employees

Item 3:     Fax transmittal sheets dated 12/11/01; 10/23/02     **3**
            and 6/19/03
            Removed names of government employees

Item 4:     Fax Messages dated 10/22/02     **2**
            Removed names of government employees

Item 5:     Detainers dated 8/30/01 (w/duplicate copies);     **10**
            8/23/01 (w/duplicate copies); 5/23/03; 5/28/03
            Removed names of law enforcement personnel
            and third-party individuals

Item 6:     Fugitive/Criminal Matter Memos dated 9/5/01; and     **4**
            5/20/03 (w/duplicate copy)
            Removed name of government employee

Item 7:     Prisoner Medical Records Release (Form USM-552) dated     **1**
            11/05/02
            Removed name of law enforcement officer

Item 8:     Texas Dept. of Health - Report of Case and Patient Services     **2**
            dated 10/23/02 (w/duplicate copy)
            Removed name of third-party individual

Item 9:     Texas Uniform Health Status Update dated 6/26/03     **1**
            Removed name of third-party individual

Item 10:    USMS Medical Summary of Federal Prisoner/Alien In Transit     **1**
            dated 10/23/02
            Removed name of third-party individual

Item 11:    Individual Custody and Detention Report (Form USM-129)     **3**
            Dated 6/12/03 (2 pages); and 7/28/03
            Removed names of government employees

Item 12:     Personal History Defendant (Form USM-312) dated     2
11/5/02
Removed names and information of third–party individuals

Item 13:     Warrant Information Network  Report     2
dated 1/29/07 (2 pages)
Removed names and information on other
prisoners

Item 14:     Movement/Transportation Printout dated 10/22/2002     2
(w/duplicate copy)
Removed name of government employee

Item 15:     Prisoner Remand or Order to Deliver and Receipt     1
for U.S. Prisoners (Form UMS-41) dated 5/1/03
(w/duplicate copy)
Removed names of other prisoners, and law enforcement
personnel

Item 16:     Prisoner Custody Alert Notice (Form USM-130) dated 6/30/03     1
Removed name of government employee

Item 16:     Federal Bureau of Investigation Fingerprint Sheet (page 2)     1
Removed name of government employee

     11.  In summary, a total of one hundred fifty-one (151) pages were located which were indexed to plaintiff's name.  Of this material, the USMS released one hundred twenty-eight (128) pages to plaintiff of which, eighty-seven (87) pages were released in their entirety, and forty-one (41) pages were released with information excised and withheld pursuant to exemption 7(C) of the FOIA, 5 U.S.C. § 552(b)(7)(C).  The remaining twenty-three (23) pages contained information which originated with the Bureau of Prisons (BOP) and were referred to the BOP for disclosure determination and direct  response to plaintiff.

     12.  No reasonably segregable non-exempt portions were withheld from plaintiff.  Accordingly, all information withheld was exempt from disclosure pursuant a FOIA

exemption or was not reasonably segregable because it was so intertwined with protected material that segregation was not possible or its release would have revealed the underlying protected material. All documents which relate to plaintiff's request were processed to achieve maximum disclosure consistent with the provisions of the FOIA.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my information and belief.

_____

**WILLIAM E. BORDLEY**

Date Executed: _08.07.07_

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Daniel Gilbert Juarez,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | )     Civil Action No.: 07-0955 RJL |
| | ) |
| **Federal Bureau of Investigation, et al,** | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF DENISE M. GOTTLEIB

I, Denise M Gottleib, do hereby declare and state the following:

1.  I am currently a Paralegal Specialist at the Federal Bureau of Prisons, Office of

General Counsel, Freedom of Information Act Section, Washington, D.C.  I have been employed

in this position since March of 2006; however, I have been employed with the Bureau of Prisons

since February of 1995.  My duties include assisting the Chief, Freedom of Information

Act/Privacy Act Section and Freedom of Information Administrator in the review and possible

release of information requested from the Bureau of Prisons via the Freedom of Information Act.

2.  The Freedom of Information Act, commonly referred to as FOIA, is a statute

governing the release of government records.  In general, FOIA provides that any person has a

right, enforceable in court, to obtain access to federal agency records, except to the extent that

such records (or portions of them) are protected from public disclosure by one of nine

exemptions or by one of three (3) special law enforcement record exclusions.

1

3.  The Plaintiff, Daniel Gilbert Juarez, Register Number 68893-079 alleges "the BOP is in violation of the FOIA."

4.  Mr. Juarez's request was received at the BOP's FOIA Office, Washington, D.C. on March 8, 2007.  The request was logged in and assigned FOIA Request Number 2007-04025.

5.  BOP responded to FOIA Request Number 2007-04025 on April 2, 2007, releasing 13 pages of documents in their entirety, and 10 pages with redactions pursuant to 5 U.S.C. §552 (b)(7)(C), and (b)(7)(F).  See Exhibit A, a true and correct copy of BOP response letter.

6.  Copies of the redacted documents and withheld documents contain, on their face, exemptions which detail the nature of the information withheld pursuant to the provisions of the FOIA.  A more detailed description of the information withheld could identify the protected material.  As described below, no reasonably segregable non-exempt portions were withheld from plaintiff.  Accordingly, all information withheld was exempt from disclosure pursuant to a FOIA exemption or was not reasonably segregable because it was so intertwined with protected material that segregation was not possible or its release would have revealed the underlying protected material.  All documents which relate to plaintiff's requests were processed to achieve maximum disclosure consistent with the provisions of the FOIA.  See Exhibit B, a true and correct copy of 23 pages of documents with excisions.

7.  Exemption (b)(7)(C) provides for the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  The private and public interest was also balanced in this case.  The private interest outweighed the public interest.   Plaintiff did not identify any public interest.  Specifically, these records contained other inmates names and register numbers and other

2

identifiable information concerning inmates the plaintiff is to be separated from.  If inmate

Juarez had this information, he could retaliate against  inmates.  It also pertains to information

concerning plaintiff's Central Inmate Monitoring (CIMS) information, which may indicate

whether the plaintiff has testified against anyone in court or assisted law enforcement in any

way, and a law enforcement officer's name which was used in an investigation.  This

information could endanger the life and physical safety of the plaintiff and other individuals.

This exemption was applied in order to excise certain information from nine (9) pages of law

enforcement documents.  Id.

8.  Exemption (b)(7)(F), provides for the withholding of records or information compiled

for law enforcement purposes which could endanger the lives or physical safety of an individual.

This exemption was used to excise ten(10) pages of law enforcement documents. Specifically,

these records contained other inmates names and register numbers and other identifiable

information concerning inmates the plaintiff is to be separated from.  If inmate Juarez had this

information, he could do physical harm to others.  It also pertains to information concerning

plaintiff's Central Inmate Monitoring (CIMS) information, which may indicate whether the

plaintiff has testified against anyone in court or assisted law enforcement in any way.  Id.

9.  As of this date, the BOP has not heard anything further from Plaintiff Juarez on these

matters.  In addition, the BOP has inquired with the Office of Information and Privacy (OIP),

Washington, D.C. as to whether Plaintiff Juarez has appealed, and the Office of Information and

Privacy indicated the appeal was received but not responded to as of June 14, 2007.

10.  The appeal documents were faxed to OIP for a decision on June 14, 2007.

I declare under the penalty of perjury, pursuant to Title 28 U.S.C. § 1746, the foregoing is

true and correct to the best of my information, knowledge and belief.

Executed this _____ day of August, 2007, at Washington, D.C.


Denise M. Gottleib
Paralegal Specialist
Federal Bureau of Prisons
Washington, D.C.

**U.S. Department of Justice**

Federal Bureau of Prisons

APR - 2 2007

*Washington, DC 20534*

Daniel Juarez                          For Further Inquiry Contact:
Reg No. 68893-079                      Federal Bureau of Prisons
USP Big Sandy                          320 First Street. N.W.
P O Box 2068                           Room 841 HOLC Building
Inez, KY 41224                         Washington, D.C. 20534
                                       Attn: FOIA/Privacy Act Office

RE:  Request No. 07-04025

Dear Mr. Juarez:

    In response to your Freedom of Information Act request to the
US Marshals Service, the enclosed 23 pages, which originated with
the Federal Bureau of Prisons, were referred to this office for
our release determination.

