UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL GILBERTO JUAREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 07-0955 (RJL) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

The Defendants, the Drug Enforcement Administration (DEA), United States Department of Justice, Criminal Division, and the Executive Office of United States Attorneys (EOUSA), through counsel, the United States Attorney for the District of Columbia, now respectfully move for summary judgment pursuant to Fed R. Civ. P. 56, by which, together with their previously filed dispositive motion, Defendants now seek to dispose of all of Plaintiff's claims. No genuine issue of material fact exists, and Defendants are entitled to judgment as a matter of law.

In support hereof, the Defendants respectfully refer the Court to the attached memorandum of points and authorities, statement of material facts not in genuine dispute,[1] attachments, and proposed order.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney

---

[1] Plaintiff should note that the Court will accept as true any factual assertions contained in affidavits, declarations or other attachments in support of Defendants' motion unless Plaintiff submits his own affidavit, declaration or other documentary evidence contradicting the assertions in Defendants' submissions. See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992). Indeed, Fed. R. Civ. P. 56(e) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL GILBERTO JUAREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 07-0955 (RJL) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF THEIR SUPPLEMENTAL[2] MOTION FOR SUMMARY JUDGMENT**

The Defendants, Criminal Division of the United States Department of Justice (CrD), the

Executive Office for United States Attorneys (EOUSA), and the Drug Enforcement Administration

(DEA), through counsel, the United States Attorney for the District of Columbia, respectfully submit

this memorandum of points and authorities in support of their supplemental motion for summary

judgment, which now completes Defendants' effort to obtain full and complete disposal of Plaintiff's

claims.

**I.     Background**

This case arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and concerns

Plaintiff's separate FOIA requests to various components of the U.S. Department of Justice (DOJ).

Plaintiff is a federal prisoner who is currently housed at Big Sandy U.S. Penitentiary, Inez Kentucky.

---

[2]   The Federal Bureau of Investigation (FBI), Bureau of Alcohol, Tobacco, Firearms &
Explosives (ATF), United States Marshals Service (USMS), and Federal Bureau of Prisons (BOP),
although components of the Department of Justice, are separately named Defendants. The Internal
Revenue Service (IRS), also a separately named Defendant, is a component of the U.S. Department
of the Treasury. These named Defendants previously filed a Motion for Partial Summary Judgment
on August 9, 2007. Pacer Dkt.# 15. This previously filed dispositive motion, together with this one,
now completes Defendants' effort to have the Court dispose of all of Plaintiff's claims.

Compl. at 2. His FOIA requests sought various government records containing information concerning himself. See Declaration of Leila Wassom, Paralegal Specialist, DEA[3] ("Wassom Dec."), ¶ 6; Compl. at 3-4 (Counts 3, 5 & 8); Declaration of David Luczynski, Attorney Advisor, FOIA/PA Unit, EOUSA, ("Luczynski Dec.") ¶ 4.

CrD found no records indicating that Plaintiff had submitted a request to it. Declaration of Pamela Roberts, Litigation Attorney, CrD ("Roberts Dec."), ¶ 6. Before a request can be processed, requestors must verify their identity by providing their full name, current address, and date and place of his birth. See 28 U.S.C. § 16.41(d). Since the FOIA / Privacy Act (PA) Unit did not receive such a verification from Plaintiff, no search of Criminal Division records was conducted. Roberts Dec., ¶ 6.

By letter dated Feb. 27th, 2007, EOUSA informed Plaintiff that he must identify with more particularity the specific U.S. Attorney's office(s) where he believes the requested records could be found. Luczynski Dec., ¶ 6. In this letter, EOUSA also notified Plaintiff that his request would be closed and that, once the deficiencies were corrected, he should submit a new FOIA request. Id.

DEA received a FOIA request from Plaintiff dated October 12, 2006. Wassom Dec., ¶¶ 6-7. By letter dated September 24, 2007, DEA released portions of 74 pages and released nine (9) pages in their entirety in response. Id., ¶ 8. DEA withheld twenty pages in their entirety. Id. In so doing, DEA relied on FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and exemption (j)(2) of the PA. Id.

As set forth in detail in the accompanying Statement of Material Facts and agency declarations, Plaintiff failed to exhaust administrative remedies against CrD and EOUSA, and DEA

---

[3] All referenced declarations are attached to this memorandum.

2

has fully and properly responded to Plaintiff's FOIA requests, producing to him all reasonably segregable, non-exempt information. Defendants therefore have satisfied their obligations under the FOIA, and are entitled to summary judgment.

## II. Legal Standards

### A.     Standard for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. Id., 247. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, Plaintiff must present some objective evidence that would enable the court to find he is entitled to relief. In Celotex Corp. v. Catlett, 477 U.S. 317 (1986), the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. Id. at 322-323.

In Anderson the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.[4] See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure. Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and Plaintiff with affidavits or declarations and other evidence showing that the documents

---

[4] For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

are exempt from disclosure. <u>Hayden v. National Security Agency Cent. Sec. Serv.</u>, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); <u>Church of Scientology v. U.S. Dept. of Army</u>, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" <u>Trans Union LLC v. Federal Trade Commission</u>, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981)); <u>see</u> <u>also</u> <u>Public Citizen, Inc. v. Dept. of State</u>, 100 F. Supp. 2d 10, 16 (D.D.C. 2000); <u>McGhee v. Central Intelligence Agency</u>, 697 F.2d 1095, 1102 (D.C. Cir. 1983); <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d 1325, 1329 (9th Cir. 1995); <u>Bowen v. FDA</u>, 925 F.2d 1224, 1227 (9th Cir. 1991). When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and when the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. <u>Perry v. Block</u>, 684 F.2d 121 (D.C. Cir. 1982).

### B.    Requester Must Exhaust Administrative Remedies Prior to Suit.

FOIA confers jurisdiction upon the Court to provide relief to a plaintiff only where requested documents have been "improperly withheld" by an agency. 5 U.S.C. § 552(a)(4)(B). The courts have interpreted this section of the statute to mean that jurisdiction exists only upon a showing by the plaintiff that the defendant (1) improperly (2) withheld (3) agency records. <u>See</u> <u>Kissinger v. Reporters Committee for Freedom of the Press</u>, 445 U.S. 136, 150 (1980). Indeed, "[t]he plaintiff must show that the agency 'contravened all three components of this obligation' in order for

5

jurisdiction to be valid." Kuffel v. U.S. Bureau of Prisons, 882 F. Supp. 1116, 1120 (D.D.C. 1995) (citing Kissinger, 445 U.S. at 151.)  Absent such a showing, FOIA confers no "judicial authority to devise remedies and enjoin agencies."  Id.

Exhaustion of such administrative remedies is required under FOIA before a party can seek judicial review.  Dettmann v. United States Dep't of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986). A FOIA requester is deemed to have failed to exhaust administrative remedies whenever the requester fails to comply with the administrative procedures set forth under FOIA, including:  (1) providing the required proof of identity, Summers v. United States Dep't of Justice, 999 F.2d 570, 572-73 (D.C. Cir. 1993);  (2) reasonably describing the records sought, Gillin v. IRS, 980 F.2d 819, 822-23 (1st Cir. 1992);  (3) complying with fee requirements, Trueblood v. United States Dep't of Treasury, 943 F. Supp. 64, 68 (D.D.C. 1996); and (4) administratively appealing a denial of records, Oglesby v. United States Dep't of the Army, 920 F.2d 57 (D.C. Cir. 1990).   See also 5 U.S.C. § 552(a)(3) (requester must follow agency's published regulations governing FOIA requests); Kessler v. United States, 899 F. Supp. 644, 645 (D.D.C. 1995) (failure to follow agency regulations constitutes failure to exhaust administrative remedies). Where a FOIA plaintiff attempts to obtain judicial review without having first fully exhausted his administrative remedies, his lawsuit is subject to dismissal.  Oglesby, 920 F.2d at 57.  Here, Plaintiff failed to exhaust his administrative remedies as to his alleged requests to USDOJ since there is no evidence that he made these requests.  See Roberts Dec. ¶ 6.