    We are releasing 13 pages in their entirety and 10 pages with
excisions.  The statutory basis for these excisions and
withholdings is 5 U.S.C., §552 (b)(7)(C) and (b)(7)(F).

    Exemption (b)(7)(C), exempts information that could
reasonably be expected to constitute an unwarranted invasion of
personal privacy.

    Exemption (b)(7)(F), exempts information that could
reasonably be expected to endanger the life or physical safety of
any individual.

    Pursuant to 28 C.F.R., §16.45, this partial denial may be
appealed to the Attorney General by filing a written appeal within
sixty days of the date of this letter.  The appeal should be
addressed to the Office of Information and Privacy, USDOJ, 1425
New York Ave., NW, Suite 11050, Washington, DC 20530-0001.  Both
the envelope and the letter of appeal itself must be clearly
marked:  "Privacy Act Appeal."

Sincerely,

Wanda M. Hunt
Chief, FOIA/PA Section

Enclosure



07 - 04025

**U.S. Department of Justice**
Federal Bureau of Prisons
Community Corrections Office

*515 Rusk Avenue, Room 12024*
*Houston, Texas 77002*
*(713) 718-4781  Fax: (713) 718-4780*

DATE:    July 25, 2003

TO:    U.S. Marshal Service
      Southern District of Texas

FROM:    Donna Murray, CCW
        *for* Benjamin R. Tousley, Community Corrections Manager
        Community Corrections Office - Houston

SUBJECT:   Inmate Designations

| Inmate Name | Register # | USM | Designate d Facility | Rel/ Vol. Surr. Date |
|---|---|---|---|---|
| (b)(7)c, (b)(7)f | | | | |
| | (b)(7)c, (b)(7)f | | | |
| | | | | Reg'l P/W |
| | | | | V/S 8/18 |
| Juarez, Daniel | 68893-079 | CCR | BMM | |
| (b)(7)c, (b)(7)f | (b)(7)c, (b)(7)f | | | |

TOTAL P.01

```
TALRU  535*08 *              FEDERAL BUREAU OF PRISONS           *      05-07-2003
PAGE 001        *              IN-TRANSIT DATA FORM              *      17:54:49


NAME.......: JUAREZ, DANIEL GILBERTO
REGISTER NO: 68893-079                          DOB (AGE): 10-20-1967 (35)
RACE / SEX.: WHITE / MALE                       ETHNIC...: HISPANIC
RESIDENCE..: MCALLEN, TX 78502                  RSP OF...: TAL A-HLD

DESTINATION: USM-FLN USM-(MCALLEN)              LEVEL/CUSTODY: LOW        /IN
                                                PROJ REL DATE:
ESCAPE.....: NONE                               DETAINERS....: UNKNOWN
VIOLENCE...: < 5 YRS MINOR                      NOTIFICATIONS: UNKNOWN
HGT.: 602      HAIR: BN
WGT.: 280      EYES: BN
OFFN/CHG RMKS: CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE 1.99 KILOGRAMS
               OF COCAINE;51 MONTHS SRA + 5 YRS SUPERVISED RELEASE + $50 SA.

*NOTE* SENSITIVE-LIMITED OFFICIAL USE CMC AND SEPARATEE HARDCOPY DATA ATTACHED
```

```
********************************************
```

GENERAL PHYSICAL APPEARANCE (COMMENTS):

LIST ANY NON-ROUTINE SECURITY NEEDS:

NAME OF NEAREST RELATIVE OF

CITY AND STATE OF RELATIVE..

ADDITIONAL COMMENTS:

```
***************************
```

NOTE:    STATEMENT TO TRANSPO
"SENSITIVE — LIMITED OFFICIA

TRANSPORTING OFFICER: _____

PREPARED BY: WEST/WILLIAMS

**JUAREZ**
DANIEL    GILBERTO

68893*079          ATL

Date of Photo  MAY 14, 2003

Race        DOB

HT    WT    HR    EY

CUS

68893*079          MAY 1

```
**********
```

INTAINED."

E: 05-07-2003

```
   TALRT   535.07 *      CIM CLEARANCE AND SEPARATEE DATA     *     05-13-2003
   PAGE 001         *                                          *     15:34:17

   REGISTER NO: 68893-079 NAME: JUAREZ, DANIEL GILBERTO

   REGISTER                   FIRST    ARS ARS         ARS        ARS   QTR
   NUMBER    LAST NAME        NAME     FCL ASSIGN      DATE       TIME ASSIGN

   68893-079 JUAREZ          DANIEL    TAL A-HLD      05-07-2003 1444 J07-137LAD
   CMC ASSGNS: SEPARATION
   02 REMARKS: 12/11/98 NCR/APD APV TEMP TRF FM IVN SCP TO WAS-448. (316)CEO-
   02 REMARKS: 10/29/02,TAL/SWH CLR CIM WAP,N/FL PEN 10/30/02,RET TAL PDC.
   02 REMARKS: 7/6/99 WAS/MGT CLR CCC 6ZR,EDINBURG,TX,8/11-12/9/99
   02 REMARKS: 5/13/03,TAL/SWH CLR CIM RET PARENT FAC HILDAGO CO,TX 5/14/03.
```

(b)(7)c, (b)(7)f

(b)(7)c, (b)(7)f

```
   G0002       MORE PAGES TO FOLLOW . . .
```

```
  OKLDC  535*08 *        FEDERAL BUREAU OF PRISONS          *     05-19-2003
  PAGE 003 OF 003 *      CIM CLEARANCE AND SEPARATEE DATA    *     00:27:47

REGISTER NO: 68893-079 NAME: JUAREZ

  REGISTER                    FIRST     ARS ARS        ARS          ARS  QTR
  NUMBER      LAST NAME       NAME      FCL ASSIGN     DATE         TIME ASSIGN

  68893-079 JUAREZ           DANIEL    ATL A-HLD      05-14-2003 1403 J02-255L
  CMC ASSGNS: SEPARATION
  02 REMARKS: 12/11/98 NCR/APD APV TEMP TRF FM LVN SCP TO WAS-448. (316)CEO-
  02 REMARKS: 10/29/02,TAL/SWH CLR CIM WAP,N/FL PEN 10/30/02,RET TAL FDC.
  02 REMARKS: 7/6/99 WAS/MGT CLR CCC 6ZR,EDINBURG,TX,8/11-12/9/99
  02 REMARKS: 5/13/03,TAL/SWH CLR CIM RET PARENT FAC HILDAGO CO,TX 5/14/03.
```

(b)(7)c, (b)(7)f

(b)(7)c, (b)(7)f

```
G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

```
OKLDC  535*08 *          FEDERAL BUREAU OF PRISONS          *      05-19-2003
PAGE 002      *          INTAKE SCREENING FORM              •      00:27:47
```

```
NAME.......: JUAREZ, DANIEL GILBERTO
REGISTER NO: 68893-079                    DOB (AGE): 10-20-1967 (35)
RACE / SEX.: WHITE / MALE                 ETHNIC...: HISPANIC
RESIDENCE..: MCALLEN, TX 78502            RSP OF...: ATL A-HLD


                                          DESTINATION..: USM-TXS
MGMT VAR...: NONE                         USM LOCATION.: S/TX CORPUS
SEN LIMT...: NONE                         DESIG REQ BY.: CHN
PUB SAFETY.: NONE                         DT DESIGNATED: 08-15-1996
SEVERITY...: MODERATE
PRIOR......: NONE                         LEVEL/CUSTODY: LOW        /IN
PRECOMMT...: N/A                          PROJ REL DATE:
REVIEW DATE: 06-29-1999                   PROJ REL METH:
ESCAPE.....: NONE                         TRANSFER DATE: 12-09-1999
VIOLENCE...: < 5 YRS MINOR                TRANSFER TYPE: GCT REL

CMC: SEPARATION
MDS: REG DUTY  , YES F/S
OFFN/CHG RMKS: CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE 1.99 KILOGRAMS
               OF COCAINE;51 MONTHS SRA + 5 YRS SUPERVISED RELEASE + $50 SA.