### C.    Standards for a Proper Search for Responsive Records

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records.  Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Cleary,

Gottlieb, Steen & Hamilton v. Dept. of Health, et al., 844 F. Supp. 770, 776 (D.D.C. 1993);

Weisberg v. U.S. Dept. of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  This "reasonableness"

standard focuses on the method of the search, not its results, so that a search is not unreasonable

simply because it fails to produce relevant material.  Id. at 777 n.4.  An agency is not required to

search every record system, but need only search those systems in which it believes responsive

records are likely to be located.  Oglesby, 920 F.2d at 68.  Simply stated, the adequacy of the search

is "dependent upon the circumstances of the case."  Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C.

Cir. 1990).

The search standards under FOIA do not place upon the agency a requirement that it prove

that all responsive documents have been located.  Nation Magazine v. U.S. Customs Serv., 71 F.3d

885, 892 n.7 (D.C. Cir. 1995).  It has been held that "'the search need only be reasonable; it does not

have to be exhaustive.'" Miller v. Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985) citing National

Cable Television Association v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973).  Even when a requested

document indisputably exists or once existed, summary judgment will not be defeated by an

unsuccessful search for the document so long as the search was diligent.  Nation Magazine, 71 F.3d

at 892 n.7.  Additionally, the mere fact that a document once existed does not mean that it now

exists; nor does the fact that an agency created a document necessarily imply that the agency has

retained it.  Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct

a search for the requested records, using methods which can be reasonably expected to produce the

information requested."  Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201

(D.C. Cir. 1991).  "An agency may prove the reasonableness of its search through affidavits of

responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." Miller, 779 F.2d at 1383; Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978). Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" Carney v. Dept. of Justice, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (*quoting* SafeCard Servs., 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search. Once the agency has met this burden through a show of convincing evidence, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. Miller, 779 F.2d at 1383. A requester may not rebut agency affidavits with purely speculative allegations. See Carney, 19 F.3d at 813; SafeCard, 926 F.2d at 1200; Maynard v. CIA, 986 F.2d 547, 559-560 (1st Cir. 1993).

The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (*quoting* Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

**D.      Standards for A Proper Vaughn Index**

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for their withholding of responsive documents. "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs." Judicial Watch v. U.S. Dept. of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). These declarations or affidavits (singly or collectively) are often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S. Ct. 1564 (1974). There is no set formula for a Vaughn

8

index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. FCC, 976 F. Supp. 23, 35 (D.D.C. 1997). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. U.S. Dept. of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d Cir. 1988).[5]

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. See Citizens Commission on Human Rights v. FDA, 45 F.3d 1325, 1326 (9th Cir. 1995). "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

---

[5] "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Id. "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." Information Acquisition Corp. v. Dept. of Justice, 444 F. Supp. 458, 462 (D.D.C. 1978).

### E.    Legal Standards for Applicable Exemptions to Release under the Privacy Act and FOIA.

#### 1.    Privacy Act Exemption (j)(2)

As stated by the Court in <u>Dorsett v. U.S. Dept. of Treasury</u>, 307 F.Supp.2d 28 (D.D.C. 2004), "[e]xemption (j)(2) exempts from disclosure 'any system of records within the agency,' as long as the agency that maintains the system of records 'performs as its principal function any activity pertaining to the enforcement of criminal laws....' 5 U.S.C. § 552a(j)(2)." <u>Id</u>. at 35.

#### 2.    FOIA Exemption 2

Title 5, United States Code, Section 552 (b)(2) ("Exemption 2") exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to . . . a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. <u>Dept. of Air Force v. Rose</u>, 425 U.S. 352, 369-70 (1976); <u>Sussman v. U.S. Marshals Service</u>, 494 F.3d 1106, 1112 (D.C. Cir. 2007); <u>National Treasury Employees Union v. U.S. Customs Service</u>, 802 F.2d 525, 528-30 (D.C. Cir. 1986); <u>Crooker v. Bureau of Alcohol, Tobacco and Firearms</u>, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981). Depending upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category."

"Low (b)(2)" information refers to internal procedures and practices of an agency the disclosure of which would constitute an administrative burden unjustified by any genuine and significant public benefit. <u>Martin v. Lauer</u>, 686 F.2d 24, 34 (D.C. Cir. 1982). "Low b(2)"

10

information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. See Schwaner v. Dept. of the Air Force, 898 F.2d 793, 795 (D.C. Cir. 1990). Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and similar administrative markings are exempt from disclosure. The reason is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest. Martin v. Lauer, 686 F.2d at 34.

The "high (b)(2)" exemption excepts from mandatory disclosure documents relating to more substantive internal matters. See Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Withholding is permitted in this category to the extent that disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, id., would disclose guidelines for law enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities. See Crooker, 670 F.2d 1051 (D.C. Cir. 1981) (en banc); Hardy v. AT, 631 F.2d 653, 656 (9th Cir. 1980).

Deference has been accorded to law enforcement matters under Exemption 2. Courts have interpreted this exemption to apply to a wide range of information, including general guidelines for conducting investigations (see PHE, Inc. v. Dept. of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993)); guidelines for conducting post-investigation litigation (Schiller v. NLRB, 964 F.2d at 1207)); a training manual with information pertaining to surveillance techniques (Crooker, 670 F.2d at 1073); criteria for prison gang-member classification (Jimenez v. FBI, 938 F. Supp. 21, 27 (D.D.C. 1996)); and DEA's drug-violator codes (Albuquerque Publishing Co. v. Department of Justice, 726 F. Supp. 851, 854 (D.D.C. 1989).

11

### 3.    FOIA Exemption 7--Threshold Issue

Application of any of FOIA's exemptions in Exemption 7 requires the agency to satisfy the threshold issues of, first, whether the agency has the requisite law enforcement purpose in compiling the records at issue and, second, whether the information gathered has a sufficient nexus to that law enforcement purpose.  See, e.g., Tax Analysts v. IRS, 294 F.3d 71, 76-79 (D.C. Cir. 2002); Jefferson v. DOJ, 284 F.3d 172, 176-77 (D.C. Cir. 2002);  Campbell v. DOJ, 164 F.3d 20, 32 (D.C. Cir. 1998); Pratt v. Webster, 673 F.2d 408, 419 (D.C. Cir. 1982).

In Jefferson, the Court drew a distinction between agencies gathering information as part of any government agency's "oversight of the performance of duties by its employees," and information sought as part of investigations into illegal conduct for which the agency might impose criminal or civil sanctions.  284 F.3d at 177.  Thus, the rule from Jefferson provides a broadly applicable distinction based more on the agency's mission and reasons for collecting the information at issue.

Many types of agency activities have been held to have a law enforcement purpose, even several that arguably go beyond the core law enforcement mission of investigating crimes that have been committed.  See, e.g., Mittleman v. OPM, 76 F.3d 1240, 1241-43 (D.C. Cir. 1996) (OPM background investigation), cert. denied, 519 U.S. 1123 (1997); Heggestad v. DOJ, 182 F. Supp. 2d 1, 13 (D.D.C. 2000) (Hogan, J.) (IRS has law enforcement purpose); Center to Prevent Handgun Violence v. Dep't of Treasury, 981 F. Supp. 20 (D.D.C. 1997) (Robertson, J.) (collecting information on all repeat handgun sales); Doe v. DOJ, 790 F. Supp. 17, 20-21 (D.D.C. 1992) (background investigations).