CCM REMARKS..: U.S. NAT CIT. FROM MX.  DEF. ARRESTED AT BORDER CHECKPOIN
               AFTER PASSENGERS IN CAR DISCOVERED TO HAVE 1.9 K COCAINE
               TAPED TO ABS.  PRIOR PROB: THEFT/EVADE ARST (TRAFFICK).
               NO MED CONCERNS.                               MDE

DESIG REMARKS: JUD REC FOLLOWED.  REVIEW FOR CDAP.

  *NOTE* SENSITIVE-LIMITED OFFICIAL USE CMC AND SEPARATEE HARDCOPY DATA ATTACHED
```

579-X-LCO

```
OKLDC  535*OB *            FEDERAL BUREAU OF PRISONS          *      05-19-2003
PAGE 001            *           INTAKE SCREENING FORM          *         00:27:47
```

```
NAME.......: JUAREZ, DANIEL GILBERTO            UNIT.....:
REGISTER NO: 68893-079                          DOB (AGE): 10-20-1967 (35)
RACE / SEX.: WHITE / MALE                       ETHNIC...: HISPANIC
RESIDENCE..: MCALLEN, TX 78502                  RSP OF...: ATL A-HLD
```

****************    I N M A T E   I N T E R V I E W    ****************

DATE & TIME ARRIVED: 05-19-2003   16:55        TIME INTERVIEWED: 956am

1)  DO YOU KNOW OF ANY REASON THAT YOU SHOULD NOT BE            (b)(7)c, (b)(7)f
    PLACED IN GENERAL POPULATION ?

2)  HAVE YOU ASSISTED LAW ENFORCEMENT AGENTS IN ANY WAY ?

3)  ARE YOU A CIM CASE ?

4)  HAVE YOU TESTIFIED AGAINST ANYONE IN COURT ?                (b)(7)c, (b)(7)f

5)  ARE YOU A MEMBER/ASSOCIATE OF ANY GANG ?

6A) HAVE YOU EVER BEEN SEXUALLY ASSAULTED ?

6B) HAVE YOU RECENTLY BEEN SEXUALLY ASSAULTED ?

INTERVIEWER COMMENTS:  You have had the opportunity to receive/review the "Rights
                       and Responsibilities" as well as "Disciplinary Acts / Severity
                       Scales" in addition this information is posted in the Unit
                       Bulletin Boards as the Information Handbook

CIRCLE ONE:
    I  HAVE / HAVE NOT   RECEIVED A BUREAU OF PRISON "ADMISSIONS &
    ORIENTATION BOOKLET" DEFINING MY "RIGHTS & RESPONSIBILITIES" AND
    THE "PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE".

                                                          MAY 1 9 2003
INMATE SIGNATURE:                                         DATE:

INTERVIEWER: P.J. HARTLEY        TITLE: I.S.O          DATE: 05-19-2003

****************    S T A F F   C H E C K L I S T    ****************

PSI REVIEWED.............: YES ___  NO ___
CENTRAL FILE REVIEWED....: YES ___  NO ___
IS THERE A HISTORY OF SEXUALLY AGGRESSIVE BEHAVIOR?  YES ___  NO ___
COMMENTS:_____

IF GENERAL PHYSICAL APPEARANCE IS NOT GOOD, EXPLAIN: Good

OK FOR GENERAL POPULATION:  YES ___  NO ___    (IF NO, EXPLAIN)

BP-S408.058 **ACKNOWLEDGMENT OF INMATE, PART 3 & 4** CDFRM
MAY 94
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

### 3. MONITORING OF INMATE TELEPHONE CALLS

The Bureau of Prisons reserves the authority to monitor (this includes recording) conversations on any telephone located within its institutions, said monitoring to be done to preserve the security and orderly management of the institution and to protect the public. An inmate's use of institutional telephones constitutes consent to this monitoring. A properly placed phone call to an attorney is not monitored. You must contact your unit team to request an unmonitored attorney call.

I have read the above notification on the monitoring of inmate telephone calls. I understand that telephone calls I make from institution telephones may be monitored and recorded.

Signature of Inmate **X** _____    Date _5 - 19-0 3_

I hereby certify that the above information was provided to the inmate to read). The inmate signed.
Printed Name/Signature of Staff Member _____    Date _____

### 4. NOTIFICATION IN CASE OF DEATH/ILLNESS, DISPOSITION OF PROPERTY

In the event I should die, I direct that my _A____ , whose name is _Asusena Zabeta_
                                          (Relationship)

and whose address is _Palmview TX_        _TX_           _785 26_
                     (Street)        (City)        (State)        (Zip Code)

_956) 585 1882_  be notified.
(Telephone Number)

In the event the Bureau of Prisons staff is unable to locate the above designated person, following a reasonable search, I authorize the substitution of the following person in his or her stead.

_____

{Name}              (Relationship)         [Address]            (Telephone Number)

I authorize the Bureau of Prisons to transmit my property and personal effects including money remaining to my credit in, or due me from the Bureau of Prisons to my next of kin in accordance with state law.

I agree further that disposition may be made of my personal property located within the prison facility, including clothing, in accordance with the rules and regulations of the Bureau of Prisons.

In case of serious illness or other emergency the above named persons may be contacted to be notified of my condition. I also desire and authorize that the following be notified.

| NAME | RELATIONSHIP | ADDRESS | TELEPHONE NO. |
|---|---|---|---|
| Albini Villareal | Cousin | Palmview TX | 956) 580-992 |
| Belinda Villareal | Aunt | Palmview TX | 956) 585 225 |
| Domicia Zaena | Uncle | Palmview TX | 956) 585-1839 |
| Melissa Villareal | Cousin | Palmview TX | 956) 585-5932 |

Signature of Inmate **X** _____    Date _5, 19-03_

I hereby certify that the above notification was provided to the inmate to read before the inmate voluntarily signed this notification, this ____ day of _____ , 19 ____
Printed Name/Signature of Staff Member _____    Date _____
Record Copy - Central File; Copy - Inmate
(This form may be replicated via WP)                    This form replaces BP-408(5B) dated August 1991.

BP-S354.060  **INTAKE SCREENING (MEDICAL)**    CDFRM
NOV 94
**U.S. DEPARTMENT OF JUSTICE**

(Medical staff shall complete this ~
Institution)

| Institution | Date |
|---|---|
| | |

Inmate's Name

JUAREZ
DANIEL GILBERTO          68893-079
HT/602    WT/280    HR/BN    EY/BN
CUSTODY/IN

## M E D I C A L   C L E A R A N C E

1. BP-149(60) reviewed? ☒ yes; ☐ no (Explain)

2. General Population Housing Approved? ☐ yes; ☐ no (Specify limitation or need)

3. Approved for Temporary Work Assignment? ☐ yes; ☐ no (Specify limitations or exclusions)

4. For Holdovers:  OK for Continued Transport? ☐ yes; ☐ no (Explain)

5. Disabilities?  ☐ yes  ☐ no   (If yes, enter code(s) into MDS)
   Code(s)

6. Remarks:

| Medical Staff Signature | Date MAY 1 9 2003 | Time 10:0 |
|---|---|---|

Medical Staff Title  D. Mann, RN
                     Clinical Nurse

Record Copy - Inmate Central File; copy - file
(This form may be replicated via WP)  Federal Transfer Ctr., OKC, OK

Replaces BP-354(60) of APRIL 1990
and BP-S354 of AUG 1994

BP-S354.060 **INTAKE SCREENING (MEDICAL)**
NOV 94
**U.S. DEPARTMENT OF JUSTICE**

(Medical staff shall complete
Institution)

---

| Institution | 1 |

---

Inmate's Name

JUAREZ
DANIEL GILBERTO
W/M/H/10-20-1967   HR/BN   EY/BN
HT/602   WT/280
CUSTODY/

68893-079

he

--

---

## M E D I C A L   C L E A R A N C E

---

1. BP-149(60) reviewed? ☒ yes; ☐ no (Explain)

2. General Population Housing Approved? ☒ yes; ☐ no (Specify limitation or need)

3. Approved for Temporary Work Assignment? ☒ yes; ☐ no (Specify limitations or exclusions)

4. For Holdovers:   OK for Continued Transport? ☒ yes; ☐ no (Explain)

5. Disabilities?   ☐ yes   ☒ no   (If yes, enter code(s) into MDS)
   Code(s)

6. Remarks:

| Medical Staff Signature | Date | OCT 2 4 2002 | Time |

Medical Staff Title

Lt P. Cook, RN
FTC, OKC

Record Copy - Inmate Central File; copy - file
(This form may be replicated via WP)

Replaces BP-354(60) of
and BP-S354 of

This form is to be completed by each inmate upon initial entry into the custody of the BOP. Staff shall also complete and sign as appropriate: then re-completed only when the inmate desires a change in any section.

| Name of Inmate | Register Number | Institution |
|---|---|---|
| JUAREZ DANIEL | X 68893-079 | FDC TALLAHASSEE FL |