In addition, the caselaw in this Circuit is unambiguous that the agency need not tie its collection of information to any specific or ongoing investigation.  See Tax Analysts, 294 F.3d at

78; <u>Keys</u> 830 F.2d at 342.  This principle is fully consistent with the courts' broad acceptance of the view that the 1986 amendments to the FOIA relaxed the required threshold showing for Exemption 7.  <u>See, e.g.</u>, <u>United States Department of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749, 780 (1989) (recognizing that the shift from "would constitute" standard to "could reasonably be expected to constitute" standard represents a congressional effort to ease considerably the burden in invoking Exemption 7); S. Rep. No. 221, 98th Cong., 1st Sess. 25 (1983) ("Substitute 'records or information' for 'investigatory records' as the threshold qualification for the exemption: This amendment would broaden the scope of the exemption to include 'records or information compiled for law enforcement purposes,' regardless of whether they may be investigatory or noninvestigatory."); <u>Hopkinson v. Shillinger</u>, 866 F.2d 1185, 1222 n.27 (10th Cir. 1989) ("The 1986 amendment[s] broadened the scope of exemption 7's threshold requirement.").

### 4.    FOIA Exemption 7(C)

The FOIA, 5 U.S.C. § 552, does not apply to matters that are:

> (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations.  <u>Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice</u>, 816 F.2d 730, 780 (D.C. Cir. 1987), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989); <u>Computer Prof'ls for Social Responsibility v. U.S. Secret Serv.</u>, 72 F.3d 897, 904 (D.C. Cir. 1996). Indeed, an agency in a FOIA case may categorically assert Exemption 7(C) to protect the identities

of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Sussman v. U.S. Marshals Service, 494 F.3d 1106, 1115-16 (D.C. Cir. 2007); Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release by Exemption 7(C). Sussman v. U.S. Marshals Service, 494 F.3d at 1115-16; Davis v. U.S. Dept. of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980). Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dept. of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987). The fact that the requester might be able to ascertain the individuals' identities through other means, or that their identities have been disclosed elsewhere, does not diminish their privacy interests. Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg v. Dept. of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

Once a privacy interest has been established, as here, it must be balanced against the public interest, if there is any, that would be served by disclosure. National Archives and Records Administration v. Favish, 541 U.S. 157, 173 (2004); Albuquerque Publ'g Co. v. Dept. of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989). The public interest in disclosure is limited to the FOIA's "core purpose" of "shed[ding] light on an agency's performance of its statutory duties." Reporters Comm. for Freedom of the Press, 489 U.S. at 773. This standard is not easily satisfied when law

14

enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'" Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990). See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation). Furthermore, the requester must not only demonstrate the existence of the public interest but also that the public interest is both significant and compelling, in order to overcome legitimate privacy interests. Senate of Puerto Rico v. Dept. of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

### 5.    FOIA Exemption 7(D)

Title 5, United States Code, § 552 (hereinafter Exemption 7(D)), exempts from disclosure material that:

> could reasonably be expected to disclose the identity of a confidential source including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

Exemption 7(D) recognizes that information furnished by third parties cooperating with federal, state, or local law enforcement investigations is, by its very nature, confidential. Significantly, the statute affords protection from disclosure to all the information furnished by third-party sources, as well as the actual identity of the cooperating individual, if there has been an explicit assurance of

confidentiality, or circumstances exist from which such an assurance could reasonably be inferred. U.S. Dept. of Justice v. Landano, 508 U.S. 165 (1993).

This exemption recognizes the distinct likelihood that the identity of a source may often be determined from an analysis of the information furnished by the source himself. Indeed, this becomes more inevitable when the analysis is conducted by a person familiar with the facts and circumstances on which the investigation was predicated. Thus, to disclose the identity of a cooperating individual under such circumstances could result in more than an unwarranted invasion of his privacy; it could breach the confidentiality under which the individual cooperated.

The Landano Court acknowledged that "[t]here may . . . be . . . generic circumstances in which an implied assurance of confidentiality fairly can be inferred." Landano, 508 U.S. at 181. The Court should take into consideration the informant's relation to the crime and the character of the crime for which information has been provided in determining implied grants of confidentiality. Since Landano, courts have identified various crimes which warrant an implied assurance of confidentiality. In Mays v. Drug Enforcement Administration, 234 F.3d 1324 (D.C. Cir. 2000), the Court of Appeals for this Circuit held that the crime of trafficking in cocaine is inherently so dangerous that individuals supplying information about such crimes generally should be entitled to an implied grant of confidentiality.

### 6.    FOIA Exemption 7(F)

Title 5, United States Code, Section 552 (b)(7)(F) (hereinafter "Exemption 7(F)") protects from mandatory disclosure information compiled for law enforcement purposes if disclosure could reasonably be expected to endanger the life or physical safety of any individual. 5 U.S.C. § 552(b)(7)(F). Courts have consistently upheld the application of this exemption to protect

16

information identifying law enforcement officers and special agents, who are especially likely to be in contact with violent suspects. Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir. 1977); Albuquerque Publ'g Co., 726 F. Supp. 851, 858 (D.D.C. 1989); Docal v. Bennsinger, 543 F. Supp. 38, 48 (M.D. Pa. 1981); Nunez v. DEA, 497 F. Supp. 209, 212 (S.D.N.Y. 1980). Although this exemption applies to information that is also subject to the protection of Exemption 7(C), supra, there is no balancing required for the use of Exemption 7(F). In any event, it is difficult to imagine any public interest that could outweigh the safety of an individual.

### F.    Segregability

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Sussman v. U.S. Marshals Service, 494 F.3d at 1116-7; Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." Mead Data, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is

17

not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

**III.     Each Defendant Complied with FOIA Requirements.**

> **A.     USDOJ Never Received A FOIA Request So It was Under No Obligation to Search or Produce Its Records.**

Federal jurisdiction over a FOIA claim is dependent upon a showing that an agency improperly withheld agency records. Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980). "If no FOIA request is received, an agency has no reason to search or produce records and similarly has no basis to respond." Carbe v. BATF, No. 03-1658, 2004 WL 2051359, at * 8 (D.D.C. Aug. 12, 2004). "Without any showing that the agency received the request, the agency has no obligation to respond to it." Hutchins v. Dep't of Justice, No. 00-2349, 2005 WL 1334941, at *2 (D.D.C. June 6, 2005). Thomas v. FAA, Civil Action No. 05-2391, 2007 WL 219988, *3 -4 (D.D.C. Jan. 25, 2007); cf. Pollack v. Dep't of Justice, 49 F.3d at 117 n.1 ("Pollack's Privacy Act claim was not properly before the district court because Pollack did not first exhaust administrative remedies provided under the Privacy Act").

Despite his allegation to the contrary, there is no evidence that Plaintiff ever submitted this FOIA request to CrD. There is no record in CrD's FOIA/PA database showing that Plaintiff submitted a FOIA request to the Criminal Division. Roberts Dec., ¶ 6. If Plaintiff had submitted a FOIA request, the CrD FOIA/PA Unit would have recorded the correspondence in its database and created a file to process his request. Id.

**B.    Plaintiff Failed to Exhaust His Remedies as to EOUSA.**

Plaintiff is barred from seeking judicial review of this suit because he failed to exhaust his administrative remedies when he did not appeal the decision of EOUSA (letter dated February 27, 2007).  Jones Dec. ¶ 2.  EOUSA responded to the requests by Plaintiff, but Plaintiff failed to file administrative appeals.  Id.;  See Luczynski Dec. ¶ 5.  Since Plaintiff did not file an appeal with each agency, he failed to exhaust fully his administrative remedies and thus failed to satisfy an essential prerequisite permitting judicial review in district court, so that Plaintiff's claims as to EOUSA are barred.