## 1. CORRESPONDENCE

The staff of each institution of the Bureau of Prisons has the authority to open all mail addressed to you before it is delivered to you. "Special mail" from the President and Vice President of the U.S. Congress, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including U.S. Attorneys), other Federal Law enforcement officers, State Attorney General, Prosecuting Attorneys, Governors, U.S. Courts, (including U.S. Probation Officers and State Courts) may be opened only in your presence to be checked for contraband. The procedure occurs only if the sender adequately identifies himself or herself on the envelope and the front of the envelope is marked "Special mail" open only in the presence of the inmate." Other mail may be open and read by the staff.

If you do not want your general correspondence opened and read, the Bureau will return it to the Postal Service. This means that you will get such mail. You may choose whether you want your general correspondence delivered to you subject to the above conditions, or returned to the Postal Service. Whatever your choice, special mail will be delivered to you, after it is opened in your presence and checked for contraband. You can make a choice by signing Part I or Part II).

### Part I - General Correspondence to be returned to the Postal Service

I have read or had read to me the foregoing notice regarding mail. I do not want my general correspondence opened and read. I REQUEST THAT THE BUREAU OF PRISONS RETURN MY GENERAL CORRESPONDENCE TO THE POSTAL SERVICE. I understand that special mail will be delivered to me, after it is opened in my presence and checked for contraband.

| Signature of Inmate | Register Number | 6893-079 | Date 5-7-05 |
|---|---|---|---|

### Part II - General Correspondence to be Opened, Read and Delivered

I have read or had read to me the foregoing notice regarding mail. I WISH TO RECEIVE MY GENERAL CORRESPONDENCE. I understand the Bureau of Prisons may open and read my general correspondence if I choose to receive same. I also understand that special mail will be delivered after it is opened in my presence and checked for contraband.

| Signature of Inmate X | Register Number X | 68995-079 | Date X 05/07/200 |
|---|---|---|---|

Inmate refused to sign this form. He (She) was advised by me that the Bureau of Prisons retains the authority to open and read all correspondence. The inmate was also advised that his (her) refusal to sign this form will be interpreted as an indication that he (she) wishes to general correspondence subject to the conditions in Part II above.

| Printed Name /Signature of Staff Member | | Date |
|---|---|---|

## 2. AUTHORIZATION FOR DISPOSITION OF FUNDS

While confined within a prison facility under custody of the U.S. Attorney General or the Attorney General's designee(s), an inmate is prohibited from directly receiving or possessing (unless specifically authorized by the local institution) U.S. currency or checks, or other forms of negotiable instruments. An account for funds received on behalf of the inmate, the Bureau of Prisons establishes for each inmate a Prisoner's Trust Fund Account. The Director, Bureau of Prisons, or the Director's authorized designee(s) serves as the custodian of any and all funds received by an inmate while the inmate is incarcerated in the custody of the U.S. Attorney General.

I hereby [✓] authorize     [ ] do not authorize  [mark one] the Director, Bureau of Prisons, or the Director's authorized designee(s), and the Warden or the Warden's authorized designee(s) in this or in any other federal institution in which I may later be confined, to sign my name as endorser on all checks, money orders, or bank drafts, or other forms of negotiable instruments, for deposit to my credit in the Prisoners Trust Fund Account, as I am a prisoner in the Bureau of Prisons. I understand that by not providing this authorization., I will I not be able to receive checks, money orders, bank drafts, or other forms of negotiable instruments while confined.

I further understand that all negotiable instruments sent to me should reference my name and register number in order to provide for proper deposit to my account. If my name and register number are not referenced the institution mail room officer may return the negotiable instrument to the sender.

| Signature of Inmate X | Register Number X | 6893-029 | Date X 05/07/200 |
|---|---|---|---|

Inmate refused to sign this form. He (she) was advised by me that his (her) refusal to sign this form will be interpreted as an indication that he (she) does not authorize the Bureau of Prisons to endorse on his (her) behalf all checks, money orders, or bank drafts, or other forms of negotiable instruments for deposit in his (her) credit in the Prisoner's Trust Fund Account and that he(she) will not be able to receive such funds while confined.

Printed Name /Signature of Staff Member _____ Date _____

Replaces BP-407(5B) of OCT ...

Institution __FDC-__
Unit __JAIL__

Every effort will be made to provide a safe working environment. As a new commitment you are being provided ⌐
of the safety regulations as reflected below, and a copy of the Inmate Accident Compensation Procedures. You are
sign and date this form at the bottom to indicate you have received this information.

1. Each inmate worker is required to exercise care, cooperation, and common sense in the performance of his work a
Horseplay on the job will not be tolerated.

2. An inmate worker will perform only that work to which he is assigned. Unauthorized use of machines or equipmen
formance of work in an area not specifically assigned, is forbidden and subject to disciplinary action. Machines or
in the work area shall not be used to fabricate or repair personal items.

3. Operating machinery without the use of safety guard(s) as provided is forbidden and subject to disciplinary action.

4. Do not adjust, oil, clean, repair, or perform any other maintenance to any machinery while it is in motion. Stop the ⌐
first and use lock-out devices when provided.

5. To protect against physical injury and/or health hazard, each inmate worker is required to use all safety equipment ⌐
Personal protective equipment such as hard hats, hearing protection, goggles, respirators, aprons, arm-guards, wire mes
and safety shoes are to be used in designated areas and must be worn in the proper manner.

6. Safety goggles must be worn when performing any grinding, chiseling, filing or sanding operation. Landscape o⌐
involving the operation of weedeaters or edgers also require the use of safety goggles.

7. Vehicle drivers must obey all institutional driving rules.

8. Do not ride on tractors, forklifts, or any other tow vehicle. The operator is the only person authorized in the use
machinery.

9. Do not stand up in a moving vehicle or attempt to dismount before the vehicle has come to a complete stop. Sit ⌐
provided and keep safety chains in place on open back vehicles.

10. Smoking is not permitted in any area designated as a No Smoking area.

11. Safety hazards are to be reported to your work supervisor immediately. If the work supervisor does not agree that an
condition exists, you are to report the unsafe condition to the institution's Safety Manager for further conside

12. If you are injured while performing your work assignment, no matter how minor it may seem, report the injury to you⌐
supervisor. Failure to report a work injury within a maximum of 48 hours may result in the forfeiture of lost time wages
inmate accident compensation.

13. If you suffer a work injury, and feel your injury has resulted in some degree of physical impairment, you may file a
for Inmate Accident Compensation. To do so, you should contact the institution's Safety Manager approximately 30
prior to your release or transfer to a Community Treatment Center. The Safety Manager will assist you in completing
claim and will arrange a medical evaluation which must be performed with regard to your claimed i⌐

I have read and understand the above information.

_M. J. Williams_

Witnessed by:

X _____
Name

X _68893-078_   _05/07/20__
Reg. No.   Date

cc:   Signed copy will be forwarded to the Inmate Central File. Refusal to sign for receipt will be noted on the form.

Note.   Should the inmate indicate in any way he is unable to read, safety regulations will be read to him, and Inmate Accident
Compensation Procedures explained.