Exhaustion of administrative remedies is required under FOIA before a party can seek judicial review.  See Dettmann v. United States Dep't of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986).  When a FOIA plaintiff attempts to obtain judicial review without first properly undertaking full and timely administrative exhaustion, the lawsuit is subject to ready dismissal because "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA." Wilbur v. CIA, 355 F.3d 675, 676 (D.C. Cir. 2004) (per curiam) (citing Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 61-64, 65 n.9 (D.C. Cir. 1990)); see, e.g., Almy v. U.S. Dep't of Justice, No. 96-1207, 1997 WL 267884, at *3 (9th Cir. May 7, 1997) ("[T]he FOIA requires exhaustion of administrative remedies before the filing of a lawsuit."); Voinche v. U.S. Dep't of the Air Force, 983 F.2d 667, 669 (5th Cir. 1993) ("We conclude that the FOIA should be read to require that a party must present proof of exhaustion of administrative remedies prior to seeking judicial review."). Exhaustion allows an agency's top level officials to correct possible mistakes made at lower levels and thereby obviate unneccessary review.  Oglesby, 920 F.2d at 61; see also Taylor v. Appleton, 30 F.3d 1365, 1369 (11th Cir. 1994) ("Allowing a FOIA requester to proceed immediately to court to

19

challenge an agency's initial response would cut off the agency's power to correct or rethink initial misjudgments or errors"); Martin v. Court Servs. & Offender Supervision Agency, No. 05-853, 2005 WL 3211536, at *3 (D.D.C. Nov. 17, 2005) (recognizing that administrative exhaustion "[g]ives the parties and the courts the benefit of the agency's experience and expertise").

Notwithstanding EOUSA's efforts to inform Plaintiff of the deficiency of his request and his right to submit a new request, Plaintiff simply failed to pursue fully what administrative relief was potentially available to him. By letter dated Feb. 27, 2007, EOUSA informed Plaintiff that he must identify with more particularity the specific U.S. Attorney's office(s) where he believes the requested records exist. Luczynski Dec., ¶ 5. This letter also notified Plaintiff that this request would be closed and that once the deficiencies were corrected, he should submit a new FOIA request. Id. Despite this resolution, Plaintiff neither submitted a new FOIA request (Luczynski Dec., ¶6 ), nor filed an appeal of EOUSA's decision rejecting his request (Jones Dec. at ¶ 2). Therefore, Plaintiff has failed to exhaust available administrative remedies as to his FOIA request to EOUSA before filing his district court complaint, so the Court should find that his district court claim against EOUSA is barred.

Plaintiff also failed to follow the DOJ regulation, 28 C.F.R. § 16.9, regarding appeals of FOIA requests. Plaintiff filed no appeal of EOUSA's decision to OIP. Jones Dec., ¶ 2. Like, the Criminal Division of DOJ, EOUSA is a component of the U.S. Department of Justice. See 28 C.F.R. § 0.1 (listing EOUSA as an office within the Department of Justice). Therefore, Plaintiff's failure to comply with 28 C.F.R. § 16.9 deprives him of a right to judicial review against these DOJ components.

### C.    DEA Properly Processed Plaintiff's FOIA Request.

#### 1.    DEA Conducted an Adequate Search.

DEA's search of its records revealed a total of 103 pages of material responsive to Plaintiff's request.  Wassom Decl., ¶ 14.  By letter dated September 24, 2007, DEA released portions of 74 pages and nine (9) pages in their entirety to Plaintiff.  Wassom Decl., ¶¶ 8, 14 & Exhibit C.  Twenty pages were withheld in their entirety.  Id.  Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and exemption (j)(2) of the PA.  Id.  In addition, the Wassom Declaration describes the method used to search the agency's information systems for responsive information.  The methodology was straight-forward and appropriate.  See id., ¶¶ 12-13.  Accordingly, the Court should find that the search was reasonable and satisfied the FOIA.

#### 2.    DEA Produced an Adequate Vaughn Index.

DEA produced a sixty-two page Vaughn index describing the one-hundred and three (103) pages of responsive documents.  The index, which is attached as Exhibit D to the Wassom Declaration, describes with particularity each page and describes the type of document, the number of pages, the date, and the information excised.  This information and the descriptions provided satisfy the "reasonable basis to evaluate the claim of privilege" standard required by Delaney, 826 F.2d at 128.

#### 3.    DEA Properly Applied Privacy Act Exemption (j)(2)

DEA is a component of the Department of Justice and its primary responsibility is the enforcement of federal criminal laws related to the illicit trafficking in controlled substances and chemicals, including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq. See 28 C.F.R. § 0.100.  Wassom Dec., ¶ 34.  DEA's Investigative Reporting and Filing System

("IRFS") is a Privacy Act System of Records that was last reported at 77 Fed. Reg. 3410 and last published in its entirety at 61 Fed. Reg. 54219. Id., ¶¶ 10, 35. In accordance with the Privacy Act, DEA promulgated rules, pursuant to 5 U.S.C. §552a(j)(2), to exempt records contained in IRFS from access. See 28 C.F.R. §16.98(c)(3). Id., ¶ 35.

In accordance with the Privacy Act, 5 U.S.C. §552a(b), except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains, no information relating to a third-party was released, unless required by the FOIA or pursuant to a routine use. Wassom Dec., ¶ 36. No routine use exists justifying the release of this information. Plaintiff also did not provide a release authorization or proof of death for the release of any third-party information. Id. Therefore, all third-party information was withheld where release was not required by the FOIA. Id.

### 4.    DEA Properly Applied FOIA Exemption (b)(2).

Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, many of the pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug Enforcement Program) codes, NADDIS numbers, and a confidential informant number. Wassom Dec., at ¶ 38. The G-DEP, NADDIS, and confidential informant number are part of DEA's internal system of identifying information and individuals. Id. DEA properly withheld these violator identifiers until FOIA Exemption (b)(2).

DEA properly withheld the G-DEP codes under the high (b)(2) Exemption because these internal codes provide information which if disclosed significantly risks circumvention of the law. Withholding is permitted in this category to the extent that disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, id., would disclose guidelines for law

22

enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities. See Crooker, 670 F.2d 1051 (D.C. Cir. 1981) (en banc); Hardy v. AT, 631 F.2d 653, 656 (9th Cir. 1980). G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity. Wassom Dec., ¶ 38(a). The release of the G-DEP codes would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings. Wassom Dec., ¶ 39. Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what information is available to DEA or to avoid detection and apprehension and create alibis for suspected activities. Id. Disclosure of the codes would, accordingly, thwart DEA's investigative and law enforcement efforts. Id. All G-DEP codes found in the responsive pages were withheld. Id.

NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA and assigned to entities that are of investigative interest. Wassom Dec., ¶ 38(b). Each number is unique and is assigned to only one violator within the DEA NADDIS indices.[6] Id. Informant identifier codes are assigned by DEA and other law enforcement agencies to cooperating individuals and are used instead of their names in all DEA reports, memoranda and other internal correspondence. Wassom Dec., ¶ 38(c). Informant identifier codes provide sensitive information about individuals who cooperate with DEA and other law enforcement agencies in carrying out their law enforcement functions. Id. Knowledge of informant identifier codes can assist

---

[6] The NADDIS indices are exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. 16.98 (2007). Wassom Dec. at ¶ 389(b). Thus, Exemption (b)(7)(C) and (b)(7)(F) were used in conjunction with (b)(2) to withhold third- party NADDIS numbers. Id.

in identifying the informant and provide sensitive information about individuals who cooperate with DEA. Id. Exemptions (b)(7)(C), (b)(7)(D) and (b)(7)(F) were used in conjunction with (b)(2) to withhold this identifier. Id. NADDIS numbers and informant identifier codes are unique and personal to the individual to whom the number applies. Wassom Dec., ¶ 40. They are assigned by DEA for internal use and there is no public interest in the release of these codes. Id.

### 5.    DEA Properly Applied FOIA Exemption (7)(C).

As an initial matter, DEA has the requisite law enforcement purpose within the meaning of the threshold issue in Exemption 7. DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq.* (hereinafter, the Act) which authorizes DEA to enforce the Act through, for example, the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange information in support of drug traffic prevention and control. Wassom Dec. at ¶ 41. The DEA's law enforcement responsibilities are well within the range of the law enforcement purposes of other agencies that have passed judicial scrutiny regarding the threshold issue in Exemption 7. See, e.g., Mittleman v. OPM, 76 F.3d 1240, 1241-43 (D.C. Cir. 1996) (OPM background investigation), cert. denied, 519 U.S. 1123 (1997); Heggestad v. DOJ, 182 F. Supp. 2d 1, 13 (D.D.C. 2000) (Hogan, J.) (IRS has law enforcement purpose); Center to Prevent Handgun Violence v. Dep't of Treasury, 981 F. Supp. 20 (D.D.C. 1997) (Robertson, J.) (collecting information on all repeat handgun sales); Doe v. DOJ, 790 F. Supp. 17, 20-21 (D.D.C. 1992) (background investigations).