```
   TALRT  535*08 *        FEDERAL BUREAU OF PRISONS       *    05-07-2003
   PAGE 003 OF 003 *    CIM CLEARANCE AND SEPARATEE DATA   *    14:54:12

REGISTER NO: 68893-079 NAME: JUAREZ

REGISTER                    FIRST    ARS ARS      ARS       ARS  QTR
NUMBER     LAST NAME        NAME     FCL ASSIGN   DATE      TIME ASSIGN

68893-079 JUAREZ           DANIEL   TAL A-HLD    05-07-2003 1444 J09-001L
CMC ASSGNS: SEPARATION
02 REMARKS: 12/11/98 NCR/APD APV TEMP TRF FM LVN SCP TO WAS-448. (356)CEO-
02 REMARKS: 10/29/02,TAL/SWH CLR CIM WAP,N/FL PEN 10/30/02,RET TAL FDC.
02 REMARKS: 7/6/99 WAS/MGT CLR CCC &ZR,EDINBURG,TX,8/11-12/9/99
02 REMARKS: 7/8/99 NCR/JMC APV TRF FM LVN SCP/WAS A-HLD TO WAS-448 (307).
```

(b)(7)c, (b)(7)f

(b)(7)c, (b)(7)f

G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

```
   TALRT  535*08 *         FEDERAL BUREAU OF PRISONS        *    05-07-2003
   PAGE 002        *           INTAKE SCREENING FORM        *    14:54:12


NAME.......: JUAREZ, DANIEL GILBERTO
REGISTER NO: 68893-079                      DOB (AGE): 10-20-1967 (35)
RACE / SEX.: WHITE / MALE                   ETHNIC...: HISPANIC
RESIDENCE..: MCALLEN, TX 78502              RSP OF...: TAL A-HLD


                                         DESTINATION..: OSM-FLN
MGMT VAR...: NONE                         USM LOCATION.: S/TX CORPUS
SEN LIMT..: NONE                          DESIG REQ BY.: CHN
PUB SAFETY.: NONE                         DT DESIGNATED: 08-15-1996
SEVERITY...: MODERATE
PRIOR......: NONE                         LEVEL/CUSTODY: LOW        /IN
PRECOMMT...: N/A                          PROJ REL DATE:
REVIEW DATE: 06-29-1999                   PROJ REL METH:
ESCAPE.....: NONE                         TRANSFER DATE: 12-09-1999
VIOLENCE...: < 5 YRS MINOR                TRANSFER TYPE: GCT REL

CMC: SEPARATION
MDS: REG DUTY  , YES F/S
OFFN/CHG RMKS: CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE 1.99 KILOGRAMS
               OF COCAINE;51 MONTHS SRA + 5 YRS SUPERVISED RELEASE + $50 SA.

CCM REMARKS.: U.S. NAT CIT. FROM MX.  DEF. ARRESTED AT BORDER CHECKPOIN
               AFTER PASSENGERS IN CAR DISCOVERED TO HAVE 1.9 K COCAINE
               TAPED TO ABS.  PRIOR PROB: THEFT/EVADE ARST (TRAFFICK).
               NO MED CONCERNS.                             MDE

DESIG REMARKS: JUD REC FOLLOWED.  REVIEW FOR CDAP.

      *NOTE* SENSITIVE=LIMITED OFFICIAL USE CMC AND SEPARATEE HARDCOPY DATA ATTACHED
```

```
TALRT  535*08 *        FEDERAL BUREAU OF PRISONS         *    05-07-2003
PAGE 001         *        INTAKE SCREENING FORM            *    14:54:12
```

NAME.......: JUAREZ, DANIEL GILBERTO        UNIT.....: ~~☰~~ SHU
REGISTER NO: 68893-079                      DOB (AGE): 10-20-1967 (35)
RACE / SEX.: WHITE / MALE                   ETHNIC...: HISPANIC
RESIDENCE..: MCALLEN, TX 78502              RSP OF...: TAL A-BLD

```
******************  I N M A T E    I N T E R V I E W  ****************
```

DATE & TIME ARRIVED: 05-07-2003   15:00        TIME INTERVIEWED: 5:45pm

1)  DO YOU KNOW OF ANY REASON THAT YOU SHOULD NOT BE        (b)(7)c, (b)(7)f
    PLACED IN GENERAL POPULATION ?

2)  HAVE YOU ASSISTED LAW ENFORCEMENT AGENTS IN ANY WAY

3)  ARE YOU A CIM CASE ?

4)  HAVE YOU TESTIFIED AGAINST ANYONE IN COURT ?                (b)(7)c, (b)(7)f

5)  ARE YOU A MEMBER/ASSOCIATE OF ANY GANG ?

6A) HAVE YOU EVER BEEN SEXUALLY ASSAULTED ?

6B) HAVE YOU RECENTLY BEEN SEXUALLY ASSAULTED ?

INTERVIEWER COMMENTS:  51 mos. Cocaine

---

CIRCLE ONE:
    I  (HAVE) / HAVE NOT    RECEIVED A BUREAU OF PRISON "ADMISSIONS &
    ORIENTATION BOOKLET" DEFINING MY "RIGHTS & RESPONSIBILITIES" AND
    THE "PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE".

INMATE SIGNATURE: _____        DATE: 5-7-03

INTERVIEWER: WILLIAMS              TITLE: CCC        DATE: 05-07-2003
             M. Williams
```
******************  S T A F F    C H E C K L I S T  ***************
```

PSI REVIEWED.............: YES ___  NO ✓
CENTRAL FILE REVIEWED....: YES ___  NO ✓
IS THERE A HISTORY OF SEXUALLY AGGRESSIVE BEHAVIOR?  YES ___  NO ✓
COMMENTS: Writ

IF GENERAL PHYSICAL APPEARANCE IS NOT GOOD, EXPLAIN:_____
        Good

OK FOR GENERAL POPULATION: YES ✓  NO ___    (IF NO, EXPLAIN)

                    Security concerns  Low/In
                                       USM - FL/N

BP-S407.058   ACKNOWLEDGMENT OF INMATE, PART 1 & 2   CDFRM
MAY 94

## U.S. DEPARTMENT OF JUSTICE                                  FEDERAL BUREAU OF PRISONS

This form is to be completed by each inmate upon initial entry into the custody of the BOP.  Staff shall also complete and sign as appropriate.  The form is then re-completed only when the inmate desires a change in any section.

| Inmate's Name | Register No. | Institution |
|---|---|---|
| Daniel Juarez Gibate | 688 93·02 9 | FTC Oklahoma City, OK |

### 1. CORRESPONDENCE

The staff of each institution of the Bureau of Prisons has the authority to open all mail addressed to you before it is delivered to you.  "Special Mail" (mail from the President and Vice President of the U.S., Attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including U.S. Attorneys), other Federal Law enforcement officers, State Attorney General, Prosecuting Attorneys, Governors, U.S. Courts, (including U.S. Probation Officers and State Courts) may be opened only in your presence to be checked for contraband.  This procedure occurs only if the sender adequately identifies himself or herself on the envelope and the front of the envelope is marked "Special Mail-Open only in the presence of the inmate."  Other mail may be opened and read by the staff.

If you do not want your general correspondence opened and read, the Bureau will return it to the Postal Service.  This means that you will not receive such mail.  You may choose whether you want your general correspondence delivered to you subject to the above conditions, or returned to the Postal Service.  Whatever your choice, special mail will be delivered to you, after it is opened in your presence and checked for contraband.  You can make your choice by signing Part I or Part II.

### Part I - General Correspondence to be Returned to the Postal Service

I have read the foregoing notice regarding mail.  I do not want my general correspondence opened and read.  I REQUEST THAT THE BUREAU OF PRISONS RETURN MY GENERAL CORRESPONDENCE TO THE POSTAL SERVICE.  I understand that special mail will be delivered to me, after it is opened in my presence and checked for contraband.

| Signature of Inmate | Register No. | Date |
|---|---|---|
|  |  |  |

## OR

### Part II - General Correspondence to be Opened, Read and Delivered

I have read the foregoing notice regarding mail. I WISH TO RECEIVE MY GENERAL CORRESPONDENCE.  I understand that the Bureau of Prisons may open and read my general correspondence if I choose to receive same.  I also understand that special mail will be delivered to me, after it is opened in my presence and checked for contraband.

| Signature of inmate X | Register No. | Date |
|---|---|---|
|  |  |  |

Inmate refused to sign this form.  He (she) was advised by me that the Bureau of Prisons retains the authority to open and read all general correspondence.  The inmate was also advised that his (her) refusal to sign this form will be interpreted as an indication that he (she) wishes to receive general correspondence subject to the conditions in Part II above.

| Printed Name/Signature of Staff Member | Date |
|---|---|
|  |  |

### 2. AUTHORIZATION FOR DISPOSITION OF FUNDS

While confined within a prison facility under custody of the U.S. Attorney General or the Attorney General's designee(s), an inmate is prohibited from directly receiving or possessing (unless specifically authorized by the local institution) U.S. currency or checks, or other forms of negotiable instruments.  To account for funds received on behalf of the inmate, the Bureau of Prisons establishes for each inmate a Prisoner's Trust Fund Account.  The Director, Bureau of Prisons, or the Director's authorized designee(s) serves as the custodian of any and all funds received by an inmate while the inmate is incarcerated in the custody of the U.S. Attorney General.

I hereby authorize the Director, Bureau of Prisons, or the Director's authorized designee(s), and the Warden or the Warden's authorized designee(s) in this or in any other federal institution in which I may later be confined, to sign my name as endorsement on all checks, money orders, or bank drafts, or other forms of negotiable instruments, for deposit to my credit in the Prisoner's Trust Fund Account, as long as I am a prisoner in the Bureau of Prisons.  I understand that by not providing this authorization, I will not be able to receive checks, money orders, or bank drafts, or other forms of negotiable instruments while confined.

I further understand that all negotiable instruments sent to me should reference my name and register number in order to provide for proper deposit to my account.  If my name and register number are not referenced the institution mail room officer may return the negotiable instrument to the sender.

| Signature of Inmate X | Register No. 688-93-079 | Date 10-25-02 |
|---|---|---|

Inmate refused to sign this form.  He (she) was advised by me that his (her) refusal to sign this form will be interpreted as an indication that he (she) does not authorize the Bureau of Prisons to endorse on his (her) behalf all checks, money orders, or bank drafts, or other forms of negotiable instruments for deposit to his (her) credit in the Prisoner's Trust Fund Account and that he (she) will not be able to receive such funds while confined.

| Printed Name/Signature of Staff Member | Date |
|---|---|

Record Copy - Central File; Copy - Inmate
(This form may be replicated via WP)                          Replaces BP-407(58) of OCT 88