24

Furthermore, the records deemed responsive to Plaintiff's FOIA request are criminal investigative records. Wassom Dec., ¶ 42. The records were compiled during criminal law enforcement investigations of Plaintiff and several third-parties. Id. DEA claims Exemption (7)(C) for many of the documents that are responsive to Plaintiff's request. Wassom Dec., ¶ 43. DEA asserts this exemption because these documents contain names and other identifying information which would reveal the identity of and disclose personal information about third-parties who were involved or associated with Plaintiff or with a law enforcement investigation. Id. These individuals are protected from the disclosure of their identities and information about them. Id. These individuals include third-parties, suspects, co-defendants, and confidential sources of information. Id.

In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue. Wassom Dec., ¶ 45. The public interest in disclosure of the information was determined by whether the information in question would inform Plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Controlled Substance Act, and/or how DEA conducts its internal operations and investigations. Id. In this case, it was determined that there was no legitimate public interest in the information withheld under exemption (b)(7)(C), and release of any information about a third-party would constitute an unwarranted invasion of that third-party's personal privacy interests. Id. These are described in each case in the Vaughn index and the Wassom Declaration. There is no apparent public interest to be served by the disclosure of their identities. Id., ¶¶ 44-45.

25

DEA properly applied Exemption (7)(C) to withhold the names of DEA Special Agents, other law enforcement officers and personnel, and other government employees. Wassom Dec., ¶¶ 46-48. This exemption allows an agency to withhold records or information compiled for law enforcement purposes to the extent that production could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). Id., ¶ 43. Plaintiff did not present any statement of public interest to DEA, let alone one that warranted disclosing the names of these officials. Id., ¶ 44. To the contrary, releasing the names of these employees could subject them to unwarranted public attention, harassment and annoyance and would thereby impair their effectiveness in carrying out their official duties. Id., ¶¶ 46-48. In considering whether the public interest in disclosure outweighed the individual's interest in privacy, the DEA determined that no legitimate interest would be served by disclosure of this information. 5 U.S.C. § 552 (b)(7)(C). Id.

DEA also properly applied Exemption (7)(C) to withhold information pertaining to third party individuals, including suspects, co-defendants, and confidential sources of information. Wassom Dec., ¶ 43. In reaching the decision to withhold this information from documents released to Plaintiff, the DEA considered whether there was a legitimate public interest in disclosure which would outweigh the individual's privacy interest in non-disclosure. Id., ¶¶ 44, 45. It is not readily apparent how information associated these other individuals would satisfy a legitimate public need for information about the workings of our criminal justice system. Id. DEA could discern no legitimate public interest in disclosure of this information. Id. Further, Plaintiff provides no basis for concluding that disclosure of such information would satisfy the basic purpose of the FOIA, *i.e.*, to shed light on an agency's performance of its statutory duties, nor can the DEA discern any public interest in disclosure which would outweigh the private interests of these individuals in non-

26

disclosure.  Id., ¶ 45 ("The public interest in disclosure of the information was determined by whether the information in question would inform Plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Controlled Substance Act, and/or how DEA conducts its internal operations and investigations.  In this case, DEA determined that there was no legitimate public interest in the information withheld under exemption (b)(7)(C)").  Through the Wassom Declaration and the Vaughn Index, DEA has established that it properly applied Exemption (7)(C).

### 6.    DEA Properly Applied FOIA Exemption (7)(D).

DEA asserts Exemption 7(D) to withhold certain reports in part, and others in their entirety, that contained information that would disclose the identity of, and information provided by, the source.  Wassom Dec., ¶ 49.  Exemption 7(D) recognizes that information furnished by third parties cooperating with federal, state or local law enforcement investigations is, by its very nature, confidential.  Significantly, the statute affords protection from disclosure to all the information furnished by third-party sources, as well as the actual identity of the cooperating individual, if there has been an explicit assurance of confidentiality, or circumstances exist from which such an assurance could reasonably be inferred.  U.S. Dept. of Justice v. Landano, 508 U.S. 165 (1993).  The information at issue here pertains to a coded confidential informant with express assurances of confidentiality.  Wassom Dec., ¶ 51.

As an agency charged with law enforcement authority, DEA relied on the (b)(7)(D) exemption to protect source-identifying and source-supplied investigative information.  Wassom Dec., ¶ 51.  Coded informants are individuals who have a continuing cooperative association, by written signed agreement, with DEA.  Wassom Dec., ¶ 52.  Such cooperative arrangements are

established and maintained according to DEA policy and procedure.  Id.  These individuals are expressly assured confidentiality in their identities and the information they provide to DEA.  Id.  They are also assured that their names will not be used in DEA investigative materials.  Id.  They are assigned an identification code which is used in place of their name or referred to as CI, SOI, or CS.  Id.  Because of the nature of DEA's criminal investigations, any information that could identify the informant, including the informant identifier code, could subject them to serious harm, substantial repercussions, and possibly even death.  Wassom Dec., ¶ 51.

Pages 21 and 23 are the first page of two separate ROIs that contain information describing the arrest of a third party.  Wassom Dec., ¶¶ 53-54.  These pages contain contact information from a coded informant about a third party.  Id.  Plaintiff's name is not mentioned on the page 21.  Id. at ¶ 53.  Plaintiff's name is mentioned only in paragraph 2 of page 23.  Id. at ¶ 54.  The information about Plaintiff is included in the released portion of the page 23.  Id.

DEA also employed Exemption 7(D) to withhold information from certain pages of reports of investigation and the second page of Plaintiff's Criminal Complaint.  Wassom Dec., ¶¶ 57-63.  The sources of information in these documents were afforded an implied assurance of confidentiality.  See Wassom Dec., ¶ 56.  When it is unclear whether law enforcement has made an express promise of confidentiality to a source, certain circumstances characteristically may support an inference of confidentiality, such as the character of the crime being investigated, and the source's relation to the nature of the crime.  Id. at ¶ 55.  Plaintiff was convicted of cocaine conspiracy and possession with intent to distribute cocaine.  Wassom Dec., ¶ 56.  It is reasonable to infer that the individuals who provided information about Plaintiff would fear for their safety, since violence is inherent in the trade of illicit substances, if their identities or the information they provided was

revealed.  Id.  Additionally, release of the name of the sources could jeopardize DEA operations, since their cooperation and that of other similarly situated individuals may be necessary in future criminal investigations.  Id.

DEA properly applied Exemption 7(D) to pages that contained named confidential informants. Wassom Dec., ¶¶ 57-63.  These informants provided information about drug trafficking interactions between themselves, Plaintiff, and third parties.  Id.  The character of the crime under investigation and the source's relation to the nature of the crime in this case clearly support the reasonable inference that these sources expect confidentiality.  See id., ¶¶ 55-56.

DEA correctly used Exemption 7(D) to protect its coded informant who had an express promise of confidentiality.  Likewise, it also appropriately used this exemption to protect sources with implied confidentiality.  Therefore, the DEA properly applied Exemption 7(D) when it withheld these documents.

### 7.    DEA Complied with Exemption 7(F).

DEA claimed Exemption 7(F) in order to withhold the names of DEA Special Agents, and Supervisory Special Agents; DEA laboratory personnel, United States Border Patrol agents, a Deputy United States Marshal, Task Force officers, state/local law enforcement officers.  Wassom Dec. at ¶ 64.  Exemption (b)(7)(F), provides for the withholding of records or information compiled for law enforcement purposes which could endanger the lives or physical safety of an individual.  Id.