```
OKLCW  535*08 *          FEDERAL BUREAU OF PRISONS          *    10-23-2002
PAGE 003 OF 003 *       CIM CLEARANCE AND SEPARATEE DATA     *    23:21:53

REGISTER NO: 68893-079 NAME: JUAREZ

REGISTER                      FIRST   ARS ARS        ARS        ARS  QTR
NUMBER     LAST NAME          NAME    FCL ASSIGN      DATE       TIME ASSIGN

68893-079 JUAREZ              DANIEL  CHN GCT REL    12-09-1999 0800
CMC ASSGNS: SEPARATION
02 REMARKS: 12/11/98 NCR/APD APV TEMP TRF FM LVN SCP TO WAS-44B. (316)CEO-
02 REMARKS: CEO APPROVAL.
02 REMARKS: 7/6/99 WAS/MGT CLR CCC 62R,EDINBURG,TX,8/11-12/9/99
02 REMARKS: 1/8/99 NCR/JMJ APV TRF FM LVN SCP/WAS A-HLD TO WAS-44B (307).
```

(b)(7)c, (b)(7)f

(b)(7)c, (b)(7)f

G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

```
OKLCW  535*08 *          FEDERAL BUREAU OF PRISONS          *    10-23-2002
PAGE 002          *          INTAKE SCREENING FORM          *    23:21:53
```

```
NAME........: JUAREZ, DANIEL GILBERTO
REGISTER NO: 68893-079                      DOB (AGE): 10-20-1967 (35)
RACE / SEX.: WHITE / MALE                    ETHNIC...: HISPANIC
RESIDENCE..: MCALLEN, TX 78502               RSP OF...: CHN GCT REL.


                                           DESTINATION..:
MGMT VAR...: NONE                          USM LOCATION.: S/TX CORPUS
SEN LIMT...: NONE                          DESIG REQ BY.: CHN
PUB SAFETY.: NONE                          DT DESIGNATED: 08-15-1996
SEVERITY...: MODERATE
PRIOR......: NONE              .           LEVEL/CUSTODY: LOW          /
PRECOMMT...: N/A                           PROJ REL DATE:
REVIEW DATE: 06-29-1999                    PROJ REL METH:
ESCAPE.....: NONE                          TRANSFER DATE: 12-09-1999
VIOLENCE...: < 5 YRS MINOR                 TRANSFER TYPE: GCT REL

CMC: SEPARATION
MDS: REG DUTY  , YES F/S


OFFN/CHG RMKS: CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE 1.99 KILOGRAMS
               OF COCAINE;51 MONTHS SRA + 5 YRS SUPERVISED RELEASE + $50 SA.

CCM REMARKS..: U.S. NAT CIT. FROM MX.  DEF. ARRESTED AT BORDER CHECKPOIN
               AFTER PASSENGERS IN CAR DISCOVERED TO HAVE 1.9 K COCAINE
               TAPED TO ABS.  PRIOR PROB: THEFT/EVADE ARST (TRAFFICK).
               NO MED CONCERNS.                                MDE

DESIG REMARKS: JUD REC FOLLOWED.  REVIEW FOR CDAP.
```

*NOTE* SENSITIVE-LIMITED OFFICIAL USE CMC AND SEPARATEE HARDCOPY DATA ATTACHED

Ex L.E.O.

```
OKLCW  535*08 *          FEDERAL BUREAU OF PRISONS          *    10-23-2002
PAGE 001        *           INTAKE SCREENING FORM           *    23:21:53
```

```
NAME.......: JUAREZ, DANIEL GILBERTO          UNIT.....:  C. P.
REGISTER NO: 60893-079                        DOB (AGE): 10-20-1967 (35)
RACE / SEX.: WHITE / MALE                     ETHNIC...: HISPANIC
RESIDENCE..: MCALLEN, TX 78502                RSP OF...: CHN GCT REL
```