As discussed in Section C.5.a. supra, DEA has a law enforcement purpose.  Accordingly, the DEA documents at issue here are law enforcement documents.  See Wassom Dec., ¶ 41.  Therefore, the first prong of Exemption 7(F) is satisfied.

29

The information at issue also satisfies the second prong of Exemption 7(F) because release of this information could endanger the lives or physical safety of an individual. See Wassom Dec., ¶¶ 66-67. These records contain the names of DEA Special Agents, and Supervisory Special Agents; DEA laboratory personnel, United States Border Patrol agents, a Deputy United States Marshal, Task Force officers, state/local law enforcement officers. Id., ¶ 64. DEA Special Agents and Supervisory Special Agents, as well as members of other law enforcement entities, are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations. Wassom Dec., ¶ 65. Special Agents routinely approach and associate with violators in a covert capacity. Id., ¶ 66. Many of those violators are armed and many have known violent tendencies. Id. It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents. Id. It may, therefore, be reasonably anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations. Id. These records clearly satisfy the second prong of Exemption 7(F).[7]

---

[7] In addition, if the names of Special Agents and other law enforcement officers were released pursuant to the Freedom of Information Act, DEA would be releasing this data into the public domain. Wassom Dec., ¶ 67. DEA considers it to be within the public interest not to disclose the identity of Special Agents so that they may effectively pursue their undercover and investigatory assignments. Id. These assignments are a necessary element in support of DEA's objective – the suppression of the illicit trafficking in narcotics and dangerous drugs. Id. Public disclosure of the identities of investigatory and other personnel, as well as confidential sources of information, would have a detrimental effect on the successful operation of the DEA, as well as risk harassment and danger to its agents, other law enforcement personnel, and confidential sources of information. Id. This information was also withheld pursuant to Exemption (b)(7)(C). Id.

Exemption 7(F) allows agencies to withhold identifying information of individuals when disclosure "could reasonably be expected to endanger [that person's] life or physical safety." 5 U.S.C. § 552(b)(7)(F).  See Long v. U.S. Dept. of Justice, 450 F.Supp.2d 42 (D.D.C. Sep 08, 2006); Blanton v. U.S. Dep't of Justice, 182 F.Supp.2d 81, 86-87 (D.D.C.2002). While courts generally have applied Exemption 7(F) to protect law enforcement personnel or other specified third parties, by its terms, the exemption is not so limited; it may be invoked to protect "any individual" reasonably at risk of harm. 5 U.S.C. § 552(b)(7)(F). Cf. Maydak v. U.S. Dept. of Justice, 362 F.Supp.2d 316, 321 n.4 (D.D.C. 2005) (Exemption (7)(F) interpreted to apply to names and identifying information of law enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester); Perrone v. FBI, 908 F. Supp. 24 (D.D.C. 1995) (upholding application of Exemption 7(F) in case involving a plaintiff who had been convicted of drug trafficking offenses).  DEA properly claimed Exemption 7(F) in order to withhold the names of DEA Special Agents, DEA personnel, and other law enforcement officers.  The release of this information clearly could endanger the lives of these individuals.  Accordingly, DEA properly applied Exemption 7 (F) and should be upheld.

## 8.    DEA Properly Segregated Where Appropriate.

The Wassom Declaration specifically addresses the issue of segregability. See Wassom Dec., ¶ 68-81.  All documents which relate to Plaintiff's requests were subjected to a thorough review to achieve maximum disclosure consistent with the provisions of FOIA.  See Id., ¶ 68.  All information withheld was exempt from disclosure pursuant to a FOIA exemption or was not reasonably segregable because it was so intertwined with protected material that segregation was not possible or its release would have revealed the underlying protected material.  Id.

31

The Wassom Declaration meticulously explains why various pages have been withheld in their entirety.  Wasssom Dec., ¶¶ 72-81.  The DEA more than adequately describes each document, notes the applicable FOIA exemptions, and explains why segregability is not feasible.  See id.

Several pages cannot be released because non-exempt information (mainly information about Plaintiff) is inextricably intertwined with exempt information on third parties and/ or confidential sources.  Pages 27, 29-31, 56-57, 58-59, 65-66, 75, 78-79, 96-97, and 98-99 contain information about Plaintiff but this information cannot be separated from the information that is exempt under PA exemption (j)(2) and FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(F).  Wassom Dec., ¶¶ 71-75, 77-81.  In each instance, the release of this information would result in an invasion of personal privacy of a third party, help Plaintiff identify a confidential source or endanger a third person or some combination of the three.  See id.  Page 64 contains information that is exempt under FOIA Exemptions (b)(2) and (b)(7)(C).  The page contains only the last entry in the Indexing Section.  Id.  Plaintiff's name is only in the file title.  Id.  The release of this small amount of non-exempt information would be meaningless, and therefore is deemed non-segregable.  Accordingly, DEA complied with its obligation to release reasonably segregable information under Mead Data Central. See also, Sussman v. U.S. Marshals Service, 494 F.3d at 1116-7.

## IV.   <u>CONCLUSION</u>

WHEREFORE, the Defendants respectfully submit that the Court should grant their supplemental motion for summary judgment and enter judgment in their favor.


Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739

Counsel for the Defendants

33

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that copies of the foregoing Defendants' Motion for Partial Summary Judgment, Statement of Material Facts, Memorandum in Support of the Motion, and proposed order were served upon *pro se* Plaintiff by depositing copies in the U.S. Mail, first class postage prepaid, addressed to:

**DANIEL GILBERTO JUAREZ**
**R 68893-079**
**BIG SANDY**
**U.S. PENITENTIARY**
**Inmate Mail/Parcels**
**P.O. BOX 2068**
**INEZ, KY 41224**

on this 4th day of October 2007.

_____
/s/
_____
OLIVER W. McDANIEL, D.C. BAR # 377360
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 616-0739

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————
                                                    )
DANIEL GILBERTO JUAREZ,                              )
                                                    )
                    Plaintiff,                      )
                                                    )
        v.                                          )   Civil Action No.: 07-0955 (RJL)
                                                    )
FEDERAL BUREAU OF INVESTIGATION, *et al.*,           )
                                                    )
                    Defendants.                     )
                                                    )
—————————————————————

**O R D E R**

Upon consideration of the Defendants' Supplemental Motion for Summary Judgment, any

opposition thereto, the entire record in this case, the Court finds that the Defendants Drug

Enforcement Administration, Executive Office of U.S. Attorneys, and U.S. Department of Justice,

Criminal Division  have conducted a reasonable search for information requested by the Plaintiff,

properly applied the exemptions, and has demonstrated that it is not improperly withholding any

responsive information.  Accordingly, and for good cause shown, it is hereby

**ORDERED** that the Defendants' Supplemental Motion for Summary Judgment is

**GRANTED**, and it is

**FURTHER ORDERED** that judgment be entered in favor of Defendants Drug Enforcement

Administration, Executive Office of U.S. Attorneys, and U.S. Department of Justice, Criminal

Division on all of Plaintiff's claims under the Freedom of Information Act.


Date: _____          _____
                                   RICHARD J. LEON
                                   United States District Judge

**Copies to:**

Oliver W. McDaniel
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530

Daniel Gilberto Juarez
R 68893-079
BIG SANDY
U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 2068
Inez, KY 41224

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DANIEL G. JUAREZ,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No. 07-0955 (RCL)** |
| **FEDERAL BUREAU OF INVESTIGATION,** | ) |
| ***et al.,*** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

The Defendants, the U.S. Department of Justice, Criminal Division ("CrD"), the Executive Office of United States Attorneys ("EOUSA"), and the Drug Enforcement Administration ("DEA"), through counsel, the United States Attorney for the District of Columbia, respectfully submit this statement of material facts as to which there are no genuine disputes in support of their Supplemental Motion for Summary Judgment and in accordance with this Court's Local Rule 7(h). The declarations of the following officials, which are attached to Defendants' Memorandum of Points and Authorities in Support of their Supplemental Motion for Summary Judgment, are referenced herein:

1.      Pamela A. Roberts, Litigation Attorney, Freedom of Information Act/Privacy Act Unit ("FOIA/PA Unit"), United States Department of Justice, Criminal Division;

2.      David Luczynski, Attorney Advisor, FOIA/PA Unit, EOUSA;

3.      Leila I. Wassom, Paralegal Specialist, Office of the Chief Counsel, Administrative Law Section (CCA), Freedom of Information and Records Management Section, DEA Headquarters;

1

4.      Priscilla Jones, Supervisory Administrative Specialist, Office of Information and Privacy, (OIP), U.S. Department of Justice (DOJ).