```
******************  I N M A T E   I N T E R V I E W  ****************

DATE & TIME ARRIVED: 10-24-2002   14:20        TIME INTERVIEWED: 4:29 P
```

(b)(7)c, (b)(7)f

1)  DO YOU KNOW OF ANY REASON THAT YOU SHOULD NOT BE
    PLACED IN GENERAL POPULATION ?

2)  HAVE YOU ASSISTED LAW ENFORCEMENT AGENTS IN ANY WAY

3)  ARE YOU A CIM CASE ?

4)  HAVE YOU TESTIFIED AGAINST ANYONE IN COURT ?          (b)(7)c, (b)(7)f

5)  ARE YOU A MEMBER/ASSOCIATE OF ANY GANG ?

6A) HAVE YOU EVER BEEN SEXUALLY ASSAULTED ?

6B) HAVE YOU RECENTLY BEEN SEXUALLY ASSAULTED ?

INTERVIEWER COMMENTS:  ___You have had the opportunity to receive/review the "Rights and Responsibilities" as
                          well as "Disciplinary Acts/Severity Scales." In addition, this information is posted
                          in the Unit Bulletin Boards as the Information Handbook.

CIRCLE ONE:
     I   HAVE / HAVE NOT   RECEIVED A BUREAU OF PRISON "ADMISSIONS &
     ORIENTATION BOOKLET" DEFINING MY "RIGHTS & RESPONSIBILITIES" AND
     THE "PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE".

                                                        DATE:  OCT 2 4 2002
INMATE SIGNATURE:  X_____

INTERVIEWER: J. ROSE _____    TITLE: ISS        DATE: 10-24-2002

****************  S T A F F   C H E C K L I S T  ****************

PSI REVIEWED.............: YES ___  NO _✓_      B    TOP  AN  IT DATA
CENTRAL FILE REVIEWED....: YES ___  NO _✓_
IS THERE A HISTORY OF SEXUALLY AGGRESSIVE BEHAVIOR? YES ___  NO _✓_
COMMENTS: _____

_____
IF GENERAL PHYSICAL APPEARANCE IS NOT GOOD, EXPLAIN: ___good___

_____
OK FOR GENERAL POPULATION:  YES _✓_  NO ___    (IF NO, EXPLAIN)
```

Federal Bureau of Prisons

| | |
|---|---|
| Institution | $EDC - TAE$ |
| Unit | $JAIL$ |

Every effort will be made to provide a safe working environment. As a new commitment you are being provided with a cop of the safety regulations as reflected below, and a copy of the Inmate Accident Compensation Procedures. You are required sign and date this form at the bottom to indicate you have received this information.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

1. Each inmate worker is required to exercise care, cooperation, and common sense in the performance of his work assignmen Horseplay on the job will not be tolerated.

2. An inmate worker will perform only that work to which he is assigned. Unauthorized use of machines or equipment, or per formance of work in an area not specifically assigned, is forbidden and subject to disciplinary action. Machines or equipmen in the work area shall not be used to fabricate or repair personal items.

3. Operating machinery without the use of safety guard(s) as provided is forbidden and subject to disciplinary action.

4. Do not adjust, oil, clean, repair, or perform any other maintenance to any machinery while it is in motion. Stop the machinery first and use lock-out devices when provided.

5. To protect against physical injury and/or health hazard, each inmate worker is required to use all safety equipment provided. Personal protective equipment such as hard hats, hearing protection, goggles, respirators, aprons, arm guards, wire mesh gloves, and safety shoes are to be used in designated areas and must be worn in the proper manner.

6. Safety goggles must be worn when performing any grinding, chiseling, filing or sanding operation. Landscape operations involving the operation of weedeaters or edgers also require the use of safety goggles.

7. Vehicle drivers must obey all institutional driving rules.

8. Do not ride on tractors, forklifts, or any other tow vehicle. The operator is the only person authorized in the use of such machinery.

9. Do not stand up in a moving vehicle or attempt to dismount before the vehicle has come to a complete stop. Sit on seats provided and keep safety chains in place on open back vehicles.

10. Smoking is not permitted in any area designated as a No Smoking area.

11. Safety hazards are to be reported to your work supervisor immediately. If the work supervisor does not agree that an unsafe condition exists, you are to report the unsafe condition to the institution's Safety Manager for further consideration.

12. If you are injured while performing your work assignment, no matter how minor it may seem, report the injury to your work supervisor. Failure to report a work injury within a maximum of 48 hours may result in the forfeiture of lost time wages and/or inmate accident compensation.

13. If you suffer a work injury, and feel your injury has resulted in some degree of physical impairment, you may file a claim for Inmate Accident Compensation. To do so, you should contact the institution's Safety Manager approximately 30 days prior to your release or transfer to a Community Treatment Center. The Safety Manager will assist you in completing your claim and will arrange a medical evaluation which must be performed with regard to your claimed injury.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

I have read and understand the above information.

Witnessed by: _Alva_

X _(Name)_

X _68893-079_   X _10.25.02_
Reg. No.                Date

cc:  Signed copy will be forwarded to the Inmate Central File. Refusal to sign for receipt will be noted on the form.

Note:  Should the inmate indicate in any way he is unable to read, safety regulations will be read to him, and Inmate Accident Compensation Procedures explained.

BP-168(16)
OCTOBER 1983

U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISON

This form is to be completed by each inmate upon initial entry into the custody of the BOP. Staff shall also complet
and sign as appropriate. The form is then re-completed only when the inmate desires a change in any section.

| Inmate's Name | Reg. No. | Institution |
| Deane Dave 2 | 68893-075 | TAL-FDC |
| | 1. CORRESPONDENCE | |

The staff of each institution of the Bureau of Prisons has the authority to open all mail addressed to you befor
it is delivered to you. "Special Mail" (mail from the President and Vice President of the U.S., Attorneys, Members o
the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice [excluding the Bureau of Prisons but includin
U.S. Attorneys), other Federal Law enforcement officers, State Attorney General, Prosecuting Attorneys, Governors, U.S
Courts, (including U.S. Probation Officers and State Courts) may be opened only in your presence to be checked fo.
contraband. This procedure occurs only if the sender adequately identifies himself or herself on the envelope and th.
front of the envelope is marked "Special Mail-Open only in the presence of the inmate." Other mail may be opened and reac
by the staff.

If you do not want your general correspondence opened and read, the Bureau will return it to the Postal Service.
This means that you will not receive such mail. You may choose whether you want your general correspondence delivered
to you subject to the above conditions, or returned to the Postal Service. Whatever your choice, special mail will be
delivered to you, after it is opened in your presence and checked for contraband. You can make your choice by signing
Part I or Part II.

Part I - General Correspondence to be Returned to the Postal Service

I have read or had read to me the foregoing notice regarding mail. I do not want my general correspondence opened
and read. I REQUEST THAT THE BUREAU OF PRISONS RETURN MY GENERAL CORRESPONDENCE TO THE POSTAL SERVICE. I understand that
special mail will be delivered to me, after it is opened in my presence and checked for contraband.

| Signature of Inmate | Register No. 68893-079 | Date 10-26 02 |

Part II - General Correspondence to be Opened, Read and Delivered

I have read or had read to me the foregoing notice regarding mail, I WISH TO RECEIVE MY GENERAL CORRESPONDENCE.
I understand that the Bureau of Prisons may open and read my general correspondence if I choose to receive same.  I also
understand that special mail will be delivered to me, after it is opened in my presence and checked for contraband.

| Signature of inmate | Register No. 68893-029 | Date 10-25.02 |

Inmate refused to sign this form.  He (she) was advised by me that the Bureau of Prisons retains the authority to open
and read all general correspondence.  The inmate was also advised that his (her) refusal to sign this form will be
interpreted as an indication that he (she) wishes to receive general correspondence subject to the conditions in Part II
above.

Printed Name/Signature of Staff Member                                           Date

2. AUTHORIZATION FOR DISPOSITION OF FUNDS

While confined within a prison facility under custody of the U.S. Attorney General or the Attorney General's
designee(s), an inmate is prohibited from directly receiving or possessing (unless specifically authorized by the local
institution) U.S. currency or checks, or other forms of negotiable instruments. To account for funds received on behalf
of the inmate, the Bureau of Prisons establishes for each inmate a Prisoner's Trust Fund Account.  The Director, Bureau
of Prisons, or the Director's authorized designee(s) serves as the custodian of any and all funds received by an inmate
while the inmate is incarcerated in the custody of the U.S. Attorney General.

I hereby [authorize] (do not authorize] [cross out one] the Director, Bureau of Prisons, or the Director's
authorized designee(s), and the Warden or the Warden's authorized designee(s) in this or in any other federal institution
in which I may later be confined, to sign my name as endorsement on all checks, money orders, or bank drafts, or other
forms of negotiable instruments, for deposit to my credit in the Prisoner's Trust Fund Account, as long as I am a prisoner
in the Bureau of Prisons.  I understand that by not providing this authorization, I will not be able to receive checks,
money orders, or bank drafts, or other forms of negotiable instruments while confined.