**I.    DOJ Criminal Division**

5.      On September 11, 2007, the Criminal Division was notified by the Civil Division of the United States Attorney's Office that Plaintiff had filed a Freedom of Information Act (FOIA) Complaint on May 23, 2007.   Declaration of Pamela Roberts,("Roberts Dec."), ¶ 4.

6.      Plaintiff alleged in Count VIII of the Complaint that (1) by a letter dated October 22, 2006, he made a request to the Criminal Division for records in his name; (2) the Criminal Division never responded to his request; (3) that by letter dated December 20, 2006, he sought an administrative appeal with OIP for the failure of the Criminal Division to respond to his request; and (4) that OIP never responded to his appeal.  Complaint, Count VII; Roberts Dec., ¶ 5.

7.      According to the FOIA/PA Unit's database, there is no record that Plaintiff submitted a FOIA request to the Criminal Division.  Roberts Dec., ¶ 6.  Had Plaintiff submitted a FOIA request, the FOIA/PA Unit would have recorded the correspondence in its database and created a file to process his request.  Id.

8.      OIP has no record of receiving any administrative appeal from Plaintiff in regard to the Criminal Division.  Roberts Dec., ¶ 6; see Jones Dec., ¶ 2.

9.      Before a request can be processed the requestor must verify his identity by providing his full name, current address, and date and place of his birth.  See 28 U.S.C. §16.41(d).  The verification must also have the requestor's signature either attesting under penalty or perjury that he is the requestor or witnessed by a notary.  See 28 U.S.C. § 1746.  Since the FOIA/PA Unit did not

2

receive any verification of identification from Plaintiff, no search of Criminal Division records was conducted.  Roberts Dec., ¶ 6.

## II.     EOUSA

10.     By letter dated October 22, 2006, Plaintiff submitted his FOIA request to "search all districts in Texas and Florida."  Luczynski Dec., ¶ 4 & Exhibit A.  The request asked for "a copy of any and all documents, records and information that any part of your agency has or had in its possession that is in any way connected to, related to, or even remotely in reference to my name."  Id.  Due to unknown circumstances, EOUSA did not receive the FOIA request until February 12, 2007.  Id.

11.     By letter dated February 27, 2007, EOUSA responded to Plaintiff's request.  Luczynski Dec. ¶ 5 & Exhibit B.  Since the files and records of the United States Attorneys are located in more than 100 separate offices throughout the country, the letter informed Plaintiff that he must identify with greater particularity the specific U.S. Attorney's office(s) where he believes the requested records may be found.  Id.  In this letter, EOUSA had planned to close his request and, once the deficiencies are corrected, he should submit a new FOIA request.  Id.  It was in this communication, on an enclosed page, that EOUSA informed Plaintiff about the delay in its receiving his request letter.  Id.

12.     OIP has no record of Plaintiff filing an appeal from EOUSA's action.  See Jones Dec., ¶ 2.

### III.    DEA

14.    By letter dated October 12, 2006, Plaintiff requested "any and all documents, records and information that any part of your agency has or had in its possession that is any way connected to, related to, or even remotely in reference to my name." Wassom Dec., ¶ 6 & Exhibit A. Plaintiff promised to pay reasonable search and reproduction fees. Id.

15.    By letter dated December 6, 2006, DEA acknowledged Plaintiff's request, informing him that it would be handled in chronological order based on the date of the request. Wassom Dec., ¶ 7 & Exhibit B. The letter confirmed Plaintiff's obligation to pay all applicable fees up to $25.00. Id.

16.    By letter dated September 24, 2007, DEA released portions of 74 pages and released nine (9) pages in their entirety in response. Wassom Dec., ¶ 8 & Exhibit C. Twenty pages were withheld in their entirety. Id. Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and exemption (j)(2) of the PA. Id.

### A.    ADEQUACY OF SEARCH

17.    The DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008, is a DEA Privacy Act System of Records that contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes. Wassom Dec., ¶ 10.

18.    The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS. Wassom Dec., ¶ 11. As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain information

regarding a particular individual or subject of an investigation. <u>Id.</u> Individuals are indexed and identified in NADDIS by their name, social security number, and/or date of birth. <u>Id.</u>

19.     On December 20, 2006, a NADDIS query was conducted by SARO in response to Plaintiff's request. Wassom Dec., ¶ 12. The query was conducted by a SARO Freedom of Information Specialist, who used Plaintiff's name, social security number, and date of birth. <u>Id.</u>

20.     As a result of the query, NADDIS identified two (2) criminal investigative case files in which information regarding Plaintiff was located, KV-00-0024 and MA-96-0083. A search of the DEA field office files was conducted. Wassom Dec. at ¶ 13. All of the responsive information from file KV-00-0024 and MA-96-0083 was retrieved. <u>Id.</u>

21.     A total of 103 pages of material responsive to Plaintiff's requests to DEA were identified[1] as a result of the search. Wassom Dec., ¶ 14; <u>see id.</u>, ¶ 32 (a list describing the responsive information). Of the 103 pages, portions of 74 pages and nine pages in their entirety were released to Plaintiff, and 20 pages were withheld in their entirety. <u>Id.</u>

### B.     DESCRIPTION OF RESPONSIVE MATERIAL

22.     DEA investigative case files are established by the office commencing an investigation. Wassom Dec., ¶ 16. The files are titled according to the name of the principal suspect violator or entity known to DEA at the time the file is opened. <u>Id.</u> DEA does not maintain separate dossier investigative case files on every individual or entity that is of investigative interest. <u>Id.</u>

23.     Information gathered during the course of a DEA investigation is systematically gathered and included in the investigative case file. Wassom Dec., ¶ 17. This information relates

---

[1] The responsive pages are numbered 1 through 102, including page 49a.

to the case subject and may also include other individuals such as those who are suspected of engaging in criminal activity in association with the subject of the file. Id.

24.     Investigative case files maintained in IRFS contain several records that include, in pertinent part, (1) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a, (2) the DEA Personal History Report, DEA Form 202, (3) the DEA Defendant Disposition Report, and other documents that may serve as a substitute for the forms. Wassom Dec., ¶ 18.

25.     The DEA Form 6, and DEA Form 6a, are multi-block forms that comprise the DEA ROI. Wassom Dec., ¶ 19.  The forms are used by DEA to memorialize investigative and intelligence activities and information.  Id.  The DEA Form 6 is the initial page of the ROI and consists of 15 numbered blocks.  Id.  Blocks 1 through 10 appear at the top, and Blocks 11 through 15 at the bottom.  Id.  The middle of the page is the narrative section in which investigative and intelligence information is recorded.  Id.

26.      The DEA Form 6a is the continuation page of the ROI and consists of six (6) numbered blocks appearing at the top followed by the narrative section, in which investigative and intelligence information is recorded, that extends to the bottom of the page.  Wassom Dec., ¶ 20.

27.     The DEA Forms 6 and 6a contain a G-DEP identifiers and the names and/or signatures of DEA Special Agents and other law enforcement personnel as well as the file title, which is generally the subject of the investigation.  Wassom Dec., ¶ 21.