I further understand that all negotiable instruments sent to me should reference my name and register number in
order to provide for proper deposit to my account. If my name and register number are not referenced the institution mail
room officer may return the negotiable instrument to the sender.

| Signature of Inmate | Register No. 68893-079 | Date 10.25.02 |

Inmate refused to sign this form.  He (she) was advised by me that his (her) refusal to sign this form will be interpreted
as an indication that he (she) does not authorize the Bureau of Prisons to endorse on his (her) behalf all checks, money
orders, or bank drafts, or other forms of negotiable instruments for deposit to his (her) credit in the Prisoner's Trust
Fund Account and that he (she) will not be able to receive such funds while confined.
Printed Name/Signature of Staff Member                                           Date

Record Copy - Central File; Copy - Inmate
(This form may be replicated via WP)                              Replaces BP-407(58) of OCT 88

```
  TALRT  535*08 *        FEDERAL BUREAU OF PRISONS           *    10-25-2002
  PAGE 002         *         INTAKE SCREENING FORM            *    14:04:11
```

NAME.......: JUAREZ, DANIEL GILBERTO
REGISTER NO: 68893-079                    DOB (AGE): 10-20-1967 (3))
RACE / SEX.: WHITE / MALE                 ETHNIC...: HISPANIC
RESIDENCE..: MCALLEN, TX 78502            RSP OF...: TAL A-HLD

                                          DESTINATION..: USM FIN
MGMT VAR...: NONE                         USM LOCATION.: S/TX CORPUS
SEN LIMT...: NONE                         DESIG PRJ BY.: CHN
PUB SAFETY.: NONE                         DT DESIGNATED: 08-15-1996
SEVERITY...: MODERATE
PRIOR......: NONE                         LEVEL/CUSTODY: LOW       /IN
PRECOMMT...: N/A                          PROJ REL DATE:
REVIEW DATE: 06-29-1999                   PROJ REL METH:
ESCAPE.....: NONE                         TRANSFER DATE: 12-09-1999
VIOLENCE...: < 5 YRS MINOR                TRANSFER TYPE: GCT REL

CMC: SEPARATION
MDS: REG DUTY , YES F/S

OFFN/CHG RMKS: CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE 1.99 KILOGRAMS
               OF COCAINE;51 MONTHS SRA + 5 YRS SUPERVISED RELEASE + $51 SA.

CCM REMARKS..: U.S. NAT CIT. FROM MX.  DEF. ARRESTED AT BORDER CHECKPOIN
               AFTER PASSENGERS IN CAR DISCOVERED TO HAVE 1.9 K COCAINE
               TAPED TO ABS.  PRIOR PROB: THEFT/EVADE ARST (TRAFFICK).
               NO MED CONCERNS.                              MDE

DESIG REMARKS: JUD REC FOLLOWED.  REVIEW FOR CDAP.

*NOTE* SENSITIVE-LIMITED OFFICIAL USE CMC AND SEPARATEE HARDCOPY DATA ATTACHED

TALR1  535*08 *          FEDERAL BUREAU OF PRISONS        *    10-25-2002
PAGE 001        *          INTAKE SCREENING FORM          *    14:04:11

NAME.......: JUAREZ, DANIEL GILBERTO          UNIT.....: SHU
REGISTER NO: 68893-079                        DOB (AGE): 10-20-1967 (35)
RACE / SEX.: WHITE / MALE                     ETHNIC...: HISPANIC
RESIDENCE..: MCALLEN, TX 78502                RSF OF...: TAL A-HLD


****************    I N M A T E   I N T E R V I E W    ****************

DATE & TIME ARRIVED: 10-25-2002   14:00          TIME INTERVIEWED: 1807

1)   DO YOU KNOW OF ANY REASON THAT YOU SHOULD NOT BE
     PLACED IN GENERAL POPULATION ?

2)   HAVE YOU ASSISTED LAW ENFORCEMENT AGENTS IN ANY WAY ?

3)   ARE YOU A CIM CASE ?                          (b)(7)c, (b)(7)f

4)   HAVE YOU TESTIFIED AGAINST ANYONE IN COURT ?

5)   ARE YOU A MEMBER/ASSOCIATE OF ANY GANG ?

6A)  HAVE YOU EVER BEEN SEXUALLY ASSAULTED ?

6B)  HAVE YOU RECENTLY BEEN SEXUALLY ASSAULTED ?

INTERVIEWER COMMENTS:  51 mos. Cocaine

----

CIRCLE ONE:   I  HAVE / HAVE NOT   RECEIVED A BUREAU OF PRISON "ADMISSIONS &
     ORIENTATION BOOKLET" DEFINING MY "RIGHTS & RESPONSIBILITIES" AND
     THE "PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE".

INMATE SIGNATURE:                           DATE: 10/25/02

INTERVIEWER: ALVA/DAVIS, ASSISTANT   TITLE: CCC/CSM    DATE: 10-25-2002

****************    S T A F F   C H E C K L I S T    ****************

PSI REVIEWED.............: YES ___  NO ✓
CENTRAL FILE REVIEWED....: YES ___  NO ✓
IS THERE A HISTORY OF SEXUALLY AGGRESSIVE BEHAVIOR? YES ___  NO ✓
COMMENTS: _____

     Writ FL/N

IF GENERAL PHYSICAL APPEARANCE IS NOT GOOD, EXPLAIN: _____

     Good

OK FOR GENERAL POPULATION: YES ___  NO ✓  (IF NO, EXPLAIN)   SECURITY
                                                             CONCERNS

                              Low/In
                              USM - FL/N

```
   TALRT  535*08 *        FEDERAL BUREAU OF PRISONS        *     10-25-2002
 PAGE 003 OF 003 *      CIM CLEARANCE AND SEPARATEE DATA    *     14:04:11

REGISTER NO: 68893-079 NAME: JUAREZ

  REGISTER                      FIRST    ARS ARS        ARS        ARS  QTR
  NUMBER    LAST NAME           NAME     FCL ASSIGN      DATE       TIME ASSIGN

  68893-079 JUAREZ             DANIEL    TAL A-HLD    10-25 2002 1331 J09-001L
CMC ASSGNS: SEPARATION
02 REMARKS: 12/11/98 NCR/AFD APV TEMP TRF FM LVN SCP TO WAS-448. (316)CEO-
02 REMARKS: CEO APPROVAL.
02 REMARKS: 7/6/99 WAS/MGT CLR CCC 62B,EDINBURG,TX,8/11-12/9/99
02 REMARKS: 1/8/99 NCR/JMJ APV TRF FM LVN SCP/WAS A-HLD TO WAS-448 (3C7).
```

(b)(7)c, (b)(7)f

(b)(7)c, (b)(7)f

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DANIEL JUAREZ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0955 (RJL) |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION,<br>*et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF PRISCILLA A. JONES

I, Priscilla A. Jones, declare the following to be true and correct:

1.      I am the Supervisory Administrative Specialist in the Office of Information and Privacy ("OIP"), United States Department of Justice. As the Supervisory Administrative Specialist, I am in charge of the Administrative Section of OIP. One of my responsibilities is to oversee the logging of administrative appeals taken from denials by all components of the Department of Justice under the Freedom of Information Act and the Privacy Act of 1974.

2.      I have personally reviewed OIP's electronic inventory of administrative appeals, which is where all appeals to OIP are recorded. OIP received Mr. Juarez's appeal, which was dated April 12, 2007, appealing from the action of the Federal Bureau of Prisons (Request No. 2007-04025) on April 20, 2007. OIP adjudicated Mr. Juarez's appeal on June 29, 2007, affirming BOP's action.

-2-

I declare under penalty of perjury that the forgoing is true and correct.  Executed on

July 30, 2007.

Priscilla A. Jones