28.     The narrative sections of DEA Forms 6 and 6a (which include sections labeled "Synopsis," "Details," "Indexing," and "Evidence") often contain names of third-parties and law enforcement personnel, and information about individuals (including identifying information such

as physical descriptions, aliases, social security numbers, various license numbers, addresses, and/or occupations). Wassom Dec., ¶¶ 22-23.

29.    The DEA Personal History Report, DEA Form 202 is a two-page multi-block form used (1) to identify and classify an individual, or update an earlier identification or classification under G-DEP, either prior to or at the time of the arrest, (2) to declare a defendant a fugitive, (3) as part of the establishment of a cooperating individual and (4) to correct personal data in the NADDIS index. Wassom Dec., ¶ 24. The form consists of 76 blocks that are completed depending on the circumstances. Id. DEA Form 202 contains the following information: (1) file title (generally the subject of the investigation); (2) a G-DEP identifier; (3) the names and/or signatures of DEA Special Agents and other law enforcement personnel; (4) identifying information about the individual to whom the form pertains; and (5) information related to and explaining the action being taken. Wassom Dec., ¶ 25.

30.    DEA Defendant Disposition Report, DEA Form 210, is a multi-block form that is used as the source document for the compilation of DEA defendant statistics, as well as the means by which DEA and the Federal Bureau of Investigation (FBI) track individual cases brought against DEA defendants. Wassom Dec., ¶ 26. A separate DEA Form 210 is prepared for each defendant prosecuted as the result of DEA investigative efforts. Id. The DEA Form consists of 25 blocks of which Block 5 contains the G-DEP identifier; Block 6, the file title; Blocks 7 and 16, the defendant's name; Block 9, the defendant's NADDIS number; Blocks 16-20, personal information and identifiers of the defendant; and Blocks 24 and 25, the names and signatures of a DEA Special Agent and/or other law enforcement officers. Id.

31.     Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, many of the pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug Enforcement Program) codes, NADDIS numbers, and a confidential informant number.  Wassom Dec., ¶ 38.  The G-DEP, NADDIS, and confidential informant number are part of DEA's internal system of identifying information and individuals.  Id.

32.     G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity.  Wassom Dec., ¶ 38(a).

33.     NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA and entities that are of investigative interest.  Wassom Dec., ¶ 38(b).  Each number is unique and is assigned to only one violator within the DEA NADDIS indices.  Id.  DEA has exempted the NADDIS indices from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. 16.98 (2007). Id.

34.     Informant identifier codes are assigned by DEA and other law enforcement agencies to cooperating individuals and are used instead of their names in all DEA reports, memoranda and other internal correspondence.  Wassom Dec., ¶ 38(c).  Informant identifier codes provide sensitive information about individuals who cooperate with DEA and other law enforcement agencies in carrying out their law enforcement functions.  Id.

35.     Plaintiff made no showing of a public interest in the information sought.  Wassom Dec., ¶ 44.

36.    The Special Agents and other law enforcement officers and personnel were assigned to handle tasks relating to the official investigation into the criminal activities of Plaintiff and other individuals.  Wassom Dec., ¶ 47.  Government employees were assigned to handle tasks relating to the official investigations into the criminal activities of Plaintiff.  Id., ¶¶ 47-48.  They were, and possibly still are, in positions of access to information regarding official law enforcement investigations.  Id.

37.    Sources of information include those to whom express confidentiality was granted and those about whom, based upon the facts and circumstances, confidentiality could be implied.  Wassom Dec., ¶ 50.

38.    Coded informants are individuals who have a continuing cooperative association, by written signed agreement, with DEA.  Wassom Dec., ¶ 52.  Such cooperative arrangements are established and maintained according to DEA policy and procedure.  Id.  These individuals are expressly assured confidentiality in their identities and the information they provide to DEA.  Id.  They are also assured that their names will not be used in DEA investigative materials.  Id.  They are assigned an identification code which is used in place of their name or referred to as CI, SOI, or CS.  Id.

39.    Page "21" is the first page of a two-page ROI describing the arrest of a third-party.  Wassom Dec., ¶ 53.  The page contains contact information from a coded informant about a third-party.  Id.  Plaintiff's name is not mentioned on the page.  Id.

40.    Page "23" is the first page of a two-page ROI  describing the arrest of a third-party.  Wassom Dec., ¶ 54.  The page contains contact information from a coded informant about a

third-party.  Id.  Plaintiff's name is mentioned only in paragraph 2.  Id.  The information about Plaintiff is included in the released portion of the page.  Id.

41.     Plaintiff was convicted of cocaine conspiracy and possession with intent cocaine. Wassom Dec. at ¶ 56.

42.     Pages "19" and "20" comprise a two-page ROI describing the arrest of a third-party. Wassom Dec., ¶ 57.  Page "19" contains information from a Source of Information (SOI) about the address of a third-party.  Id.  Plaintiff's name is mentioned only in paragraph 2.  Id.  The information about Plaintiff is included in the released portion of the page.  Id.  Page "20" contains information from a named confidential source about the drug trafficking activities of himself/herself, Plaintiff, and third-parties.  Id.  Plaintiff's name is mentioned in three sentences on the page.  Id.

43.      Pages "23" and "24" comprise a two-page ROI describing the arrest of a third-party. Wassom Dec., ¶ 58.  The pages contain information from a named confidential source about the drug trafficking activities of himself/herself and third-parties.  Id.  On page "23", Plaintiff's name is mentioned only in paragraph 2.  Id.  The information about Plaintiff is included in the released portion of the page.  Id.  On page "24", Plaintiff's name is mentioned only in the Indexing Section. Id.

44.     Page "26" is the second page of a three-page ROI describing the arrest of a third-party. Wassom Dec., ¶ 59.  The page contains information from a named confidential source about the drug trafficking activities of himself/herself and a third-party.  Id.  Plaintiff's name is mentioned only in paragraph 2.  Id.  The information about Plaintiff is included in the released portion of the page.  Id.

45.     Page "28" is a one-page "ROI" describing the photo ID of Plaintiff.  Wassom Dec., ¶ 60.  The page contains information from a named confidential source about his/her drug trafficking

activities and interaction with Plaintiff.  Id.  Information about Plaintiff is found in one sentence in

paragraph 3, a portion of which is released.  Id.  Plaintiff's name is mentioned in the Indexing

Section.  Id.

46.     Page "61" is the third page of a three-page ROI containing the debriefing of the

third-party. Wassom Dec., ¶ 61. Paragraph 5 contains information from a named confidential source

regarding the drug trafficking activities of the source, Plaintiff, and third-parties. Id.

47.     Page "64" is the fifth page of a five page ROI containing the debriefing of Plaintiff.

Wassom Dec., ¶ 76.  Plaintiff's name is mentioned only as the file title.  Id.

48.     Pages "69" and "70" comprise the third and fourth pages of a five-page ROI

containing a summary report of the arrests of Plaintiff and two third-parties.  Wassom Dec., ¶ 62.

The pages contain information from two confidential sources, who provided information about the

drug trafficking activities of the sources, Plaintiff, and third-parties.  Id.  Information about Plaintiff

from the confidential sources is found in one paragraph on page "69", and in three paragraphs on

page "70".  Id.

49.     Page "91" is the second page of Plaintiff's Criminal Complaint.  Wassom Dec. at ¶ 63.

The page contains information from two named confidential sources regarding their drug trafficking

interaction with Plaintiff.  Id.

50.     DEA Special Agents and Supervisory Special Agents, as well as members of other

law enforcement entities, are frequently called upon to conduct a wide variety of investigations,

including sensitive and dangerous undercover operations.  Wassom Dec., ¶ 65.

51.     Special Agents routinely approach and associate with violators in a covert capacity.

Wassom Dec., ¶ 66.  Many of those violators are armed and many have known violent tendencies.

Id.  It has been the experience of DEA that the release of Special Agents' identities has, in the past,

resulted in several instances of physical attacks, threats, harassment and attempted murder of

undercover and other DEA Special Agents.  Id.


Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney

Counsel for the Defendants